Thomas R. Califano
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4990
Facsimile: (212) 884-8690

*Proposed Counsel to the Debtors and*
*Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ORION HEALTHCORP, INC. | : | Case No. 18-71748 (AST) |
| CONSTELLATION HEALTHCARE TECHNOLOGIES, INC. | : | Case No. 18-71749 (AST) |
| NEMS ACQUISITION, LLC | : | Case No. 18-71750 (AST) |
| NORTHEAST MEDICAL SOLUTIONS, LLC | : | Case No. 18-71751 (AST) |
| NEMS WEST VIRGINIA, LLC | : | Case No. 18-71752 (AST) |
| PHYSICIANS PRACTICE PLUS, LLC | : | Case No. 18-71753 (AST) |
| PHYSICIANS PRACTICE PLUS HOLDINGS, LLC | : | Case No. 18-71754 (AST) |
| MEDICAL BILLING SERVICES, INC. | : | Case No. 18-71755 (AST) |
| RAND MEDICAL BILLING, INC. | : | Case No. 18-71756 (AST) |
| RMI PHYSICIAN SERVICES CORPORATION | : | Case No. 18-71757 (AST) |
| WESTERN SKIES PRACTICE MANAGEMENT, INC. | : | Case No. 18-71758 (AST) |
| INTEGRATED PHYSICIAN SOLUTIONS, INC. | : | Case No. 18-71759 (AST) |
| NYNM ACQUISITION, LLC | : | Case No. 18-71760 (AST) |
| NORTHSTAR FHA, LLC | : | Case No. 18-71761 (AST) |
| NORTHSTAR FIRST HEALTH, LLC | : | Case No. 18-71762 (AST) |
| VACHETTE BUSINESS SERVICES, LTD. | : | Case No. 18-71763 (AST) |
| MDRX MEDICAL BILLING, LLC | : | Case No. 18-71764 (AST) |
| VEGA MEDICAL PROFESSIONALS, LLC | : | Case No. 18-71765 (AST) |
| ALLEGIANCE CONSULTING ASSOCIATES, LLC | : | Case No. 18-71766 (AST) |
| ALLEGIANCE BILLING & CONSULTING, LLC | : | Case No. 18-71767 (AST) |
| PHOENIX HEALTH, LLC | : | Case No. 18-71789 (AST) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

```
------------------------------------------------------------------ x
ORION HEALTHCORP, INC., et al.,                  :
                                                 :
                    Plaintiffs,                  :
                                                 :
                                                 :
          v.                                     :
                                                 :
CAPITA IRG TRUSTEES (NOMINEES) LIMITED, CHT       :
HOLDCO LLC, BLUE MOUNTAIN HEALTHCARE LLC,         :
PBPP PARTNERS LLC, AXIS MEDICAL SERVICES LLC,     :       Adv. Pro. No. 18-_____ (AST)
VEGA ADVANCED CARE LLC, FOREST NOMINEES LIMITED   :
GC1 ACCT, AAKB INVESTMENTS LIMITED, PULSAR        :
ADVANCE CARE LLC, PLATFORM SECURITIES NOMINEES    :
LIMITED KKCLT ACCT, LEXINGTON LANDMARK            :
SERVICES LLC, MYMSMD LLC, PPSR PARTNERS LLC,      :
MAX EDWARD ROYDE, PBPP LLB, UBS PRIVATE           :
BANKING NOMINEES LTD MAINPOOL ACCT, ABN AMRO      :
GLOBAL NOMINEES LIMITED 573 MAIN ACCT, ALLIANCE   :
TRUST SAVINGS NOMINEES LTD CDIGRO ACCT, THE       :
BANK OF NEW YORK (NOMINEES) LIMITED, THE BANK OF  :
NEW YORK (NOMINEES) LIMITED SFTIF ACCT,           :
BARCLAYSHARE NOMINEES LIMITED, DAVID BEARDSALL,   :
BEAUFORT NOMINEES LIMITED, BEAUFORT NOMINEES      :
LIMITED SSLNOMSACCT, BNY (OCS) NOMINEES           :
LIMITED HIT ACCT, BREWIN NOMINEES LIMITED GROSS   :
ACCT, CFS PORTFOLIO MANAGEMENT LIMITED, CGWL      :
NOMINEES LIMITED GC1 ACCT, CHASE NOMINEES         :
LIMITED, CHASE NOMINEES LIMITED EXDEPAIF ACCT,    :
DAVID FALCON BUTLER COLE, CREDIT SUISSE CLIENT    :
NOMINEES (UK) LIMITED D6M5PB ACCT, FERLIM         :
NOMINEES LIMITED ISA ACCT, FERLIM NOMINEES        :
LIMITED POOLED ACCT, FITEL NOMINEES LIMITED       :
SDPR ACCT, GOLDMAN SACHS INTERNATIONAL            :
CREPTEMP ACT, HAREWOOD NOMINEES LIMITED           :
4121550 ACCT, HSBC CLIENT HOLDINGS NOMINEE (UK),  :
HSBC GLOBAL CUSTODY NOMINEE (UK) LIMITED          :
630372 ACCT, HSBC GLOBAL CUSTODY NOMINEE (UK)     :
LIMITED 667656 ACCT, HSBC GLOBAL CUSTODY          :
NOMINEE (UK) LIMITED 944287 ACT, HSCB GLOBAL      :
CUSTODY NOMINEE (UK) LIMITED 982409 ACCT,         :
HUNTRESS (CI) NOMINEES LIMITED KGCLT ACCT,        :
INVESTOR NOMINEES LIMITED, INVESTOR NOMINEES      :
LIMITED WRAP ACCT, INVESTOR NOMINEES LIMITED      :
NOMINEE ACCT, JAMES CAPEL (NOMINEES) LIMITED PC   :
ACCT, JIM NOMINEES LIMITED ISA ACCT, JIM          :
NOMINEES LIMITED JARVIS ACCT, JIM NOMINEES        :
```

