Mark T. Power, Esq.
John P. Amato, Esq.
**HAHN & HESSEN LLP**
488 Madison Avenue, Suite 1400
New York, New York 10022
Telephone:  (212) 478-7200
E-mail:      mpower@hahnhessen.com
             jamato@hahnhessen.com

*Counsel to the Liquidating Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

In re:

Orion HealthCorp, Inc., *et al.*,

                Debtors.

-----------------------------------------------------------------------x

Howard M. Ehrenberg in his capacity as Liquidating
Trustee of Orion Healthcorp, Inc., *et al.*,

                Plaintiff,

       v.

Richard Ian Griffiths, Sally Griffiths, Blake Holdings
Limited, VT Garraway Investment Fund Series IV
(f/k/a City Financial Investment Fund Series IV),
Legal & General Assurance Society Limited, Legal &
General UK Alpha Trust, The Bankers Investment
Trust PLC, Marlborough Fund Managers Limited,
Marlborough UK Micro-Cap Growth Fund, Jarvis
Investment Management Limited, JIM Nominees
Limited, Kestrel Partners LLP, Stuart Rollason,
Shard Capital Partners LLP, Herald Investment Trust
PLC, Milkwood Capital Limited, The Milkwood
Fund, Sir Rodney Malcolm Aldridge, Killik & Co.
LLP, Platform Securities Nominees Limited, Edale
Capital LLP, Edale Europe Absolute Fund LP, Edale
Europe Absolute Master Fund Limited, Credit Suisse
Client Nominees (UK) Limited, Maven Investment
Partners Ltd, Miton UK MicroCap Trust PLC, Miton
Trust Managers Limited (a/k/a Miton Trust
Managers PLC), Islandbridge Capital Limited,

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 18-71748-67 (AST)
Case No. 18-71789 (AST)
Case No. 18-74545 (AST)
(Jointly Administered)

Adv. Pro. No. 18-08048 (AST)

Islandbridge Opportunities Fund, Merrill Lynch         :
International, JPMorgan Smaller Companies               :
Investment Trust PLC, Skandinaviska Enskilda           :
Banken AB (Publ), Brewin Dolphin Limited, Ari          :
Charles Zaphiriou-Zarifi, Denton & Co. Trustees        :
Limited, Rupert Faure Walker, Pershing Securities       :
Limited, Pershing Nominees Limited, JPMorgan Life :
Limited, ABN AMRO Clearing Bank N.V., London           :
Branch, THESIS Unit Trust Management Limited,          :
Thesis Headway A Sub-Fund, Tilney Asset                :
Management Services Limited (f/k/a Towry Asset          :
Management Limited), Freedom Global Funds PCC           :
Limited, Interactive Investor Services Limited,        :
Interactive Investor Services Nominees Limited,        :
Matthew Max Edward Royde, Megan Amelia                 :
Elizabeth Royde, Montlake UCITS Platform ICAV,         :
Elite Webb Capital Fund, Nortrust Nominees             :
Limited, Credo Capital Limited, Moulton Goodies        :
Limited, Moshe Menachem Feuer (a/k/a Mark              :
Feuer), UBS Private Banking Nominees Limited,          :
Rupert Dyson, Linear Investments Limited, Credit       :
Suisse (Channel Islands) Limited, Walker Crips          :
Investment Management Limited (f/k/a Walker            :
Crips Stockbrokers Limited), W.B. Nominees             :
Limited, Gabelli Investor Funds, Inc. (a/k/a The        :
Gabelli ABC Fund), Dr. Shawn Zimberg, Oliver           :
Rupert Andrew Scott, finnCap Ltd, John Joseph          :
Johnston, Johnston Asset Management Ltd.,              :
Interactive Investor Limited, CFS Management Ltd       :
(f/k/a CFS Portfolio Management Ltd), David            :
Andrew Clark, Karin Johnston, and The United           :
States of America, Department of Treasury, Internal    :
Revenue Service,                                       :
                                                       :
                    Defendants.                        :
---------------------------------------------------------------------------- x


## SECOND AMENDED ADVERSARY PROCEEDING COMPLAINT

Howard M. Ehrenberg (the "Liquidating Trustee" or the "Plaintiff"), in his capacity

as the Liquidating Trustee under that "Liquidating Trust Agreement" by and among Orion

HealthCorp, Inc. ("Orion"), Constellation Healthcare Technologies, Inc., and certain of

their affiliated debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Debtors"), as and for his Second Amended Complaint, respectfully alleges as follows:

## NATURE OF THE ACTION

1.      The Plaintiff is the successor to the Debtors who were the victims of a large, complex and brazen fraud that was subject to an intricate and deliberate concealment effort perpetrated by the Debtors' former management.  This action, among other things, seeks to recover funds that were stolen from and rightfully belong to the Debtors in connection with the final chapter of that fraud and, specifically, in connection with a "go-private" merger transaction (the "Merger"), pursuant to which CHT Holdco, LLC ("CHT Holdco") acquired the stock of Debtor Constellation Healthcare Technologies, Inc. ("CHT").

2.      The Merger and thefts were orchestrated by, among others, Parmjit "Paul" Parmar ("Parmar"), and implemented through (among other things) looting the Debtors' assets for his own benefit and the benefit of others.  At all times relevant to this Second Amended Complaint, Parmar was Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board") of CHT.  Parmar controlled CHT through his position as CEO and Chairman of the Board of CHT, his ownership of CHT shares, and his ownership and/or control over the Parmar Shareholder Entities (as defined below), all of whom owned, directly or indirectly, CHT shares, including, but not limited to Blue Mountain Healthcare, LLC ("Blue Mountain"), Taira no Kiyomori LLC ("Kiyomori"), Naya Constellation Health LLC ("Naya"), Alpha Cepheus, LLC ("Alpha Cepheus"), First United Health, LLC ("First United"), Constellation Health Investment, LLC ("Constellation Investment"), PBPP Partners LLC ("PBPP Partners"), Axis Medical Services LLC ("Axis"), Vega Advanced LLC ("Vega"), Pulsar Advance Care LLC ("Pulsar"), Lexington Landmark Services LLC ("Lexington"), MYMSMD LLC

("MYMSMD"), and AAKB Investments Limited ("AAKB" and collectively with Blue Mountain, Kiyomori, Naya, Alpha Cepheus, First United, Constellation Investment, PBPP Partners, Axis, Vega, Pulsar, Lexington, MYMSMD, the "Parmar Shareholder Entities").

3.    Parmar was assisted in the commission of the acts complained of herein by Sotirios "Sam" Zaharis ("Zaharis"), Ravi Chivukula ("Chivukula" and together with Parmar and Zaharis the "Board Members") and Pavandeep Bakhshi ("Bakhshi").  At all times relevant to this Second Amended Complaint, Zaharis was the Chief Financial Officer ("CFO") and a Director of CHT, and directly benefited as a result of the Sham Acquisitions (as defined below) and the Merger, and Chivukula was the Secretary of CHT and Director of Orion.

4.    To secure an inflated stock purchase price in connection with the Merger, Parmar, with the aid and assistance of the other Board Members and Bakhshi, (a) fabricated the pre-Merger acquisitions of multiple Debtors (the "Sham Acquisitions") by representing that these companies, identified below, were operating businesses with *bona fide* customers and revenue when, in fact, they had no business operations, nor any employees, customers, or revenue, and (b) falsified and altered financial documents by, among other things, creating fictitious customers and invoices and fabricating the operations of entire subsidiaries of Orion.

5.    Based on the artificially increased stock price, the Board Members and Bakhshi were able to secure a purchase price of $309.4 million – a 45% premium over the pre-Merger stock price for CHT in connection with the Merger.

6.    In total, $212,502,269.25 in proceeds ("Merger Proceeds") was paid out in connection with the Merger, approximately $100 million of which was paid to the Parmar Shareholder Entities (the "Parmar Shareholder Redemption Payments").

7.      Other CHT shareholders named herein (the "Shareholder Defendants") received (a) approximately $80.3 million in cash (as identified in Appendix A, the "Shareholder Redemption Payments"), and (b) $13.6 million in promissory notes in exchange for their CHT shares, and (c) have claims to recover another approximately $10.3 million that has been deposited with the IRS as potential tax liability of the Shareholder Defendants (the "IRS Funds").

8.      The Merger Proceeds were funded with $130 million in debt (the "Merger Financing") owed to Bank of America, N.A., as Administrative Agent, L/C Issuer and Swingline Lender ("Bank of America" and collectively with the syndicate lenders, the "Lenders"), and an equity contribution of $82,502,160.25 from CC Capital CC Holdco LLC ("CC Holdco") to CHT Holdco.[1]

9.      To secure the Merger Financing, CHT, the other Debtors and certain non-debtor entities (i) jointly and severally guaranteed the Merger Financing, (ii) gave first priority liens in all of their property (the "Merger Liens"), and (iii) pledged 100% of the equity interests in each of their subsidiaries.

10.     As a result of the fraud and fraudulent conveyances alleged herein, on March 16, 2018, (the "Petition Date"), the Debtors commenced their Chapter 11 cases by filing voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").

---

[1]     Following the Merger Financing, the Debtors, Bank of America and certain of the Lenders entered into an Incremental Term Increase Agreement and Lender Joinder Agreement, pursuant to which the Initial Term Loan was increased by $30 million to fund the Debtors' acquisition of New York Network Management, LLC and its subsidiaries, resulting in a total term loan as of the March 16, 2018 petition date of $158.2 million.

11.     Plaintiff, as successor to the Debtors, hereby seeks, among other things, turnover of the Shareholder Redemption Payments and IRS Funds pursuant to § 542 of the Bankruptcy Code and state law common law.