LIMITED JARVISNT ACCT, JOHNSTON ASSET                    :
MANAGEMENT LTD, JOHN JOSEPH JOHNSTON, KARIN             :
JOHNSTON, J.P. MORGAN SECURITIES PLC JPCREPON           :
ACCT, KBC SECURITIES NV CLIENT ACCT, LAWSHARE           :
NOMINEES LIMITED ISA ACCT, LAWSHARE NOMINEES            :
LIMITED SIPP ACCT, LAWSHARE NOMINEES LIMITED            :
UNDOC, LAWSHARE NOMINEES LIMITED DEALING, PAUL          :
LINES, LYNCHWOOD NOMINEES LIMITED 2006420 ACCT,         :
MERRILL LYNCH INTERNATIONAL MAIN ACCT, MORGAN           :
STANLEY CLIENT SECURITIES NOMINEES LIMITED,             :
MORGAN STANLEY CLIENT SECURITIES NOMINEES               :
LIMITED SEG ACCT, NOMURA PB NOMINEES LIMITED            :
PBNOMS ACCT, NORTRUST NOMINEES LIMITED,                 :
NORTRUST NOMINEES LIMITED TDS ACCT, NORTRUST            :
NOMINEES LIMITED LUA01 ACCT, NORTRUST NOMINEES          :
LTD THD05 ACCT, N.Y. NOMINEES LIMITED, N.Y.             :
NOMINEES LIMITED BCCAG ACCT, PEEL HUNT HOLDINGS         :
LIMITED PMPRINC ACCT, PERSHING NOMINEES LIMITED         :
CCCLT ACCT, PERSHING NOMINEES LIMITED ELISA ACCT,       :
PERSHING NOMINEES LIMITED IMCLT ACCT, PERSHING          :
NOMINEES LIMITED JICLT ACCT, PERSHING NOMINEES          :
LIMITED PERNY ACCT, PERSHING NOMINEES LIMITED           :
RKCLT ACCT, PERSHING NOMINEES LIMITED RKISA             :
ACCT, PERSHING NOMINEES LIMITED TMCLT ACCT,             :
PERSHING NOMINEES LIMITED WRCLT ACCT, PERSHING          :
NOMINEES LIMITED PQIDEAL ACCT, PLATFORM                 :
SECURITIES NOMINEES LIMITED KKISA ACCT, PLATFORM        :
SECURITIES NOMINEES LIMITED ASHISA ACCT, PLATFORM       :
SECURITIES NOMINEES LIMITED ASHNOM ACCT,                :
PLATFORM SECURITIES NOMINEES LIMITED ASHPEN             :
ACCT, PLATFORM SECURITIES NOMINEES LIMITED              :
ASHTRU ACCT, RATHBONE NOMINEES LIMITED,                 :
REDMAYNE (NOMINEES) LIMITED P89813X ACCT,               :
REDMAYNE (NOMINEES) LIMITED RG2461R ACCT, ROCK          :
(NOMINEES) LIMITED ISA ACCT, ROCK (NOMINEES)            :
LIMITED CSHNET ACCT, ROCK (NOMINEES) LIMITED            :
TAXFULL ACCT, ROCK (NOMINEES) LIMITED FASTRADE          :
ACCT, SECURITIES SERVICES NOMINEES LIMITED 2140036      :
ACCT, SHARE NOMINEES LTD, SKANDINAVISKA ENSKILDA        :
BANKEN AB (PUBL) 2035260 ACCT, SMITH &                  :
WILLIAMSON NOMINEES LIMITED ISA ACCT, STATE             :
STREET NOMINEES LIMITED G007 ACCT, STATE STREET         :
NOMINEES LIMITED OM01 ACCT, STATE STREET                :
NOMINEES LIMITED OM02 ACCT, STATE STREET                :
NOMINEES LIMITED OQ51 ACCT, STIFEL NICOLAUS             :
EUROPE LIMITED NNIDEAL ACCT, SVS SECURITIES             :

(NOMINEES) LTD ONL ACCT, TD DIRECT INVESTING :
NOMINEES (EUROPE) LIMITED USISA15 ACCT, TD DIRECT :
INVESTING NOMINEES (EUROPE) LIMITED USNOM15 :
ACCT, TD DIRECT INVESTING NOMINEES (EUROPE) :
LIMITED USNOM30 ACCT, TD DIRECT INVESTING :
NOMINEES (EUROPE) LIMITED USSIP00 ACCT, TRANSACT :
NOMINEES LIMITED INTEGRA1 ACCT, VICTOIRE :
NOMINEES LIMITED 2193900 ACCT, VIDACOS NOMINEES :
LIMITED 2154 ACCT, VIDACOS NOMINEES LIMITED :
IGUKCLT ACCT, W B NOMINEES LIMITED ISAMAX ACCT, :
W B NOMINEES LIMITED TREATY ACCT, WEALTH :
NOMINEES LIMITED WRAP ACCT, W H IRELAND :
NOMINEES LIMITED ISA ACCT, AND THE UNITED STATES :
OF AMERICA, DEPARTMENT OF TREASURY, INTERNAL :
REVENUE SERVICE, :
                                                                          :
                                  Defendants.       :
----------------------------------------------------------------- x