12.     Alternatively, Plaintiff seeks to set aside and recover as fraudulent transfers, the Shareholder Redemption Payments and IRS Funds, pursuant to § § 544, 548, and 550 of the Bankruptcy Code and § § 1304 and 1305 of the Delaware Uniform Fraudulent Transfer Act ("DUFTA").

13.     Insofar as the IRS Funds are in the possession, custody or control of defendant the United States, Department of Treasury, Internal Revenue Service ("IRS"), Plaintiff seeks a constructive trust as to those funds, and a permanent injunction enjoining the Shareholder Defendants from requesting the IRS to distribute those funds to them.

## THE PARTIES

### I.    The Plaintiff and the Debtors

14.     The Liquidating Trustee was appointed pursuant to the Bankruptcy Court's Findings of Fact, Conclusions of Law, And Order Confirming Debtors' Third Amended Joint Plan of Liquidation Pursuant To Chapter 11 of The Bankruptcy Code dated February 26, 2019 (the "Confirmation Order").  Among other things, the Confirmation Order and the Third Amended Joint Plan of Liquidation (the "Plan"), (i) established the Liquidating Trust, (ii) approved the Liquidating Trust Agreement, (iii) approved the Debtors' transfer to the Liquidating Trust of all their right, title and interest in and to the instant Adversary Proceeding, and (iv) appointed the Liquidating Trustee as successor to the Debtors as Plaintiff in the instant Adversary Proceeding.

15.     At all relevant times herein, Debtor CHT was a Delaware corporation with a principal place of business in Jericho, New York.  CHT directly owns 100% of the interests in Orion.

16.     At all relevant times herein, Debtor Orion was a Delaware corporation with a principal place of business in Jericho, New York.  Orion owns 100% of the interests in various operating entities, holding companies, and certain of the sham corporations created and/or acquired at Parmar's direction.

17.     At all relevant times herein, Debtor Integrated Physician Solutions, Inc. ("IPS") was a Delaware corporation wholly-owned by Orion.  As of the Petition Date, IPS operated the Debtors' physician practice management and group purchasing organization businesses.

18.     At all relevant times herein, Debtor Medical Billing Services, Inc. ("MBS") was a Texas corporation wholly-owned by Orion.  As of the Petition Date, MBS operated as part of Orion's revenue cycle management ("RCM") business.

19.     At all relevant times herein, Debtor Rand Medical Billing, Inc. ("Rand") was a California corporation wholly-owned by Orion.  As of the Petition Date, Rand operated as part of Orion's RCM business.

20.     At all relevant times herein, Debtor RMI Physician Services Corporation ("RMI") was a Texas corporation wholly-owned by Orion.  As of the Petition Date, RMI operated as part of Orion's RCM business.

21.     At all relevant times herein, Debtor Western Skies Practice Management, Inc. ("Western Skies") was a Colorado corporation wholly-owned by Orion.  As of the Petition Date, Western Skies operated as part of Orion's RCM business.

22.     At all relevant times herein, Debtor NEMS Acquisition, LLC ("NEMS Acquisition") was a Delaware limited liability company wholly-owned by Orion.  As of the Petition Date, NEMS Acquisition acted as a holding company for Plaintiff Northeast

Medical Solutions, LLC and Plaintiff NEMS West Virginia, both of which are Pennsylvania limited liability companies that operated as part of Orion's RCM business.

23.     At all relevant times herein, Debtor Physicians Practice Plus Holdings, LLC ("PPP HoldCo") was a Delaware limited liability company wholly-owned by Orion.  As of the Petition Date, PPP HoldCo acted as a holding company for Plaintiff Physician Practice Plus, LLC, a Delaware limited liability company that operated as part of Orion's RCM business.

24.     At all relevant times herein, Debtor Northstar FHA, LLC ("Northstar FHA") was a Delaware limited liability company wholly-owned by Orion.  As of the Petition Date, Northstar FHA acted as a holding company for Plaintiff Northstar First Health, LLC ("Northstar"), a Delaware limited liability company, which in turn acted as a holding company for Plaintiff Vachette Business Services, Ltd., an Ohio limited liability company. Northstar is an entity that was the subject of one of the Sham Acquisitions.

25.     At all relevant times herein, Debtor Phoenix Health, LLC ("Phoenix") was a Delaware limited liability company wholly-owned by Orion.  Phoenix is an entity that was the subject of one of the Sham Acquisitions.

26.     At all relevant times herein, Debtor MDRX Medical Billing LLC ("MDRX") was a Delaware limited liability company wholly-owned by Orion.  MDRX is an entity that was the subject of one of the Sham Acquisitions.

27.     At all relevant times herein, Debtor VEGA Medical Professionals, LLC ("Vega") was a Delaware limited liability company wholly-owned by Orion.  As of the Petition Date, Vega acted as a holding company for Plaintiff Allegiance Consulting Associates, LLC and Plaintiff Allegiance Billing & Consulting, LLC, both of which are New York limited liability companies.

28.    At all relevant times herein, Debtor NYNM Acquisition, LLC ("NYNM Acquisition") was a Delaware limited liability company wholly-owned by Orion.  As of the Petition Date, NYNM Acquisition acted as a holding company for certain non-debtor entities that are not parties to this action.

## II.    Defendants

29.    Upon information and belief, the Shareholder Defendants each received, directly or indirectly, Shareholder Redemption Payments for their own benefit or for the benefit of the ultimate shareholder recipient, as more specifically set forth below and in the annexed Appendix A, which is incorporated herein by reference, and also have the right to seek to recover all or a portion of the IRS Funds as set forth in Appendix A.

30.    Upon information and belief, defendant Richard Ian Griffiths ("Richard Griffiths") is a resident of Jersey in the Channel Islands.  Upon information and belief, Richard Griffiths was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A, and is jointly and severally liable for the damages sought herein with defendants Sally Griffiths and Blake Holdings Limited. Richard Griffiths, either directly, or through an agent, executed a Delaware Voting Rights Agreement (as defined below) in support of the Merger.

31.    Upon information and belief, defendant Sally Griffiths ("Sally Griffiths") is a resident of Jersey in the Channel Islands.  Upon information and belief, Sally Griffiths was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A, and is jointly and severally liable for the damages sought herein with defendants Richard Griffiths

and Blake Holdings Limited.  Sally Griffiths, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

32.    Upon information and belief, defendant Blake Holdings Limited ("Blake Holdings") is a private company incorporated in Jersey, Channel Islands.  Blake Holdings' registered office is at Kensington Chambers, 46/50 Kensington Place, St Helier, Jersey, JE1 1ET.  Upon information and belief, Blake Holdings was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A, and is jointly and severally liable for the damages sought herein with defendants Richard Griffiths and Sally Griffiths.  Blake Holdings, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

33.    Defendant VT Garraway Investment Fund Series IV (f/k/a City Financial Investment Fund Series IV) (the "Garraway Investment Fund") is an investment company incorporated in England and Wales under registration number IC000534 and authorized by the Financial Conduct Authority under product reference number 465988.  Upon information and belief, Garraway Investment Fund was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.  Garraway Investment Fund, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

34.    Defendant Legal & General Assurance Society Limited ("L&G Assurance Society") is a private limited company incorporated and registered in England and Wales under company number 00166055 with a registered office at One Coleman Street, London EC2R 5AA, United Kingdom.  Upon information and belief, the L&G Assurance Society

was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A. Legal & General Assurance Society, either directly, or through an agent, executed a UK Voting Rights Agreement in support of the Merger.

35.    Defendant Legal & General UK Alpha Trust ("L&G UK Alpha Trust") is a legal entity with a registered office at One Coleman Street, London EC2R 5AA, United Kingdom.  Upon information and belief, the L&G UK Alpha Trust was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds as set forth in Appendix A. L&G UK Alpha Trust, either directly, or through an agent, executed a UK Voting Rights Agreement in support of the Merger.

36.    Defendant The Bankers Investment Trust PLC ("Bankers Investment Trust") is a private limited company incorporated and registered in England and Wales under company number 00026351 with a registered office at 201 Bishopsgate, London, EC2M 3AE, United Kingdom.  Upon information and belief, Bankers Investment Trust was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds as set forth in Appendix A.  Bankers Investment Trust, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

37.    Defendant Marlborough Fund Managers Limited ("Marlborough") is a private limited company incorporated and registered in England and Wales under company

number 02061177 with a registered office at Marlborough House, 59 Chorley New Road, Bolton, Lancashire, BL1 4QP, United Kingdom.  Upon information and belief, defendant Marlborough UK Micro-Cap Growth Fund (together with Marlborough, the "Marlborough Transferees") is an entity owned and controlled by Marlborough.  Upon information and belief, the Marlborough Transferees were the transferees and/or the entities for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds as set forth in Appendix A.  Marlborough Transferees, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

38.     Defendant Jarvis Investment Management Limited ("Jarvis") is a private limited company incorporated and registered in England and Wales under company number 01844601 with a registered office at 78 Mount Ephraim, Royal Tunbridge Wells, Kent, TN4 8BS, United Kingdom.  Defendant JIM Nominees Limited ("JIM Nominees", and together with Jarvis, the "JIM Transferees") is a private limited company owned and controlled by Jarvis and incorporated and registered in England and Wales under company number 04634540 with a registered office at 78 Mount Ephraim, Royal Tunbridge Wells, Kent, TN4 8BS, United Kingdom.  Upon information and belief, the JIM Transferees were the transferees and/or the entities for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

39.     Defendant Kestrel Partners LLP ("Kestrel") is a limited liability partnership registered in England and Wales under company number OC346415 with a registered office at 1 Adam Street, London, WC2N 6LE.  Kestrel Partners operates Kestrel Inheritance Tax