## COMPLAINT FOR AVOIDANCE OF FRAUDULENT
## TRANSFERS, CONSTRUCTIVE TRUST, AND INJUNCTIVE RELIEF

Orion HealthCorp, Inc. ("Orion") and its affiliated debtors and debtors in possession in

the above-captioned chapter 11 cases, and as plaintiffs in the above-captioned adversary

proceeding (collectively, the "Debtors" or the "Plaintiffs"), as and for their Complaint,

respectfully allege as follows:

## NATURE OF THE ACTION

1.        This action seeks to recover funds which are the proceeds of constructive or

actual fraudulent transfers and to prevent the further transfer of such funds to the Shareholder

Defendants, identified herein.  Insofar as some portion of the monies to be recovered are in the

possession, custody or control of the Defendant United States, Department of Treasury, Internal

Revenue Service ("IRS"), Plaintiffs seek impression of a constructive trust as to those funds, and

a permanent injunction preventing the IRS from distributing those funds to the Shareholder

Defendants.

2.      This case arises from a "go-private" merger transaction (the "Merger"), pursuant to which CHT Holdco, LLC ("CHT Holdco") acquired the stock of Plaintiff Constellation Healthcare Technologies ("CHT").

3.      The Merger was led by Parmjit "Paul" Parmar ("Parmar").  At all times relevant to this Complaint, Parmar was Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board") of CHT.  Parmar controlled CHT through his ownership of CHT shares, his control over entities owning CHT shares, and his position as CEO and Chairman of the Board.

4.      Parmar was assisted in the commission of the acts complained of herein by Sotiros "Sam" Zaharis ("Zaharis") and Ravi Chivukula ("Chivukula").  At all times relevant to this Complaint, Zaharis was the Chief Financial Officer ("CFO") of CHT and a member of the Board, and Chivukula, was the CFO of Orion and a member of the Board.

5.      To secure an inflated stock purchase price in connection with the Merger, Parmar, with the aid and assistance of Zaharis and Chivukula, falsified and altered financial documents, created fictitious customers and invoices, and fabricated the operations of entire subsidiaries.

6.      Parmar, Zaharis, and Chivukula also fabricated the pre-Merger acquisitions of multiple Debtors (the "Sham Acquisitions") by representing that these companies, identified below, were operating businesses with bona fide customers and revenue when, in fact, they had no business operations, employees, customers, or revenue.  Parmar, Zaharis, and Chivukula also created fictitious customers, revenue and earnings within the Orion corporate operating entity.

7.      The Sham Acquisitions were funded with money raised in secondary rounds of equity offerings through the London Stock Exchange's Alternative Investments Market (the "AIM").

8.     Parmar, Zaharis, and Chivukula used these Sham Acquisitions to artificially inflate CHT's revenue, earnings, and assets, resulting in an increased stock price.

9.     Based on the artificially increased stock price, Parmar, Zaharis, and Chivukula were able to secure a purchase price of $309.4 million (the "Acquisition Price") for CHT in connection with the Merger.

10.     In reality, if CHT was not insolvent prior thereto, the Merger rendered CHT insolvent.

11.     CHT's shareholders were paid $3.36 per share – a 45% premium on the pre-Merger stock price – based on the artificially inflated price of CHT's stock.

12.     In total, CHT's non-Parmar shareholders (the "Shareholders") were paid $183,842,511.75 in cash and were given $39.6 million in promissory notes by CHT in exchange for their CHT shares (the "Shareholder Redemption Payments").

13.     The Shareholder Redemption Payments and funds used to pay approximately $9,519,935.90 in transaction fees were funded with $130 million in debt (the "Merger Financing") owed to Bank of America, N.A. ("Bank of America"), secured by a first lien on the Debtors' assets, and an equity contribution of $82,502,160.25 from CC Capital to CHT Holdco. (the "CC Capital Contribution").

14.     To secure the Merger Financing, CHT, Orion, the remaining Plaintiffs and certain non-debtor entities (i) jointly and severally guaranteed the Merger Financing, (ii) gave first priority liens in all of their property (the "Merger Liens"), and (iii) pledged 100 % of the equity interests in each of their subsidiaries.

15.     The Debtors did not receive reasonably equivalent value for the Shareholder Redemption Payments.

16.     CHT and other Debtors were insolvent after the consummation of the Merger transaction.

17.     On March 16, 2018, (the "Petition Date"), the Debtors commenced their Chapter 11 cases by filing voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York ("he "Bankruptcy Court").

18.     Each of the defendants identified in **Appendix A** attached hereto (the "Transferees" or "Shareholder Defendants") received Shareholder Redemption Payments that were made with the intent to hinder, delay or defraud the Debtors' future creditors and/or were made without the Debtors receiving reasonably equivalent value in exchange for the obligations incurred for the Merger Financing.