Solution (and with Kestrel, "Kestrel Partners") as a discretionary investment management service.  Upon information and belief, the Kestrel Partners were the transferees and/or the entities for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds set forth on Appendix A, and are jointly and severally liable for the damages sought herein with the JIM Transferees and Stuart Rollason as set forth in Appendix A.  The Kestrel Partners, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

40.    Upon information and belief Stuart Rollason ("Rollason") is a resident of England.  Upon information and belief, Rollason was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth on Appendix A, and is jointly and severally liable with the JIM Transferees and Kestrel Partners for the relief sought herein as set forth in Appendix A. Rollason, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

41.    Defendant Shard Capital Partners LLP ("Shard") is a partnership authorized and regulated by the Financial Conduct Authority Registered Partnership number OC360394.  Shard's registered address is 23rd Floor, 20 Fenchurch St, London, EC3M 3BY.  Upon information and belief, Shard was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth on Appendix A, and is jointly and severally liable for the relief sought herein with the JIM Transferees as set forth in Appendix A.  Shard, either directly,

or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

42.     Defendant Herald Investment Trust PLC ("Herald") is a public limited company incorporated and registered in England and Wales under company number 02879728 with a registered office at 10–11 Charterhouse Square, London, EC1M 6EE, United Kingdom.  Upon information and belief, Herald was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A.  Herald, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

43.     Defendant Milkwood Capital Limited ("Milkwood Capital") is a private limited company incorporated and registered in England and Wales under company number 08626819 with a registered office at 5–7 High Street, Sunninghill, Berkshire, SL5 9NQ, United Kingdom.  Upon information and belief, defendant The Milkwood Fund (together with Milkwood Capital, the "Milkwood Transferees") is an investment company incorporated in the Cayman Islands that is owned and controlled by Milkwood Capital.  Upon information and belief, the Milkwood Transferees were the transferees and/or the entities for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to recover a portion of the IRS Funds set forth in Appendix A.  The Milkwood Transferees, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

44.     Upon information and belief, defendant Sir Rodney Malcolm Aldridge ("Sir Rodney") is a resident of the United Kingdom.  At all relevant times herein, Sir Rodney served as a Director on the Board of CHT.  Defendant Killik & Co. LLP ("Killik") is a

limited liability partnership incorporated and registered in England and Wales under company number OC325132 with a registered office at 46 Grosvenor Street, London, W1K 3HN.  Defendant Platform Securities Nominees Limited (together with Killik and Sir Rodney, the "Aldridge Transferees") is a private limited company incorporated in England and Wales under company number 03780112 with a registered office at 25 Canada Square, London, E14 5LQ, United Kingdom.  Upon information and belief, the Aldridge Transferees were the transferees and/or the entities for whose benefit such transfers were made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds as set forth in Appendix A.  The Aldridge Transferees, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

45.    Defendant Edale Capital LLP ("Edale Capital") is a limited liability partnership incorporated and registered in England and Wales under company number OC361162 with a registered office at 33 St. James's Square, London, SW1Y 4JS, United Kingdom.  Defendant Edale Europe Absolute Fund LP ("Edale Europe") is a Delaware limited partnership with a registered address c/o Corporation Service Company, 251 Little Falls Drive, Wilmington DE 19808.  Defendant Edale Europe Absolute Master Fund Limited ("Edale Master Fund") is incorporated and registered in the Cayman Islands with a registered address at P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands.  Defendant Credit Suisse Client Nominees (UK) Limited (together with Edale Capital, Edale Europe and Edale Master Fund, the "Edale Transferees") is a private limited company incorporated and registered in England and Wales under company number 01755936 with a registered office at 1 Cabot Square, London, E14 4QJ, England, United Kingdom.  Upon information and belief, the Edale Transferees were the transferees and/or

the entities for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds set forth in Appendix A. The Edale Transferees, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

46.    Defendant Maven Investment Partners Ltd ("Maven") is a private limited company incorporated and registered in England and Wales under company number 07511928 with a registered address of 6 Bevis Marks, London, England, EC3A 7BA. Upon information and belief, Maven was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

47.    Defendant Miton UK MicroCap Trust PLC ("Miton") is a limited liability partnership incorporated and registered in England and Wales under company number 09511015 with a registered office at Beaufort House, 51 New North Road, Exeter, EX4 4EP, United Kingdom. Defendant Miton Trust Managers Limited (a/k/a Miton Trust Managers PLC) (together with  Miton, the "Miton Transferees") is a private limited company incorporated and registered in England and Wales under company number 04569694 with a registered office at 6th Floor, Paternoster House, 65 St. Paul's Churchyard, London, EC4M 8AB. Upon information and belief, the Miton Transferees were the transferees and/or the entities for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds set forth in Appendix A. The Miton

Transferees, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

48.     Defendant Islandbridge Capital Limited ("Islandbridge") is a private limited company incorporated and registered in England and Wales under company number 06387449 with a registered office at 25 Bruton Street, London, W1J 6QH, United Kingdom. Defendant Islandbridge Opportunities Fund (together with Islandbridge, the "Islandbridge Transferees") is an exempt company registered as a mutual fund with the Cayman Islands Monetary Authority under number 1439480 located at 89 Nexus Way, Camana Bay KY1-9009, Cayman Islands.  Upon information and belief, the Islandbridge Transferees were the transferees and/or the entities for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds set forth in Appendix A.    The Islandbridge Transferees, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

49.     Defendant Merrill Lynch International ("Merrill Lynch") is a private unlimited company incorporated and registered in England and Wales under company number 02312079 with a registered office at 2 King Edward Street, London, EC1A 1HQ, United Kingdom.  Upon information and belief, Merrill Lynch was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

50.     Defendant JPMorgan Smaller Companies Investment Trust PLC ("JPMorgan Investment Trust") is a private limited company incorporated and registered in England and Wales under company number 2515996 with a registered office at 60 Victoria Embankment,

London, EC4Y 0JP, United Kingdom.  Upon information and belief, JPMorgan Investment Trust was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

51.     Defendant Skandinaviska Enskilda Banken AB (Publ) ("<u>SEB</u>") is a public company with limited liability incorporated and registered in Sweden under registration number 502032-9081 with its principal place of business at Kungstradgardsgatan 8, S-106 40 Stockholm, Sweden.  Upon information and belief, SEB was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

52.     Defendant Brewin Dolphin Limited ("<u>Brewin Dolphin</u>") is a private limited company incorporated and registered in England and Wales under company number 02135876 with a registered office at 12 Smithfield Street, London, EC1A 9BD, United Kingdom.  Upon information and belief, Brewin Dolphin was the transferee and/or the entity for whose benefit such transfer was made and is jointly as severally liable for the relief sought herein with the Denton Transferees (defined below) in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A.  Brewin Dolphin, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

53.     Upon information and belief, defendant Ari Charles Zaphiriou-Zarifi ("<u>Zaphiriou-Zarifi</u>") is a resident of England.  Defendant Denton & Co. Trustees Limited (together with Zaphiriou-Zarifi, the "<u>Denton Transferees</u>") is a private limited company incorporated and registered in England and Wales under company number 01939029 with a

registered office at Sutton House Weyside Park, Catteshall Lane, Godalming, Surrey, GU7 1XE. Upon information and belief, the Denton Transferees were the transferees and/or the entities for whose benefit such transfer was made and are jointly and severally liable for the relief sought herein with defendant Brewin Dolphin in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A.  The Denton Transferees, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

54.    Upon information and belief, defendant Rupert Faure Walker ("Walker") is a resident of England.  Upon information and belief, Walker was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

55.    Defendant Pershing Securities Limited ("Pershing Securities") is a private limited company incorporated and registered in England and Wales under company number 02474912 with a registered office at Royal Liver Building, Pier Head, Liverpool, L3 1LL, England, United Kingdom.   Upon information and belief, defendant Pershing Nominees Limited (together with Pershing Securities, the "Pershing Transferees") is a private limited company owned and controlled by Pershing Securities and incorporated in England and Wales under company number 02079368 with a registered office at Royal Liver Building, Pier Head, Liverpool, L3 1LL, England, United Kingdom.   Upon information and belief, the Pershing Transferees were the transferees and/or the entities for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds set forth in Appendix A.  The Pershing Transferees, either directly,

or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

56.    Defendant JPMorgan Life Limited is a registered limited liability life assurance company incorporated and registered in England and Wales under company number 185175 with a registered office at 25 Bank Street, Canary Wharf, London E14 5JP. Upon information and belief, JPMorgan Life Limited was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

57.    Defendant ABN AMRO Clearing Bank N.V., London Branch ("ABN AMRO London") is the United Kingdom establishment of ABN AMRO Clearing Bank N.V. under UK establishment number BR007553 with a UK establishment office address at 5 Aldermanbury Square, London, EC2V 7HR, United Kingdom.  Upon information and belief, ABN AMRO London was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

58.    Defendant THESIS Unit Trust Management Limited ("Thesis Management") is a private limited company incorporated and registered in England and Wales under company number 03508646 with a registered office at Exchange Building, Saint John's Street, Chichester, West Sussex, PO19 1UP, United Kingdom.  Upon information and belief, defendant Thesis Headway A Sub-Fund (together with Thesis Management, the "Thesis Transferees") is an entity owned and controlled by Thesis Management.  Upon information and belief, the Thesis Transferees were the transferees and/or the entities for

whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

59.    Defendant Tilney Asset Management Services Limited (f/k/a Towry Asset Management Limited) ("Tilney") is a private limited company incorporated and registered in England and Wales under company number 03691998 with a registered office at 6 Chesterfield Gardens, Mayfair, London, W1J 5BQ, United Kingdom.  Defendant Platform Securities Nominees Limited (together with Tilney, the "Tilney Transferees") is a private limited company incorporated in England and Wales under company number 03780112 with a registered office at 25 Canada Square, London, E14 5LQ, United Kingdom.  Upon information and belief, the Tilney Transferees were the transferees and/or the entities for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds set forth in Appendix A.  The Tilney Transferees, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

60.    Defendant Freedom Global Funds PCC Limited ("Freedom Global") is a protected cell company incorporated and registered in Guernsey under registration number 58879 with a registered office at 1st Floor, St Peters House, Le Bordage, St Peter Port, Guernsey, GY1 1BR, Channel Islands.  Upon information and belief, Freedom Global was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A.