19.     Pursuant to Sections 544, 548, and 550 of the Bankruptcy Code and Sections 1304 and 1305 of the Delaware Uniform Fraudulent Transfer Act ("DUFTA"), Plaintiffs, as debtors in possession and on behalf of their bankruptcy estates, hereby seek to set aside and recover as fraudulent transfers the Shareholder Redemption Payments[1] from the Transferees.

20.     Plaintiffs also seek relief against the IRS, to wit:  (i) a constructive trust for the benefit of the Debtors over any portion of the Shareholder Redemption Payments in its possession, custody, or control and (ii) a permanent injunction enjoining the IRS from distributing any portion of the Shareholder Redemption Payments in the IRS's possession, custody, or control, including, without limitation, amounts in its possession that were withheld from the Shareholder Redemption Payments distributed to the Transferees.

---

[1] In this action, the Plaintiffs seek to avoid and recover the Shareholder Redemption Payments, exclusive of amounts transferred to:  (1) Parmar and/or to certain affiliated persons and (2) certain of CHT's former directors and officers.

## THE PARTIES

I.      **The Plaintiffs**

21.     Plaintiff CHT is a Delaware corporation with a principal place of business in Jericho, New York.  CHT directly owns 100% of the interests in Orion.

22.     Plaintiff Orion is a Delaware corporation with a principal place of business in Jericho, New York.  Orion owns 100% of the interests in various operating entities, holding companies, and certain of the sham corporations created and/or acquired by Parmar.

23.     Plaintiff Integrated Physician Solutions, Inc. ("IPS") is a Delaware corporation wholly owned by Orion.  IPS operates the Debtors' physician practice management and group purchasing organization businesses.

24.     Plaintiff Medical Billing Services, Inc. ("MBS") is a Texas corporation wholly owned by Orion.  MBS operates as part of Orion's revenue cycle management ("RCM") Business.

25.     Plaintiff Rand Medical Billing, Inc. ("Rand") is a California corporation wholly owned by Orion.  Rand operates as part of Orion's RCM business.

26.     Plaintiff RMI Physician Services Corporation ("RMI") is a Texas corporation wholly owned by Orion . RMI operates as part of Orion's RCM business.

27.     Plaintiff Western Skies Practice Management, Inc. ("Western Skies") is a Colorado corporation wholly owned by Orion.  Western Skies operates as part of Orion's RCM business.

28.     Plaintiff NEMS Acquisition, LLC ("NEMS Acquisition") is a Delaware limited liability company wholly owned by Orion.  NEMS Acquisition acts as a holding company for Plaintiff Northeast Medical Solutions, LLC and Plaintiff NEMS West Virginia, both of which are Pennsylvania limited liability companies that operate as part of Orion's RCM business.

29.     Plaintiff Physicians Practice Plus Holdings ("PPP HoldCo") is a Delaware limited liability company wholly owned by Orion.  PPP HoldCo acts as a holding company for Plaintiff Physician Practice Plus, LLC, a Delaware limited liability company that operates as part of Orion's RCM business.

30.     Plaintiff Northstar FHA, LLC ("Northstar FHA") is a Delaware limited liability company wholly owned by Orion.  Northstar FHA acts as a holding company for Plaintiff Northstar First Health, LLC ("Northstar"), a Delaware limited liability company, which in turn acts as a holding company for Plaintiff Vachette Business Services, Ltd., an Ohio limited liability company.

31.     Plaintiff Phoenix Health, LLC ("Phoenix") is a Delaware limited liability company wholly owned by Orion.  Phoenix is an entity that was the subject of a sham acquisition.

32.     Plaintiff MDRX Medical Billing ("MDRX") is a Delaware limited liability company wholly owned by Orion.  MDRX is an entity that was the subject of a sham acquisition;

33.     Plaintiff VEGA Medical Professionals, LLC ("Vega") is a Delaware limited liability company wholly owned by Orion.  Vega acts as a holding company for Plaintiff Allegiance Consulting Associates, LLC and Plaintiff Allegiance Billing & Consulting, LLC, both of which are New York limited liability companies.

34.     Plaintiff NYNM Acquisition, LLC ("NYNM Acquisition") is a Delaware limited liability company wholly owned by Orion.  NYNM Acquisition acts as a holding company for certain non-debtor entities that are not a party to this action.

## II.     The Shareholder Defendants

35.     Upon information and belief, the Shareholder Defendants listed in **Appendix A**

annexed hereto each received Shareholder Redemption Payments in the amounts listed in

**Appendix A**.  The Plaintiffs hereby incorporate **Appendix A** as if set forth in full.

## III.    The United States of America

36.     Defendant The United States of America is the government of the United States

of America collecting taxes through the Department of the Treasury and its agency the IRS.

## IV.    Non-Parties

37.     Bank of America is referenced in its capacity as administrative agent, L/C issuer

and swingline lender in relation to the Merger Financing.

<strong><u>JURISDICTION AND VENUE</u></strong>

38.     This adversary proceeding is brought pursuant to Rule 7001 of the Federal Rules

of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

39.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 157 and 1334 because the claims asserted herein arise in the above-captioned Chapter 11

cases.

40.     This is a core proceeding under 28 U.S.C. § 157(b)(2).

41.     Venue is proper pursuant to 28 U.S.C. § 1409(a) because this proceeding is

related to the Chapter 11 cases, which are currently pending before this Court.