61.    Defendant Interactive Investor Services Limited ("Interactive") is a private limited company incorporated and registered in England and Wales under company

number 02101863 with a registered office at Exchange Court, Duncombe Street, Leeds, LS1 4AX, United Kingdom.   Upon information and belief, defendant Interactive Investor Services Nominees Limited (together with Interactive, the "Interactive Transferees") is a private limited company owned and controlled by Interactive and incorporated in England and Wales under company number 00979423 with a registered office at Exchange Court, Duncombe Street, Leeds, LS1 4AX, United Kingdom.   Upon information and belief, the Interactive Transferees were the transferees and/or the entities for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

62.     Upon information and belief, defendant Matthew Max Edward Royde ("Max Royde") is a resident of the United Kingdom. Upon information and belief, defendant Megan Amelia Elizabeth Royde (together with Max Royde, the "Royde Transferees") is a resident of the United Kingdom.  Upon information and belief, the Royde Transferees were the transferees and/or the entities for whose benefit such transfers was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A.   The Royde Transferees, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

63.     Defendant Montlake UCITS Platform ICAV ("Montlake") is an investment company incorporated and registered in Ireland under company number 485472 with a registered address at 23 St. Stephen's Green, Dublin, D02 AR55, Ireland.   Upon information and belief, Montlake was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS

Funds set forth in Appendix A.  Montlake, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

64.    Defendant Elite Webb Capital Fund ("Elite Webb") is an investment company incorporated and registered in England and Wales under company number IC000847 with a registered office at Cedar House, 3 Cedar Park, Cobham Road, Wimborne, Dorset, BH21 7SB, United Kingdom.  Upon information and belief, Elite Webb was the transferee and/or the entity for whose benefit such transfers were made and is jointly and severally liable for the relief sought herein with Nortrust Nominees Limited in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A. Elite Webb either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

65.    Defendant Nortrust Nominees Limited ("Nortrust") is a private limited company incorporated and registered in England and Wales under company number 00955951 with a registered office at 50 Bank Street, Canary Wharf London, E14 5NT. Upon information and belief, Nortrust was the transferee and/or the entity for whose benefit such transfer was made and is jointly and severally liable for the relief sought herein with the Webb Transferees in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.  Nortrust, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

66.    Defendant Credo Capital Limited ("Credo") is a private limited company incorporated and registered in England and Wales under company number 03681529 with a registered office at York Gate, 100 Marylebone Road, London, NW1 5DX, United

Kingdom.   Defendant Moulton Goodies Limited is a Limited Company registered in Guernsey under company registration number 57051 with a registered address at Trafalgar Court 2nd Floor, East Wing Admiral Park, St. Peter Port, Guernsey GY1 3EL. Defendant Pershing Securities Limited (together with Credo, the "Credo Transferees") is a private limited company incorporated and registered in England and Wales under company number 02474912 with a registered office at Royal Liver Building, Pier Head, Liverpool, L3 1LL, England, United Kingdom.   Upon information and belief, the Credo Transferees were the transferees and/or the entities for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

67.    Upon information and belief, defendant Moshe Menachem Feuer (a/k/a Mark Feuer) ("Feuer") is a resident of the United States.  At all relevant times herein, Feuer served as a Director on the Board of CHT.   Upon information and belief, Feuer was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A.   Feuer, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

68.    Defendant UBS Private Banking Nominees Limited ("UBS Private Banking") is a private limited company incorporated and registered in England and Wales under company number 00185437 with a registered office at 5 Broadgate London, EC2M 2QS, United Kingdom.   Upon information and belief, UBS Private Banking was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to

recover a portion of the IRS Funds.  UBS Private Banking, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

69.    Upon information and belief, defendant Rupert Dyson ("Dyson") is an individual residing in England.  Upon information and belief, Dyson was the transferee and/or the entity for whose benefit such transfer was made and is jointly and severally liable for the relief sought herein with UBS Private Banking in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Exhibit A.  Dyson, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

70.    Defendant Linear Investments Limited ("Linear") is a private limited company incorporated and registered in England and Wales under company number 07330725 with a registered office at 8–10 Grosvenor Gardens, London, SW1W 0DH, United Kingdom.  Upon information and belief, Linear was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A.

71.    Defendant Credit Suisse (Channel Islands) Limited ("CS Channel Islands") is a non-cellular company incorporated and registered in Guernsey under company number 15197 with a registered address at Helvetia Court, Les Echelons, South Esplanade, St Peter Port, GY1 3YJ, Guernsey, Channel Islands.  Upon information and belief, CS Channel Islands was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

72.    Defendant Walker Crips Investment Management Limited (f/k/a Walker Crips Stockbrokers Limited) ("Walker Crips") is a private limited company incorporated

and registered in England and Wales under company number 04774117 with a registered office at Old Change House, 128 Queen Victoria Street, London, EC4V 4BJ, United Kingdom.  Upon information and belief, defendant W.B. Nominees Limited (together with Walker Crips, the "Walker Crips Transferees") is a private limited company owned and controlled by Walker Crips and incorporated in England and Wales under company number 00593594 with a registered office at 3rd Floor North Wing St James House, 27-43 Eastern Road, Romford, Essex, RM1 3NH, United Kingdom.  Upon information and belief, the Walker Crips Transferees were the transferees and/or the entities for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and have the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

73.    Defendant Gabelli Investor Funds, Inc. (a/k/a The Gabelli ABC Fund) ("Gabelli") is a Maryland corporation.  Upon information and belief, Gabelli was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A.

74.    Upon information and belief, defendant Dr. Shawn Zimberg ("Zimberg") is a resident of the United States.  At all relevant times herein, Zimberg served as a Director on the Board of CHT.  Upon information and belief, Zimberg was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A.  Zimberg, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

75.    Upon information and belief, defendant Oliver Rupert Andrew Scott ("Scott") is an individual residing in England.  Upon information and belief, the Scott was the transferee and/or the entity for whose benefit such transfer was made in regards to that

certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

76.     Defendant finnCap Ltd ("finnCap") is a private limited company incorporated and registered in England and Wales under company number 06198898 with a registered office at 60 New Broad Street, London, EC2M 1JJ, United Kingdom.  At all times relevant herein, finnCap acted as Nominated Advisor to CHT.  Upon information and belief, finnCap was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

77.     Upon information and belief, defendant John Joseph Johnston ("J. Johnston") is a resident of the United Kingdom.  At all relevant times herein, J. Johnston served as a Director on the Board of CHT.  Upon information and belief, J. Johnston was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.  J. Johnston, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.  J. Johnston filed a proof of claim against Debtor Constellation Healthcare Technologies, Inc.

78.     Defendant Johnston Asset Management Ltd. ("Johnston Asset") is a private limited company incorporate and registered in Scotland under company number SC450113 with a registered office at 8 Benview Road, Clarkston Toll, Glasgow, G76 7PP.  Upon information and belief, Johnston Asset was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder

Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A. Johnston Asset, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger. Johnston Asset filed a proof of claim against Debtor Constellation Healthcare Technologies, Inc.

79. Defendant Interactive Investor Limited ("Interactive") is a private limited company incorporated and registered in England and Wales under company number 04752535 with a registered office at 201 Deansgate, Manchester, M3 3NW, England, United Kingdom. Upon information and belief, Interactive was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

80. Defendant CFS Management Ltd (f/k/a CFS Portfolio Management Ltd) ("CFS") is a private limited company incorporated and registered in England and Wales under company number 02960433 with a registered office at 33-34 Alfred Place, London, WC1E 7DP, England, United Kingdom. Upon information and belief, CFS was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A.

81. Upon information and belief, defendant David Andrew Clark ("D. Clark", and together with J. Johnston, Zimberg, Feuer and Sir Rodney, the "Director Defendants") is a resident of the United Kingdom. At all relevant times herein, D. Clark served as a Director on the Board of CHT. Upon information and belief, D. Clark was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to

recover a portion of the IRS Funds set forth in Appendix A.  D. Clark, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.

82.    Upon information and belief, defendant Karin Johnston ("K. Johnston") is a resident of the United Kingdom.  Upon information and belief, K. Johnston was the transferee and/or the entity for whose benefit such transfer was made in regards to that certain amount of Shareholder Redemption Payments set forth in Appendix A and has the right to seek to recover a portion of the IRS Funds set forth in Appendix A. K. Johnston, either directly, or through an agent, executed a Delaware Voting Rights Agreement in support of the Merger.  K. Johnston filed a proof of claim against Debtor Constellation Healthcare Technologies, Inc.

83.    Defendant the United States of America is the government of the United States of America collecting taxes through the Department of Treasury and its agency the IRS.

## JURISDICTION AND VENUE

84.    This adversary proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

85.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 because the claims asserted herein arise in the above-captioned Chapter 11 cases.

86.    This is a core proceeding under 28 U.S.C. § 157(b)(2).

87.    Venue is proper pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to the above-captioned pending Chapter 11 cases.

88.    In the event that this Bankruptcy Court or any other appropriate court finds any part of this adversary proceeding to be "non-core," Plaintiff consents to the entry of

final orders and judgments by the Bankruptcy Court, pursuant to Bankruptcy Rule 7008. Plaintiff also consents to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTUAL BACKGROUND

### III.    Pre-Merger Background

89.    In 2012, Parmar and Southport Lane Management, LLC ("Southport") entered into a joint business venture to acquire 100% of the equity in Debtor Orion.