42.     In the event that this Bankruptcy Court or any other appropriate court finds any

part of this adversary proceeding to be "non-core," Plaintiffs consent to the entry of final orders

and judgements by the Bankruptcy Court, pursuant to Bankruptcy Rule 7008.  Plaintiffs also

consent to the entry of final orders or judgments by the Bankruptcy Court if it is determined that

the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTUAL BACKGROUND

**I.      The Sham Acquisitions Inflate CHT's Value**

43.      On September 3, 2014, Parmar formed CHT as the holding company for Orion and its subsidiaries.

44.      On December 8, 2014, CHT was admitted to trading on the AIM as part of a "go-public" transaction.

45.      Upon information and belief, the Sham Acquisitions began in or about May 2015, when CHT raised approximately $15.8 million through a secondary offering on the AIM.

46.      The Sham Acquisitions shared common characteristics:  (1) money was raised through secondary public offerings on the AIM; (2) the acquisition target was formed shortly before the date of acquisition; and (3) the proceeds of the public offerings were used for other purposes, including but not limited to, the creation of fictitious customer receipts and as revenue for other CHT business units.

47.      On September 16, 2015, CHT announced its acquisition of Northstar for $18 million.  CHT falsely described Northstar as having 233 employees, 77 clients, and 2014 year end revenue of $7.9 million.

48.      Northstar was formed on June 12, 2015; Northstar FHA was formed on August 24, 2015.  Neither company had operations at the time of the alleged acquisition.

49.      On September 18, 2015, CHT announced its acquisition of Phoenix.  CHT falsely described Phoenix as having 138 employees and generating revenue of $9.8 million and EBITDA of $2.2 million, with net assets of $1.1 million as of December 31, 2014.  Phoenix had

no operations at the time of the alleged acquisition.  In fact, Phoenix did not obtain an Employer Identification Number ("EIN") from the IRS until November 27, 2015.

50.     On December 7, 2015, MDRX was formed in Delaware and, on December 11, 2015, CHT announced a second capital raise earmarked for the acquisition of MDRX.  On January 6, 2016, the Board approved the admission of 18,751,195 new shares to the AIM market, which raised approximately $45 million.  On February 10, 2016, CHT announced its acquisition of MDRX for $28 million.  MDRX claimed to have acquired its customers from Apex Healthcare Systems, a fictitious company.  MDRX was not assigned an EIN until March 11, 2016 and had no operations or employees at any time.

51.     Parmar, Zaharis, and Chivukula created fictitious revenue for non-existent customers by re-characterizing cash raised from the secondary offerings as third-party customer receipts.

52.     Parmar, Zaharis, and Chivukula altered financial statements and fabricated financial information to include fictitious entries, which created the illusion of customer deposits.

53.     The Sham Acquisitions caused CHT's revenue and earnings to be overstated in its financial statements filed with the AIM in 2015 and 2016.  CHT's stock price then increased based on these inaccurate financial statements.

## II.     The Go-Private Merger Transaction

54.     Starting in or about June 2016, CHT pursued a potential merger transaction with CC Capital.

55.     As part of the proposed Merger due diligence, CC Capital was given access to documents and information regarding CHT's financial condition and business operations.

56.     Parmar misrepresented CHT's revenue and EBITDA and overstated expectations following the Northstar, Phoenix and MDRX transactions.

57.     On November 25, 2016, CHT and CHT Holdco announced an agreement on the terms of the proposed Merger.

58.     Under the terms of the Merger, CHT Holdco would acquire CHT for $2.93 cash and $0.43 in Promissory Notes per share, representing a total value of $309.4 million.[2]

59.     CC Holdco would own a controlling interest in CHT Holdco.

60.     The remaining interest in CHT Holdco would be owned by Alpha Cepheus, an entity that, at the time, was controlled by Parmar.

61.     On January 18, 2017, CHT's shareholders approved the Merger.

62.     On January 26, 2017, CHT requested that trading of its shares on the AIM be suspended.

63.     As inducement to enter into the Merger, Parmar represented and warranted that CHT's financial statements were truthful and accurate, that there were no false entries on any of CHT's books and records, that CHT's accounts receivable were the result of bona fide transactions, and that its material contracts were valid and enforceable.  These representations and warranties were known by Parmar to be false when made.

64.     Additionally, Parmar and Alpha Cepheus, First United Healthcare, LLC ("First United"), and Constellation Health, LLC ("CHLLC"), entities under Parmar's control, falsely represented and warranted that CHT's representations and warranties were true and correct.

---

[2] This price represented a 30.2% premium to the all-time high closing price on October 17, 2016; a 33.4% premium to the Closing Price on October 12, 2016 (the Business Day prior to the date of the merger offer); and a 76.8% premium to the volume weighted average Closing Price for the three month period ended October 12, 2016 (the Business Day prior to the date of the merger offer).

65.     Parmar, Alpha Cepheus, First United, and CHLLC agreed to indemnify CC Holdco and CC Capital for any intentional misrepresentations and fraud.

66.     Parmar executed a pledge and security agreement granting CC Holdco a security interest and continuing lien on all the rights, title, and interests in his CHT shares and their proceeds.

67.     Orion obtained the Merger Financing from Bank of America to fund the Shareholder Redemption Payments.

68.     The Merger Financing was jointly and severally guaranteed by all other Plaintiffs.

69.     As collateral, Plaintiffs granted first priority liens on all of their property, including 100% of the equity interests in each of their subsidiaries, to Bank of America.