90.    Parmar and Southport formed Constellation Health Group, LLC ("CH Group"), Constellation Health, LLC ("CHLLC"), Constellation Investment, and First United, to serve as holding companies for their respective interests in CHT.

91.    CHLLC's initial members were CH Group, which was controlled by Southport, and Constellation Investment and First United, both of which were controlled by Parmar.

92.    On or about June 17, 2013, CHLLC acquired control over the entire issued share capital of Orion.

93.    On or about June 9, 2014, Parmar acquired control over all of the interests in CHLLC.

94.    On September 3, 2014, Parmar formed CHT as the holding company for Orion and its subsidiaries.

95.    On or about December 8, 2014, CHT consummated a "go-public" transaction, after which it was publicly traded on the London Stock Exchange's Alternative Investments Market (the "AIM").

96.    CHLLC owned 68.08% of CHT's outstanding shares after the conclusion of the "go-public" transaction.

## IV.     The Sham Acquisitions Inflate CHT's Value

97.     As discussed below, the Sham Acquisitions were funded with money raised in secondary rounds of equity offerings through the AIM.

98.     Upon information and belief, the Sham Acquisitions began in or about May 2015, when CHT raised approximately $15.8 million through a secondary offering on the AIM.

99.     The Sham Acquisitions shared common characteristics:  (1) money was raised through secondary public offerings on the AIM; (2) the acquisition target was formed shortly before the date of acquisition; and (3) the proceeds of the public offerings were used for other purposes, including (among other purposes), to line Parmar's own pockets and secrete property for Parmar's benefit.

100.     On September 16, 2015, CHT announced its acquisition of Northstar for $18 million.  In connection therewith, Parmar, the other Board Members and Bakhshi caused CHT to falsely describe Northstar as having 233 employees, 77 clients, and 2014 year end revenue of $7.9 million.  Northstar had no operations at the time of the alleged acquisition.

101.     On September 18, 2015, CHT announced its acquisition of Phoenix. In connection therewith, Parmar, the other Board Members and Bakhshi caused CHT to falsely describe Phoenix as having 138 employees and generating revenue of $9.8 million and EBITDA of $2.2 million, with net assets of $1.1 million as of December 31, 2014.  In truth, Phoenix had no operations at the time of the alleged acquisition and, in fact, Phoenix did not obtain an Employer Identification Number ("EIN") from the IRS until November 27, 2015.

102.     On December 11, 2015, CHT announced a second capital raise earmarked for the acquisition of MDRX.  In connection therewith, Parmar, the other Board Members and

Bakhshi caused CHT to falsely describe MDRX's business by stealing, almost verbatim, the description of an unrelated company used in a confidential offering memorandum sent to Parmar and Zaharis a few months earlier. In reality, MDRX was only formed on December 7, 2015. On January 6, 2016, the Board of Directors of CHT, consisting of Parmar, Zaharis, and the Director Defendants, approved the admission of 18,751,195 new shares to the AIM market, which raised approximately $45 million. On February 10, 2016, CHT announced its acquisition of MDRX for $28 million. MDRX claimed to have acquired its customers from Apex Healthcare Systems, a fictitious company. MDRX was not assigned an EIN until March 11, 2016 and had no operations or employees at any time.

103. When questioned in an email about the fraudulent MDRX description by a representative of the company whose information was stolen, Zaharis immediately forwarded the email to his co-conspirators, including Parmar and Bakhshi, indicating "not good ………". Apparently, Bakhshi agreed, and replied "oh fu**." Zaharis then indicated that he would call Bakhshi to discuss, and Bakhshi replied "Pls. We need to be ready for this."

104. The Board Members and Bakhshi created fictitious revenue for non-existent customers by re-characterizing cash raised from the secondary offerings as third-party customer receipts.

105. The Board Members and Bakhshi altered financial statements and fabricated financial information to include fictitious entries, which created the illusion of customer deposits.

106. The Sham Acquisitions caused CHT's revenue and earnings to be overstated in its financial statements filed with the AIM in 2015 and 2016. CHT's stock price then increased based on these fraudulent financial statements.

## V.    The Go-Private Merger Transaction

107.    Starting in or about June 2016, CHT pursued a potential merger transaction with CC Capital Management, LLC ("CC Capital"), a private investment firm formed under the laws of the State of Delaware.  At the time, CHT's shares were publicly traded on the AIM, and, pursuant to the proposed transaction, CC Capital would acquire a controlling interest in CHT.

108.    Ultimately, these negotiations resulted in the Merger, pursuant to which CHT Holdco acquired one hundred percent (100%) of the issued and outstanding shares of CHT.

109.    Throughout the course of negotiations and continuing for some period of time following the closing of the Merger, Parmar was a Director and CEO of CHT, Zaharis was a Director and CFO of CHT, and Chivukula was a Director of Orion and the Secretary of CHT.

110.    Prior to the Merger, the Parmar Shareholder Entities owned, directly or indirectly, approximately 53.5% of CHT's outstanding shares.  Other entities owned and controlled by Parmar's close associates, including Zaharis, Bakhshi and others, owned approximately 11.65% of CHT's outstanding shares.

111.    Prior to the Merger, the Shareholder Defendants held, directly or indirectly, approximately 34.5% of CHT's outstanding shares.

112.    Upon information and belief, as a condition and inducement to the Merger, stockholders representing at least 89% of CHT's outstanding shares were required to execute, and did, in fact, execute, Voting and Support Agreements in furtherance of the Merger, and nearly all stockholders who executed Voting Support Agreements executed the form Voting Rights Agreement (as defined below).

113.    Upon information and belief, as a condition and inducement to the Merger, the affirmative vote of a majority of the voting power of the non-insider shares (i.e. a majority of the minority) was required to, and did in fact, vote in favor of the Merger.

114.    During the Merger negotiations and related due diligence, Parmar acted as principal on behalf of CHT.  Zaharis and Chivukula, as Directors and/or members of CHT's senior management, actively supported Parmar in this effort and, upon information and belief, interacted directly with CC Capital in providing information regarding CHT's operations, financial condition and other information relevant to the proposed Merger.

115.    The Board Members represented CHT to be a growing force in the $37 billion medical billing industry, and used the Sham Acquisitions discussed above to fraudulently inflate CHT's size and value.

116.    The Sham Acquisitions were also used to support the Board Members' claims that CHT's revenue and EBITDA were rapidly growing and continually exceeding expectations.  For example, upon information and belief, CHT's EBITDA was represented as having increased in 2014 by 104% to $14.2 million and another 68.3% to $23.9 million in 2015.  Similarly, upon information and belief, (a) revenue was represented as having grown by more than 40% to $76.7 million in 2015, with CHT's strategic acquisitions during that year purportedly contributing $15.5 million to the company's growth (20.2% of all revenues), and (b) organic revenue also purportedly increased by $10 million, at a rate of 12% in 2015.

117.    Upon information and belief, the Board Members also represented that, for the six-month period ended June 30, 2016, CHT's revenues were approximately $57 million and its EBITDA was approximately $21 million.  And, for the year ended December 31, 2016, CHT's revenues were purportedly $136 million and its EBITDA $50 million.

118.    During the course of the Merger negotiations, the Board Members provided documents and other information to CC Capital regarding CHT's financial condition and business operations, which, upon information and belief, was represented to be true and correct.

119.    As the structure of the proposed Merger took shape, CHT Holdco was formed as a single member limited liability company, with Alpha Cepheus being the sole member and Parmar acting as its Manager.

120.    Upon information and belief, CC Holdco was formed on November 14, 2016.

121.    Ultimately, the terms and conditions of the Merger were agreed to and memorialized in a certain Merger Agreement, Subscription Agreement dated November 24 2016 (the "Merger Agreement"), and other related agreements, including but not limited to the form Delaware Voting Rights Agreement (as defined below), (each a "Transaction Document" and, collectively, the "Transaction Documents").

122.    The Transaction Documents provided:

(a) In order for the Acquisition to occur (and subject to all other Conditions being satisfied and/or waived), Shareholders must approve the Resolution: by the affirmative vote of holders of a majority of the voting power of CHT entitled to vote at the General Meeting ("Stockholder Approval"); and by the affirmative vote of a majority of the voting power of the Unaffiliated Shareholders;

(b) if a Delaware Voting Agreement is not validly executed the promissory note consideration with respect to such Common Shares will be satisfied pursuant to the terms of the B Subordinated Promissory Notes (instead of pursuant to the terms of the A Subordinated Promissory Notes); and

(c) It is also a condition of the Merger Agreement that Shareholders representing in aggregate of 89 percent [sic] of the Common Shares vote to approve the Merger Agreement.

123.    On November 25, 2016, CHT and CHT Holdco announced the Merger.

124.    Upon information and belief, as a condition and inducement to the Merger, the Board Members and certain of the Parmar Shareholder Entities (including Alpha Cepheus, First United and CHLLC) made numerous representations and warranties concerning CHT's financial state, and business, including, among other things:

(a)    that CHT's financial statements were truthful and accurate;

(b)    that there were no false entries on any of CHT's books and records;

(c)    that CHT's accounts receivable were the result of *bona fide* transactions; and

(d)    that CHT's material contracts were valid and enforceable.

125.    Upon information and belief, as further inducement and protection in the event of a breach of representations, warranties, covenants or indemnity obligations, (a) Parmar, as Manager of Alpha Cepheus, executed a Pledge and Security Agreement, granting CC Holdco a first priority security interest and continuing lien on all right, title and interest in membership interests in CHT Holdco held by Alpha Cepheus, and (b) Parmar, as Manager of CHLLC and First United, executed Pledge and Security Agreements granting CC Holdco a first priority security interest and continuing lien in all right, title and interest in the membership interests held by these entities in Alpha Cepheus.