70.     Prior to the Merger, Parmar and certain Parmar-controlled entities[3] owned approximately 53.5% of CHT's 92,081,632 outstanding shares.  The remaining shares were publicly held.

71.     Immediately prior to Closing Date, Blue Mountain assigned 2,962,804 shares of its CHT common stock  to First United.

72.     First United then contributed 6,993,563 CHT common stock shares and a $12 million promissory note, made by CHT in favor of First United, to Alpha Cepheus.

73.     CHLLC contributed 17,862,074 shares of CHT common stock to Alpha Cepheus, which then owned 24,855,637 shares of CHT common stock.

74.     Alpha Cepheus contributed its shares and the First United promissory note to CHT Holdco.

---

[3] These include PBPP Partners LLC, MYMSMD LLC, PPSR Partners LLC, CHLLC, First United, and Blue Mountain Healthcare, LLC ("Blue Mountain"),

75.     CC Holdco received 30,268,763 CHT shares in exchange for conveying the CC Capital Contribution to CHT Holdco.

76.     CHT MergerSub, Inc., an entity created specifically for the Merger, was then merged with and into CHT, with CHT being the surviving corporation and becoming a wholly-owned subsidiary of CHT Holdco.

77.     CHT's common shares were then converted into the right to receive the Acquisition Price.

78.     Following the Merger, (i) CHT Holdco owned 100% of the equity interests in CHT; (ii) CC Holdco controlled approximately 50.7% of the economic and 55% of the voting interests in CHT; and (iii) Alpha Cepheus controlled approximately 49.3% of the economic and 45% of the voting interests in CHT.

79.     To fund the Shareholder Redemption Payments, (i) CC Capital conveyed the CC Capital Contribution to CHT Holdco; (ii) Plaintiffs incurred liens on all their assets to secure the Merger Financing from Bank of America; and (iii) CHT issued unsecured promissory notes to its Shareholders in the amount of approximately $39.6 million.

80.     At closing on or about January 30, 2017, Bank of America wired the aggregate amount of the Shareholder Redemption Payments to CC Holdco.

81.     On or about February 2, 2017, CC Holdco wired the Shareholder Redemption Payments to Capita Registrars, Ltd. (n/k/a Link Market Services Ltd.) ("Capita"), the registrar for the Merger, for distribution to CHT's shareholders.

82.     On or about February 3, 2017, Capita distributed the Shareholder Redemption Payments to the Shareholders according to their ownership interests.

83.     Capita retained $10,435,097.13 of the Shareholder Redemption Payments (the "Withheld Funds") based on its understanding of a legal requirement arising from 26 U.S.C. §§ 1441-1442, which mandates that a 30% withholding tax be withheld and remitted to the IRS in connection with distributions to nonresident taxpayers, unless such distribution is not subject to US income/withholding tax or a reduced withholding rate is applicable.

84.     On September 14, 2017, Parmar resigned as CEO of CHT and its subsidiaries.

85.     On September 29, 2017, Parmar resigned from the Board.

**III.    The Withheld Funds Are Transferred to the IRS**

86.     As discussed above, approximately $183,842,511.75 from the total Merger cash consideration was paid to certain nonresident shareholders of CHT.

87.     The remainder of the cash consideration, $10,435,097.13, was withheld for potential tax liabilities of the Shareholders and deposited with Capita, the registrar and receiving agent for CHT in connection with the Merger.

88.     The Withheld Funds were not initially paid to the Shareholders.  Upon information and belief, Capita withheld the funds under the Foreign Investment in Real Property Tax Act of 1980, 26 U.S.C. § 1445, which requires a percentage of consideration paid for certain transactions to be withheld and deposited with the IRS, to which foreign shareholders may then submit a US tax return and potentially receive a refund.

89.     Capita ultimately transferred the Withheld Funds to CHT so that CHT could remit the funds to the IRS with the requisite shareholder information.

90.     On or around December 29, 2017, Capita wired the Withheld Funds to Orion's main operating account at JPMorgan Chase Bank.

91.     On or around January 16, 2018, to avoid potential liability (including potential criminal liability), CHT directed Orion to wire the funds to the IRS.  Accompanying the transfer was a reservation of rights letter in which CHT and Orion disclosed that the Withheld Funds were believed to be the proceeds of potentially fraudulent transfers.  CHT and Orion requested that the IRS refrain from providing any refunds until a court of competent jurisdiction determined the appropriate recipients.

92.     The IRS possesses the Withheld Funds.  CHT and Orion believe it to be imminent that the IRS will distribute some portion of the Withheld Funds as refunds to nonresident former CHT shareholders who perfect a refund request.

**IV.     The Shareholder Redemption Payments Are Avoidable Fraudulent Transfers**

93.     The Debtors did not receive reasonably equivalent value under the Merger because the value of the CHT shares received by the Debtors in exchange for incurring the Merger Financing.

94.     The Debtors' pre-Merger financial state was significantly impacted by the Merger Financing.

95.     Parmar, Zaharis, and Chivukula knowingly concealed and falsified the true financial condition of the Debtors.  They concealed the true financial condition from CHT's creditors pre- and post-Merger.