126.    Based on the information provided by the Board Members, CHT was valued in excess of $309 million.

127.    Accordingly, under the terms of the Merger Agreement, at the closing of the Merger, each share of CHT common stock outstanding would be cancelled and converted

into the right to receive $2.93 cash and $0.43 in promissory notes per share (the "Acquisition Price"), which represented a 45% premium to the AIM closing price of CHT shares as of November 25, 2016.

128.    Under the terms of the Merger Agreement, each shareholder who executed a Delaware Voting Agreement (each, a "Delaware Voting Rights Agreement") was entitled to receive the A Subordinated Promissory Note, while each shareholder who executed a UK Voting Rights Agreement (each, a "UK Voting Rights Agreement"), voted against the merger or who did not execute a Delaware Voting Rights Agreement was entitled to receive the B Subordinated Promissory Note.

129.    As detailed in the Merger Agreement, the A Subordinated Promissory Notes were not subject to certain offsets or reductions, unlike the B Subordinated Promissory Notes.

130.    On January 18, 2017, CHT's shareholders approved the Merger.

131.    Upon information and belief, CHT Shareholders representing approximately 91.95% of outstanding shares executed either Delaware Voting Rights Agreements or UK Voting Rights Agreements, of which approximately 86.72% executed the Delaware Voting Rights Agreement, and the remaining 5.23% executed a UK Voting Rights Agreement.

132.    On January 26, 2017, CHT requested that trading of its shares on the AIM be suspended.

133.    The Merger closed on or about January 30, 2017.

134.    Upon information and belief, in connection with the consummation of the Merger, CC Holdco became as the controlling member of CHT Holdco.

135.    Following the Merger, (i) CHT Holdco owned 100% of the equity interests in CHT; (ii) CC Holdco controlled approximately 50.7% of the economic and 55% of the

voting interests in CHT; and (iii) Alpha Cepheus controlled approximately 49.3% of the economic and 45% of the voting interests in CHT.

## VI.     The Merger Proceeds, Merger Financing and Shareholder Redemption Payments

136.    In anticipation of and in connection with the Merger closing, upon information and belief, between January 24, 2017 and January 30, 2017, CC Capital and its related investors deposited a total of $82,502,260.25 into a CC Holdco bank account maintained by JPMorgan Chase located at 270 Park Avenue New York, NY 10017 (the "CC Holdco Bank Account").  Upon information and belief, the CC Holdco Bank Account was established by and opened in the name of CC Holdco.

137.    At closing on January 30, 2017, the Debtors, as borrower and/or guarantors under the Bank of America credit agreement and related loan documents, deposited the $130,000,000 of Merger Financing into the CC Holdco Bank Account.

138.    The Merger Financing was jointly and severally guaranteed by all Debtors.

139.    As collateral security for their guarantees, Debtors granted first priority liens on all of their property, including 100% of the equity interests in each of their subsidiaries, to Bank of America.

140.    As a result of the deposits by CC Holdco's investors and the Debtors, as of January 30, 2017, the CC Holdco Bank Account held the full $212,502,269.25 of Merger Proceeds.

141.    The remainder of the Acquisition Price was financed by the issuance by CHT of unsecured promissory notes to its shareholders in the amount of approximately $39.6 million.

### A.     Disbursement of the Merger Proceeds

142.    On the Merger closing date, $177,154,981.43 in Merger Proceeds was transferred from the CC Holdco Bank Account to an account at the Royal Bank of

Scotland, plc. maintained by Capita Registrars Limited ("Capita"), the exchange agent for the Merger. Upon information and belief, the remaining $35,347,287.82 was held in the CC Holdco Bank Account. Upon information and belief, Capita and CC Holdco then disbursed the Merger Proceeds to CHT shareholders, including the Shareholder Defendants and the Parmar Shareholder Entities, or otherwise used the Merger Proceeds to pay fees and costs incurred in connection with the Merger.

143. On January 30, 2017, $9,520,035.90 of Merger Proceeds was transferred from the CC Holdco Bank Account to an account in the name of Debtor Orion. On the same date, approximately (a) $3.1 million was withdrawn in connection with a loan repayment to "Large Corporate Loan Servicing", and (b) $2.5 million was paid to Winston & Strawn LLP. Numerous additional withdrawals were also made from the account, resulting in an ending balance as of January 31, 2017 of less than $ 1 million.

### i.    Merger Proceeds That Are The Subject Of The Destra Proceeding

144. On January 30, 2017, $5,348,500.72 in Merger Proceeds was wired from the CC Holdco Bank Account to an escrow account maintained at Wilmington Savings Fund Society under the name Blue Mountain Healthcare/Young Conaway Stargatt & Taylor Escrow Savings, Account Number XXXXX2150 (the "YC Escrow Account").[2] These funds were Merger Proceeds due to be paid to Alpha Cepheus in connection with the Merger. On or about February 3, 2017, $49,918,984.28 in Merger Proceeds, due to be paid to Blue Mountain, were wired from the Capita account to the YC Escrow Account bringing the total Merger Proceeds transferred to the YC Escrow Account to $55,267,485.00 (the

---

[2]    Parmar was directed to cause certain of the Parmar Shareholder Entities to deposit a total of $55,267,485.28, representing a portion of the Parmar Shareholder Redemption Payments expected to be paid to Parmar-controlled entities (specifically, Blue Mountain and Alpha Cepheus), by order of the Delaware Court of Chancery (the "Chancery Court") in a prepetition action styled *Destra Targeted Income Unit Investment Trust, on behalf of Unitholders, et al. v. Parnjit Singh Parmar (a.k.a. Paul Parmar), et al.*, Del. Ch. No. 13006-VCL (the "Destra Litigation"), currently pending before the Chancery Court.

"YC Escrowed Funds").  The YC Escrowed Funds are the subject of the Debtors' related adversary proceeding styled *Orion Healthcorp, Inc., et al. v. Parmar, et al.*, Adversary Proceeding No. 18-08053 (AST) (the "Destra Proceeding").

145.  Upon information and belief, on January 30, 2017, $661,558.28 of Merger Proceeds due to be paid to Alpha Cepheus was wired from the CC Holdco Bank Account to an attorney escrow account maintained at Wells Fargo Bank by Robinson Brog Leinwand Greene Genovese & Gluck, P.C., Parmar's long-time attorneys who represented CHT in connection with the Merger and Parmar in the Destra Litigation (the "RB Escrow Account").  These funds are the subject of the Destra Proceeding.

146.  Upon information and belief, on or about January 30, 2017 Capita wired $7,843,621.72 into an account in the name of, or for the benefit of AAKB.  Upon information and belief, thereafter, $4 million thereof was sent to the RB Escrow Account (or some other escrow account maintained by Robinson Brog).  Upon information and belief, as the beneficial owner of AAKB, Bakhshi received, or otherwise directly benefited from, the monies paid to AAKB in connection with the Merger.  These funds are the subject of the Destra Proceeding.

147.  On January 30, 2017 Capita wired $45,959,429.43 into the RB Escrow Account.  These monies represented Merger Proceeds due to be paid to defendants Alpha Cepheus, PPSR, PBPP Partners, MYMSMD (for the account and benefit of Zaharis), Lexington and Vega.  These funds are the subject of the Destra Proceeding.

148.  On March 15, 2017, the DOJ seized $20.1 million in Merger Proceeds from the RB Escrow Account.  These monies represented the portion of the Merger Proceeds held in the RB Escrow Account due to be paid, and specifically attributable to defendant PBPP Partners.  These funds are the subject of the Destra Proceeding.

###### ii.    Merger Proceeds At Issue Herein

149.    On January 30, 2017, $2,930,000.00 in Merger Proceeds was transferred to a bank account owned and controlled by defendants Richard Griffiths, Sally Griffiths and/or Blake Holdings.

150.    On January 30, 2017, $8,413,495.00 in Merger Proceeds was wired to a bank account owned and controlled by defendant Richard Griffiths, Sally Griffiths and/or Blake Holdings.

151.    On January 30, 2017, $630,067.20 in Merger Proceeds was wired to a bank account owned and controlled by defendants Max Royde and Megan Royde.

152.    Upon information and belief, as detailed in Appendix A, on or about January 30, 2017, Capita transferred at least $67.8 million of the Merger Proceeds to the remaining Shareholder Defendants.

153.    Capita retained $10,435,097.13 of Shareholder Redemption Payments (*i.e.*, the IRS Funds).  Upon information and belief, the IRS Funds were withheld because Capita did not have sufficient information to determine whether a withholding tax was due and owing to the IRS pursuant to applicable law.

###### B.    The IRS Funds are Transferred to the IRS

154.    The IRS Funds were retained by Capita under the Foreign Investment in Real Property Tax Act of 1980, 26 U.S.C. § 1445, which requires a percentage of consideration paid for certain transactions to be withheld and deposited with the IRS, to which foreign shareholders may then submit a US tax return and potentially receive a refund.

155.    Capita ultimately transferred the IRS Funds to CHT so that CHT could remit them to the IRS with the requisite shareholder information.

156.    On or about December 29, 2017, Capita wired the IRS Funds to Orion's main operation account at JPMorgan Chase Bank.

157.    On or around January 16, 2018, to avoid potential liability (including potential criminal liability), CHT directed Orion to wire the IRS Funds to the IRS. Accompanying the transfer was a reservation of rights letter in which CHT and Orion disclosed that the IRS Funds were believed to be the proceeds of potentially fraudulent transfers.  CHT and Orion requested that the IRS refrain from providing any refunds until a court of competent jurisdiction determined the appropriate recipients.