96.     The Debtors were under no obligation to enter into the Merger or incur the obligations under the Merger Financing that resulted in a massive payout to its Shareholders.  But for the fraudulent intent of Parmar, Zaharis and Chivukula, the Debtors would not have done so.

97.     The Debtors did not receive reasonably equivalent value in exchange for the transfers.

98.     The Debtors seek to avoid and recover the Shareholder Redemption Payments as actual and constructively fraudulent transfers.

**V.      Relief Against the IRS is Warranted**

99.     The Withheld Funds are part of the Shareholder Redemption Payments and, thus, are proceeds of fraudulent transfers.

100.    Absent immediate relief from this Court, the IRS will begin refunding the Withheld Funds to Shareholders that file the appropriate paperwork.

101.    The Debtors will be irreparably harmed if the IRS refunds the Withheld Funds. Once paid out, the Debtors' estates will likely not be able to recover those amounts for the benefit of their creditors.

102.    The Debtors have demonstrated a likelihood of success on the merits as to their fraudulent transfer claims.

103.    The Debtors have also presented sufficiently serious questions going to the merits of their claims to make them fair ground for litigation.

104.    Given the underlying fraud and the Debtors' current financial position, the balance of hardships is decidedly in the Debtors' favor.  The IRS will suffer no harm by being enjoined from refunding the Withheld Funds.  In contrast, the Debtors and the creditors of their bankruptcy estates will be greatly harmed if the IRS refunds the Withheld Funds because the Debtors will be unable to claw back the Withheld Funds without great cost and expense and, even then, will likely not recover all assets into their estates.

105.     Accordingly, the Debtors have met the requirements for the issuance of an injunction against the IRS enjoining the IRS from distributing the Withheld Funds to the Shareholders.

106.     The Debtors have concurrently filed a motion for a temporary restraining order and a preliminary injunction to enjoin the IRS from distributing the Withheld Funds to the Shareholders.

## COUNT I

### INTENTIONAL FRAUDULENT TRANSFER
### (11 U.S.C. §§ 548(a)(1)(A) and 550)

#### (Against the Shareholders)

107.     The Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

108.     In or about January 2017, CC Holdco, on CHT's behalf, transferred the Shareholder Redemption Payments to Capita.  Thereafter, Capita transferred the Shareholder Redemption Payments to the Transferees on account of their ownership interests in CHT.

109.     CHT entered into and executed the transactions in connection with the Merger with knowledge of the effect such payments would have on the future creditors of CHT and those created by the Merger, and with the intent to hinder, delay or defraud such creditors.

110.     The Debtors did not receive reasonably equivalent value for incurring the Shareholder Redemption Payments.

111.     The Shareholder Redemption Payments were made within two years of the Petition Date.

112.     The Shareholder Redemption Payments should be avoided and recovered from the Transferees pursuant to 11 U.S.C. §§ 548(a)(1)(A), and 550(a).

## COUNT II

### CONSTRUCTIVE FRAUDULENT TRANSFER
### (11 U.S.C. §§ 548(a)(1)(B) and 550)

**(Against the Shareholders)**

113.    The Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

114.    In or about January 2017, CC Holdco, on CHT's behalf, transferred the Shareholder Redemption Payments to Capita.  Thereafter, Capita transferred the Shareholder Redemption Payments to the Transferees on account of their ownership interests in CHT.

115.    The Debtors did not receive reasonably equivalent value for the Shareholder Redemption Payments.

116.    At the time the Shareholder Redemption Payments were made, the Debtors were either insolvent or became insolvent as a result of the Merger transaction.  Specifically, (i) the Debtors were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors was an unreasonably small capital; and/or (ii) the Debtors intended to incur, or believed or reasonably should have believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

117.    The Shareholder Redemption Payments were made within two years of the Petition Date.

118.    The Shareholder Redemption Payments should be avoided and recovered from the Transferees pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550(a).

## COUNT III

### ACTUAL FRAUDULENT TRANSFER
### ( 11 U.S.C. § 544 and 6 *Del. C.* § 1304(a)(1))

**(Against the Shareholders)**

119.    The Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

120.    In or about January 2017, CC Holdco, on CHT's behalf, transferred the Shareholder Redemption Payments to Capita.  Thereafter, Capita transferred the Shareholder Redemption Payments to the Transferees on account of their ownership interests in CHT.

121.    CHT approved the Merger and entered into and executed the transactions in connection therewith, including the making of the Shareholder Redemption Payments, with knowledge of the effect such payments would have on the future creditors of CHT or those created by the Merger, and with the intent to hinder, delay or defraud such creditors.

122.    The Debtors did not receive reasonably equivalent value for incurring the Merger Liens to fund the Shareholder Redemption Payments.

123.    The Shareholder Redemption Payments were made within four years of the Petition Date.

124.    The Shareholder Redemption Payments should be avoided and recovered from the Transferees pursuant to 11 U.S.C. § 544 and sections 1304(a)(1) of the DUFTA.

## COUNT IV

### CONSTRUCTIVE FRAUDULENT TRANSFER
### ( 11 U.S.C. § 544 and 6 *Del. C.* §§ 1304(a)(2) and 1305(a))

**(Against the Shareholders)**

125.    The Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

126.    In or about January 2017, CC Holdco, on CHT's behalf, transferred the Shareholder Redemption Payments to Capita.   Thereafter, Capita transferred the Shareholder Redemption Payments to the Transferees on account of their ownership interests in CHT.