158.    Upon information and belief, the IRS possesses the IRS Funds.  Plaintiff believes it to be imminent that the IRS will distribute some or all of the IRS Funds as refunds to Shareholder Defendants who perfect a refund request.

## VII.    Discovery of the Fraud

159.    Upon the closing of the Merger, CHT's Board of Directors was reconstituted, with CC Holdco appointing the majority of directors.  Parmar continued as a Director, and Parmar, Zaharis, Chivukula, Bakhshi and others managed the business and controlled the books and records of CHT.

160.    In or about April 2017, Truc To ("To"), the KPMG partner who had led the financial due diligence efforts in connection with the Merger, was hired as CFO of CHT. The hiring of To was part of an effort by the newly constituted Board of Directors to improve CHT's financial and accounting processes and reporting and to exercise increased oversight over the processes.  With access to this information, questions and concerns emerged about the state of CHT's business operations.

161.    Upon information and belief, in or about September 2017, Parmar complained to To about the increased oversight.

162.    The emerging questions and concerns were addressed with Parmar, who, upon information and belief, provided various explanations.  Upon information and belief, these conversations culminated in a specially called meeting of CHT's Board of Directors on or about September 29, 2017 wherein Parmar disclosed that CHT's consolidated revenue and EBITDA for 2017 were $70 million less and $50 million less, respectively, than the amounts indicated during the Merger negotiations.

163.    On September 29, 2017, Parmar resigned from the Board of Directors of CHT effective immediately.

164.    Zaharis and Chivukula were placed on administrative leave and then terminated on October 13, 2017 after refusing to be interviewed and refusing to return CHT computers.

165.    CHT and CC Capital accelerated the investigation into CHT's financial condition and the circumstances of the Merger.  This investigation ultimately resulted in the appointment of Tim Dragelin as the Debtors' interim CEO and CFO, a thorough investigation into the Debtors, and the filing of the Debtors' bankruptcy cases and related adversary proceedings.

## VIII.    The Shareholder Redemption Payments and IRS Funds Were Stolen From and Rightfully Belong to the Liquidating Trust

166.    In order to effectuate the Merger, the Board Members and Bakhshi knowingly concealed and falsified the true financial condition of the Debtors.  They converted assets of the Debtors in order to obtain the Merger Financing.

167.    The Shareholder Redemption Payments and IRS Funds constituted property of the Debtors' estates, which now belong to the Liquidating Trust.

168.    As the rightful owner, the Liquidating Trust has a superior interest in and to the Shareholder Redemption Payments and IRS Funds, over all other parties hereto.

169.   As a result of the theft of the Shareholder Redemption Payments and IRS Funds from the Debtors, the Shareholder Defendants have been unjustly enriched at the Debtors' expense.

## IX.   Alternatively, The Shareholder Redemption Payments and IRS Funds Are Proceeds of Avoidable Fraudulent Transfers

170.   The Debtors did not receive reasonably equivalent value for incurring the Merger Financing and other transfers they made in connection with the Merger.

171.   Each of the Debtors' pre-Merger financial condition was significantly impacted by the Merger Financing.

172.   The Board Members and Bakhshi knowingly concealed and falsified the true financial condition of the Debtors from their creditors, pre- and post-Merger.

173.   The Debtors were under no obligation to enter into the Merger or incur the obligations under the Merger Financing that resulted in a massive payout to its shareholders, including Parmar and the Parmar Entities.  But for the fraudulent intent of the Board Members and Bakhshi the Debtors would not have done so.

174.   Plaintiff seeks to avoid and recover the Shareholder Redemption Payments and IRS Funds as actual and constructively fraudulent transfers.

## COUNT I.

## TURNOVER OF THE SHAREHOLDER REDEMPTION PAYMENTS AND IRS FUNDS
## (11 U.S.C. §§ 542)

175.   The Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

176.   The Shareholder Redemption Payments and IRS Funds are in the possession, custody or control of the Shareholder Defendants and the IRS.

177.    The Shareholder Redemption Payments and IRS Funds were stolen from the Debtors and rightfully constituted property of the Debtors' estates that have been transferred to the Liquidating Trust.

178.    The Shareholder Redemption Payments and IRS Funds can be used to satisfy claims of the Debtors' legitimate creditors.

179.    The Shareholder Redemption Payments and IRS Funds are valued at over $90 million, and, therefore, are not of inconsequential value or benefit to the Liquidating Trust.

180.    The Shareholder Redemption Payments and IRS Funds should be turned over by the Shareholder Defendants and the IRS to the Liquidating Trustee pursuant 11 U.S.C. § 542.

## COUNT II.

### UNJUST ENRICHMENT

181.    The Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if fully set forth herein.

182.    The Shareholder Defendants have received a benefit from the transfer of the Shareholder Redemption Payments and IRS Funds at the Debtors' expense.

183.    The Shareholder Redemption Payments and IRS Funds rightfully belong to the Liquidating Trust.

184.    It is against equity and good conscience to permit the Shareholder Defendants to retain the Shareholder Redemption Payments and recover the IRS Funds.

185.    The Shareholder Defendants have been unjustly enriched at the Debtors' expense as a result of the theft of the Shareholder Redemption Payments and IRS Funds.

186.    By reason of the foregoing, the Liquidating Trustee is entitled to an order from this Bankruptcy Court directing the Shareholder Defendants and the IRS to immediately turnover the Shareholder Redemption Payments and IRS Funds to the Liquidating Trustee.

**COUNT III.**

**<u>CONVERSION</u>**

187.    The Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if fully set forth herein.

188.    The Debtors are the rightful owners of the Shareholder Redemption Payments and IRS Funds.

189.    The Shareholder Defendants have unlawfully and without authorization assumed and exercised dominion and control over the Shareholder Redemption Payments and IRS Funds to the exclusion of the Liquidating Trust and inconsistent with its right as the rightful owner.

190.    The Shareholder Defendants' exercise of dominion and control over the Shareholder Redemption Payments and IRS Funds has unjustifiably denied the Liquidating Trust the right to use, consume, exploit and profit from same.

191.    The Liquidating Trust has demanded return of the Shareholder Redemption Payments and the IRS Funds.

192.    The Shareholder Defendants have refused to return the Shareholder Redemption Payments to the Liquidating Trust and waive their rights to recover the IRS Funds so that the Liquidating Trust may recover them.

193.    By reason of the foregoing, the Liquidating Trustee is entitled to an order from this Bankruptcy Court directing the Shareholder Defendants and the IRS to

immediately turnover the Shareholder Redemption Payments and the IRS Funds to the Liquidating Trustee.

## COUNT IV.

### REPLEVIN

194.    The Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if fully set forth herein.

195.    The Merger Financing is specifically identifiable and traceable to the Shareholder Redemption Payments and IRS Funds.

196.    The Liquidating Trust has superior interest in and to the Shareholder Redemption Payments and IRS Funds, as such money was stolen from the Debtors and was property of the Debtors' estates transferred to the Liquidating Trust.

197.    The Shareholder Defendants are wrongfully retaining custody, possession or control over the Shareholder Redemption Payments and seeking to recover the IRS Funds.

198.    The Liquidating Trust is unaware of any valid defenses.

199.    By reason of the foregoing, the Liquidating Trustee is entitled to an order from this Bankruptcy Court directing the Shareholder Defendants and the IRS to immediately turnover the Shareholder Redemption Payments and IRS Funds to the Liquidating Trustee.

## COUNT V.

### INTENTIONAL FRAUDULENT TRANSFER
### (11 U.S.C. §§ 548(a)(1)(A) and 550)

200.    The Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

201.    CHT entered into and executed the transactions in connection with the Merger with knowledge of the effect such transactions would have on the future creditors of

CHT and those created by the Merger, and with the intent to hinder, delay or defraud such creditors.

202.    The Debtors did not receive reasonably equivalent value for incurring the Merger Liens that secured the funding of the Shareholder Redemption Payments and the IRS Funds.

203.    The Shareholder Redemption Payments and transfer of the IRS Funds occurred within two years of the Petition Date.

204.    The Shareholder Redemption Payments and transfer of the IRS Funds should be avoided and recovered from the Shareholder Defendants and IRS pursuant to 11 U.S.C. §§ 548(a)(1)(A), and 550(a).

## COUNT VI.

## CONSTRUCTIVE FRAUDULENT TRANSFER
### (11 U.S.C. §§ 548(a)(1)(B) and 550)

205.    The Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

206.    The Debtors did not receive reasonably equivalent value for incurring the Merger Liens that secured the funding of the Shareholder Redemption Payments and IRS Funds.

207.    At the time the Shareholder Redemption Payments and IRS Funds were transferred, the Debtors were either insolvent or became insolvent as a result of the Merger transaction.  Specifically, (i) the Debtors were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors was an unreasonably small capital; and/or (ii) the Debtors intended to incur, or believed or reasonably should have believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

208.    The transfer of the Shareholder Redemption Payments and IRS Funds occurred within two years of the Petition Date.

209.    The Shareholder Redemption Payments and transfer of the IRS Funds should be avoided and recovered from the Shareholder Defendants, pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550(a).

**COUNT VII.**

**ACTUAL FRAUDULENT TRANSFER**
**(11 U.S.C. § 544 and 6 Del. C. § 1304(a)(1))**

210.    The Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

211.    CHT approved the Merger and entered into and executed the transactions in connection therewith with knowledge of the effect such payments would have on the future creditors of CHT or those created by the Merger, and with the intent to hinder, delay or defraud such creditors.

212.    The Debtors did not receive reasonably equivalent value for incurring the Merger Liens that secured the funding of the Shareholder Redemption Payments and IRS Funds.

213.    The Shareholder Redemption Payments and transfer of the IRS Funds occurred within four years of the Petition Date.