127.    The Debtors did not receive reasonably equivalent value for the Shareholder Redemption Payments.

128.    At the time the Shareholder Redemption Payments were made, the Debtors were either insolvent or became insolvent as a result of the Merger transaction.  Specifically, (i) the Debtors were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors was an unreasonably small capital; and/or (ii) the Debtors intended to incur, or believed or reasonably should have believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

129.    The Shareholder Redemption Payments were made within four years of the date of this Complaint.

130.    The Shareholder Redemption Payments should be avoided and recovered from the Transferees pursuant to 11 U.S.C. § 544 and sections 1304(a)(2) and 1305(a) of the DUFTA.


## COUNT V

**CONSTRUCTIVE TRUST WITH RESPECT TO THE WITHHELD AMOUNTS
(11 U.S.C. § 105(a))**
**(Against the Internal Revenue Service)**

131.    The Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

132.     The Transferees received the fraudulent transfers described herein and as a result they have been unfairly and unjustly enriched.

133.     The Withheld Funds constitute a portion of fraudulently transferred Shareholder Redemption Payments and are in the possession, custody, or control of the IRS.

134.     As a result, Plaintiffs are entitled to the imposition of a constructive trust for their benefit on the Withheld Funds in the possession, custody, or control of the IRS.

## COUNT VI

**PERMANENT INJUNCTION PREVENTING
DISTRIBUTION OF THE WITHHELD FUNDS
(11 U.S.C. § 105(a))
(Against the Internal Revenue Service)**

135.     The Plaintiffs restate and reallege the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

136.     Plaintiffs will suffer irreparable harm absent the issuance of a permanent injunction preventing the IRS from refunding the Withheld Funds to the Shareholders.

137.     Plaintiffs have sufficiently demonstrated that they will be successful on the merits of their fraudulent transfer claims.

138.     Alternatively, Plaintiffs have set forth sufficiently serious questions going to the merits of their fraudulent transfer claims to make such claims a fair ground for litigation.

139.     The balance of the hardships tips in Plaintiffs favor because the IRS would suffer no harm by the issuance of the requested injunction, whereas the Debtors, their estates and their creditors will suffer great harm if the IRS refunds the Withheld Funds.

140.     Accordingly, this Court should permanently enjoin the IRS from distributing the Withheld Funds.

## PRAYER FOR RELIEF

**WHEREFORE**, by reason of the foregoing, Plaintiffs respectfully request that judgment be entered in their favor and against the Defendants as follows:

(1)    **ON COUNT I:**

    (a)    entering a judgment against the Transferees, finding that the Shareholder Redemption Payments constitute fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A);

    (b)    pursuant to 11 U.S.C. § 548, avoiding the Shareholder Redemption Payments;

    (c)    pursuant to 11 U.S.C. § 550, entering judgment against the Transferees in the amount of the avoided Shareholder Redemption Payments; and

    (d)    providing for such other relief as justice and equity may require.

(2)    **ON COUNT II:**

    (a)    entering a judgment against the Transferees, finding that the Shareholder Redemption Payments constitute fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B);

    (b)    pursuant to 11 U.S.C. § 548, avoiding the Shareholder Redemption Payments;

    (c)    pursuant to 11 U.S.C. § 550, entering judgment against the Transferees in the amount of the avoided Shareholder Redemption Payments; and

    (d)    providing for such other relief as justice and equity may require.

(3)    **ON COUNT III:**

    (a)    entering a judgment against the Transferees, finding that the Shareholder Redemption Payments constitute fraudulent transfers pursuant to 11 U.S.C. § 544 and 6 *Del. C.* § 1304(a)(1);

    (b)    pursuant to 6 *Del. C.* § 1304(a)(1), avoiding the Shareholder Redemption Payments;

    (c)    pursuant to 11 U.S.C. § 550, entering judgment against the Transferees in the amount of the avoided Shareholder Redemption Payments; and

    (d)    providing for such other relief as justice and equity may require.

(4)    **ON COUNT IV:**

(a)    entering a judgment against the Transferees, finding that the Shareholder Redemption Payments constitute fraudulent transfers pursuant to 11 U.S.C. § 544 and 6 *Del. C.* §§ 1304(a)(2) and 1305(a);

(b)    pursuant to 6 *Del. C.* §§ 1304(a)(2) and 1305(a), avoiding the Shareholder Redemption Payments;

(c)    pursuant to 11 U.S.C. § 550, entering judgment against the Transferees in the amount of the avoided Shareholder Redemption Payments; and

(d)    providing for such other relief as justice and equity may require.

(5)    **ON COUNT V:**

(a)    imposing a constructive trust over the Withheld Funds in the possession, custody, or control of the IRS; and

(b)    providing for such other relief as justice and equity may require.

(6)    **ON COUNT VI:**

(a)    permanently enjoining the IRS from refunding the Withheld Funds in its possession, custody, or control; and

(b)    providing for such other relief as justice and equity may require.

(c)    for Plaintiffs' attorneys' fees and costs; and

(d)    for such other and further relief as the Court deems equitable, just and proper.

Dated:  March 29, 2018
        New York, New York

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Thomas R. Califano*
Thomas R. Califano (6144)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501
Email:  thomas.califano@dlapiper.com

*Proposed Counsel to the Debtors and Debtors in Possession*