214.    The Shareholder Redemption Payments and transfer of the IRS Funds should be avoided and recovered from the Shareholder Defendants pursuant to 11 U.S.C. § 544 and sections 1304(a)(1) of the Delaware Uniform Fraudulent Transfer Act ("DUFTA").

## COUNT VIII.

### CONSTRUCTIVE FRAUDULENT TRANSFER
### (11 U.S.C. § 544 and 6 Del. C. §§ 1304(a)(2) and 1305(a))

215.    The Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

216.    The Debtors did not receive reasonably equivalent value for incurring the Merger Liens that secured the funding of the Shareholder Redemption Payments and IRS Funds.

217.    At the time the Shareholder Redemption Payments and IRS Funds were transferred, the Debtors were either insolvent or became insolvent as a result of the Merger transaction.  Specifically, (i) the Debtors were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors was an unreasonably small capital; and/or (ii) the Debtors intended to incur, or believed or reasonably should have believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

218.    The Shareholder Redemption Payments and transfer of the IRS Funds occurred within four years of the Petition Date.

219.    The Shareholder Redemption Payments and transfer of the IRS Funds should be avoided and recovered from the Shareholder Defendants pursuant to 11 U.S.C. § 544 and sections 1304(a)(2) and 1305(a) of the DUFTA.

## COUNT IX.

### CONSTRUCTIVE TRUST
### (11 U.S.C. § 105(a))

220.    The Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

221.    Parmar had a fiduciary duty to the Debtors.

222.    Parmar assured the Debtors that they could receive value in connection with the Merger, and, in reliance thereon, the Debtors incurred millions of dollars in debt or otherwise paid millions of dollars to finance the Merger.

223.    The Shareholder Defendants received the Shareholder Redemption Payments and right to seek to recover a portion of the IRS Funds and as a result they have been unfairly and unjustly enriched.

224.    The Shareholder Redemption Payments and IRS Funds, constitute a portion of fraudulently obtained proceeds of the Merger and are in the possession, custody, or control of the Shareholder Defendants and the IRS.

225.    As a result, the Liquidating Trustee is entitled to the imposition of a constructive trust for the benefit of the Liquidating Trust on the Shareholder Redemption Payments and IRS Funds.

## COUNT X.

### PERMANENT INJUNCTION PREVENTING
### DISTRIBUTION OF THE IRS FUNDS
### (11 U.S.C. § 105(a))

226.    The Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

227.    Plaintiff will suffer irreparable harm absent the issuance of a permanent injunction preventing the Shareholder Defendants from seeking a refund from the IRS of the IRS Funds.

228.    Plaintiff has sufficiently demonstrated that he will be successful on the merits of the fraudulent transfer and other claims set forth herein.

229.    Alternatively, Plaintiff has set forth sufficiently serious questions going to the merits of the fraudulent transfer and other claims asserted herein to make such claims a fair ground for litigation.

230.    The balance of the hardships tips in Plaintiff's favor because the Shareholder Defendants and IRS would suffer no harm by the issuance of the requested injunction, whereas the Liquidating Trust will suffer great harm if the IRS transfers the IRS Funds to the Shareholder Defendants.

231.    Accordingly, this Court should permanently enjoin the IRS from paying a refund to the Shareholder Defendants, and the Shareholder Defendants from requesting a refund from the IRS with respect to the IRS Funds.

## COUNT XI.

## DECLARATORY JUDGMENT

232.    Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

233.    This matter constitutes an actual case in controversy between the Plaintiff and the Defendants.

234.    By virtue of the foregoing, the Liquidating Trustee has superior rights to and interests in the Shareholder Redemption Payments and IRS Funds over all of the Defendants.

235.    The Liquidating Trustee is entitled to a judgment from this Bankruptcy Court determining and declaring that the Liquidating Trustee has a superior interest over all of the Defendants in and to the Shareholder Redemption Payments and IRS Funds.

## COUNT XII.

## <u>BREACH OF FIDUCIARY DUTY</u>

236.    Plaintiff restates and realleges the foregoing paragraphs, which are incorporated by reference as if fully set forth herein.

237.    At all relevant times, the Debtors were insolvent and/or in the vicinity or zone of insolvency.

238.    The Director Defendants owed fiduciary duties to the Debtors and their creditors.

239.    The Director Defendants breached their fiduciary duties (including, without limitation, their duty of loyalty) to the Debtors and their creditors, by among other things:

(a)    failing to act in good faith or acting intentionally or knowingly by permitting the Debtors to (i) engage in the Sham Acquisitions, and (ii) secure the Parmar Shareholder Redemption Payments and additional Merger Financing (including by the granting of the Merger Liens), which constituted theft from the Debtors, unlawful fraudulent transfers and/or improper transfers;

(b)    continuing to receive compensation and/or other benefits from the Debtors;

(c)    continuing the Debtors' business operations for the purpose of providing substantial benefit to themselves and others (at the expense of the Debtors) in the form of the theft and/or transfers described herein;

(d)    consciously and intentionally abdicating their duties to the Debtors and their creditors; and

(e)    acting only in the interest of themselves, the Parmar Shareholder Entities and/or the Parmar Laundering Entities at a time when the Debtors were insolvent and/or in the vicinity or zone of insolvency.

240.    The Debtors and their creditors were harmed by the Director Defendants' breaches of their fiduciary duties.

241.    Based on the foregoing, the Debtors are entitled to recover an amount to be determined at trial, but no less than $100 million.

## COUNT XIII.

## ILLEGAL DIVIDEND

242.    Plaintiff restates and reallages the foregoing paragraphs, which are incorporated by reference as if fully set forth herein.

243.    The Debtors provided cash and/or property to the shareholders of CHT as a result of the Merger and other transfers described herein.  To the extent such cash or property is deemed de facto dividends on account of CHT's equity interest in the Debtors, the Director Defendants are personally liable for the amount of such dividends due to their willful or negligent approval of the transfer of such dividends, while the Debtors lacked sufficient surplus or net profits or were otherwise insolvent, in violation of Delaware's General Corporation Law, including, without limitation, to §§ 170, 172, 173 and 174.

244.    The Debtors are presently, and at all relevant times were, insolvent or rendered insolvent by the transfers described herein.

245.    Based on the foregoing, the Debtors are entitled to recover an amount to be determined at trial, but no less than $100 million.

## PRAYER FOR RELIEF

**WHEREFORE**, by reason of the foregoing, Plaintiff respectfully requests that judgment be entered in his favor and against the Defendants as follows:

(a)     on Count I, against all Defendants, directing immediate turnover to the Liquidating Trustee of the Shareholder Redemption Payments and IRS Funds pursuant to 11 U.S.C. § 542;

(b)     on Count II, against all Defendants, directing immediate turnover to the Liquidating Trustee of the Shareholder Redemption Payments and IRS Funds;

(c)     on Count III, against all Defendants, directing immediate turnover to the Liquidating Trustee of the Shareholder Redemption Payments and IRS Funds;

(d)     on Count IV, against all Defendants, directing immediate turnover to the Liquidating Trustee of the Shareholder Redemption Payments and IRS Funds;

(e)     on Count V, pursuant to 11 U.S.C. §§ 548 and 550, finding that the transfer of the Shareholder Redemption Payments and IRS Funds was a fraudulent transfer, avoiding the transfer, and entering judgment against the Shareholder Defendants in an amount to be determined at trial, but no less than $81.7 million, plus interest thereon;

(f)     on Count VI, pursuant to §§ 548 and 550, finding that the transfer of the Shareholder Redemption Payments and IRS Funds was a fraudulent transfer, avoiding the transfer, and entering judgment against the Shareholder Defendants in an amount to be determined at trial, but no less than $81.7 million, plus interest thereon;

(g)     on Count VII, pursuant to §§ 545 and 550 and 6 Del. C. § 1304(a)(1), finding that the transfer of the Shareholder Redemption Payments and

IRS Funds was a fraudulent transfer, avoiding the transfer, and entering judgment against the Shareholder Defendants in an amount to be determined at trial, but no less than $81.7 million, plus interest thereon;

(h)     on Count VIII, pursuant to §§ 545 and 550 and 6 Del. C. §§ 1304(a)(2) and 1305(a), finding that the transfer of the Shareholder Redemption Payments and IRS Funds, was a fraudulent transfer, avoiding the transfer, and entering judgment against the Shareholder Defendants in an amount to be determined at trial, but no less than $81.7 million, plus interest thereon;

(i)     on Count IX, against all Defendants, imposing a constructive trust over the Shareholder Redemption Payments and IRS Funds, in the possession, custody or control of the Defendants;

(j)     on Count X, against  the Shareholder Defendants, permanently enjoining them from requesting a refund from the IRS with respect to the IRS Funds;

(k)     on Count XI, determining and declaring that the Debtors have superior rights in and to the Shareholder Redemption Payments and IRS Funds, as against all Defendants;

(l)     on Count XII, against the Director Defendants in an amount to be determined at trial, but no less than $100 million, plus interest thereon;

(m)     On Count XIII against the Director Defendants in an amount to be determined at trial, but no less than $100 million, plus interest thereon;

(n)     for Plaintiff's attorneys' fees and costs; and

(o)     for such other and further relief as the Court deems equitable, just and

proper.

Dated:   New York, New York
         March 12, 2020

                                        **HAHN & HESSEN LLP**


                                        By:    */s/ John P. Amato*
                                               John P. Amato
                                               Mark T. Power
                                               Joseph Orbach

                                        488 Madison Avenue
                                        New York, New York 10022
                                        Telephone: (212) 478-7200
                                        jamato@hahnhessen.com
                                        mpower@hahnhessen.com
                                        jorbach@hahnhessen.com

                                        *Counsel to the Liquidating Trustee*