**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

In re:

Orion HealthCorp, Inc., *et al.*,

Debtors.

: Chapter 11
:
: Case No. 18-71748-67 (AST)
: Case No. 18-71789 (AST)
: Case No. 18-74545 (AST)
: (Jointly Administered)

---------------------------------------------------------------- x

Howard M. Ehrenberg in his capacity as Liquidating
Trustee of Orion Healthcorp, Inc., *et al*.,

Plaintiff,

v.

Richard Ian Griffiths, Sally Griffiths, Blake Holdings
Limited, VT Garraway Investment Fund Series IV (f/k/a
City Financial Investment Fund Series IV), Legal &
General Assurance Society Limited, Legal & General
UK Alpha Trust, The Bankers Investment Trust PLC,
Marlborough Fund Managers Limited, Marlborough UK
Micro-Cap Growth Fund, Jarvis Investment
Management Limited, JIM Nominees Limited, Kestrel
Partners LLP, Stuart Rollason, Shard Capital Partners
LLP, Herald Investment Trust PLC, Milkwood Capital
Limited, The Milkwood Fund, Sir Rodney Malcolm
Aldridge, Killik & Co. LLP, Platform Securities
Nominees Limited, Edale Capital LLP, Edale Europe
Absolute Fund LP, Edale Europe Absolute Master Fund
Limited, Credit Suisse Client Nominees (UK) Limited,
Maven Investment Partners Ltd, Miton UK MicroCap
Trust PLC, Miton Trust Managers Limited (a/k/a Miton
Trust Managers PLC), Islandbridge Capital Limited,
Islandbridge Opportunities Fund, Merrill Lynch
International, JPMorgan Smaller Companies Investment
Trust PLC, Skandinaviska Enskilda Banken AB (Publ),
Brewin Dolphin Limited, Ari Charles Zaphiriou-Zarifi,
Denton & Co. Trustees Limited, Rupert Faure Walker,
Pershing Securities Limited, Pershing Nominees
Limited, JPMorgan Life Limited, ABN AMRO Clearing
Bank N.V., London Branch, THESIS Unit Trust
Management Limited, Thesis Headway A Sub-Fund,

:
:
:
:
: Adv. Pro. No. 18-08048 (AST)
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Tilney Asset Management Services Limited (f/k/a          :
Towry Asset Management Limited), Freedom Global          :
Funds PCC Limited, Interactive Investor Services          :
Limited, Interactive Investor Services Nominees          :
Limited, Matthew Max Edward Royde, Megan Amelia          :
Elizabeth Royde, Montlake UCITS Platform ICAV,          :
Elite Webb Capital Fund, Nortrust Nominees Limited,          :
Credo Capital Limited, Moulton Goodies Limited,          :
Moshe Menachem Feuer (a/k/a Mark Feuer), UBS          :
Private Banking Nominees Limited, Rupert Dyson,          :
Linear Investments Limited, Credit Suisse (Channel          :
Islands) Limited, Walker Crips Investment Management :
Limited (f/k/a Walker Crips Stockbrokers Limited),          :
W.B. Nominees Limited, Gabelli Investor Funds, Inc.          :
(a/k/a The Gabelli ABC Fund), Dr. Shawn Zimberg,          :
Oliver Rupert Andrew Scott, finnCap Ltd, John Joseph          :
Johnston, Johnston Asset Management Ltd., Interactive :
Investor Limited, CFS Management Ltd (f/k/a CFS          :
Portfolio Management Ltd), David Andrew Clark, Karin :
Johnston, and The United States of America,          :
Department of Treasury, Internal Revenue Service,          :
                                                         :
                          Defendants.          :
------------------------------------------------------------------ :


**MEMORANDUM OF LAW IN SUPPORT OF THE THESIS PARTIES'
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**BRYAN CAVE LEIGHTON PAISNER LLP**
Stephanie Wickouski
Howard M. Rogatnick
Chelsey Rosenbloom
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 541-2000
E: stephanie.wickouski@bclplaw.com
E: hmrogatnick@bclplaw.com
E: chelsey.rosenbloom@bclplaw.com


*Attorneys for Defendants Thesis Unit Trust
Management Limited and Thesis Headway A Sub-
Fund*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

I.      PRELIMINARY STATEMENT .................................................................... 1

II.     FACTUAL BACKGROUND ........................................................................ 3

        A.      The Investment Structure ................................................................. 3

        B.      The Thesis Parties ........................................................................... 4

        C.      The Share Purchase ......................................................................... 6

        D.      The Merger ...................................................................................... 6

        E.      The Bankruptcy Case and this Adversary Proceeding ..................... 8

III.    ARGUMENT .............................................................................................. 9

        A.      The Second Amended Complaint Should be Dismissed on Several
                "Threshold" Grounds ....................................................................... 9

                1.      Thesis Should Be Dismissed Because it is Not a Legal Entity, Has
                        No Legal Personality, Does Not Hold Assets or Conduct Any
                        Business Operations, and Cannot Sue or Be Sued ..................... 10

                2.      The Second Amended Complaint Should Be Dismissed Because
                        There is No Personal Jurisdiction over the Thesis Parties ......... 12

                        a.      The Applicable Legal Standard Requires Dismissal of the
                                Complaint against the Thesis Parties for Lack of Personal
                                Jurisdiction .................................................................... 12

                        b.      No General Jurisdiction Exists Over the Thesis Parties ... 14

                        c.      There is No Basis for Specific Personal Jurisdiction over
                                the Thesis Parties ........................................................... 15

                        d.      Exercising Personal Jurisdiction over the Thesis Parties
                                would be Unreasonable ................................................... 20

                        e.      Given Plaintiff's Failure to Make the Required "Sufficient
                                Start" Toward a Showing of Personal Jurisdiction,
                                Jurisdictional Discovery is Not Merited .......................... 21

                3.      The Second Amended Complaint Should be Dismissed Because
                        the Thesis Parties are Non-Transferees ................................... 22

                4.      The Second Amended Complaint's Claims for Constructive
                        Fraudulent Conveyance Should be Dismissed Because Any
                        Transfer is Protected by the Section 546(e) Safe Harbor .......... 24

                5.      This Adversary Proceeding Should Be Dismissed Pursuant to the
                        Doctrine of *Forum Non Conveniens* ........................................ 28

6.    Plaintiff's Common Law Claims in This Adversary Proceeding
      Should be Dismissed Because Plaintiff Lacks Standing to Bring
      this Action Pursuant to the *Wagoner* Rule .................................................. 30

B.    The Second Amended Complaint Should be Dismissed Because it Fails to
      State Any Claims for Which Relief Can Be Granted against the Thesis
      Parties ......................................................................................................................... 31

      a.    The Trustee Has Not Stated a Turnover Claim against
            Thesis  (Count I) ........................................................................... 32

      b.    The Trustee Has Failed to State a Claim for Unjust
            Enrichment against the Thesis Parties (Count II) ......................... 33

      c.    The Trustee Cannot State a Claim for Conversion against
            the Thesis Parties (Count III) ....................................................... 33

      d.    The Trustee Has Failed to State a Claim for Replevin
            against the Thesis Parties (Count IV) ........................................... 35

      e.    The Trustee Has Failed to State a Claim for Intentional
            Fraudulent Conveyance Against the Thesis Parties
            (Count V and VII) ......................................................................... 35

      f.    The Trustee Has Failed to State a Claim for Constructive
            Fraudulent Conveyance Against the Thesis Parties
            (Count VI and VIII) ....................................................................... 38

      g.    The Trustee Has Not Stated a Claim for a Constructive
            Trust (Count IX) ............................................................................ 39

      h.    Plaintiff Has Not Alleged Any Basis for a Permanent
            Injunction (Count X) ...................................................................... 40

      i.    Plaintiff Has Not Met the Necessary Threshold
            Requirements to Obtain a Declaratory Judgment
            (Count XI) ...................................................................................... 41

IV.   RESERVATION OF RIGHTS ..................................................................................... 41

V.    CONCLUSION ............................................................................................................. 42

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Allou Distribs. Inc.*,
No. 8-03-82321-ESS, 2012 WL 6012149 (Bankr. E.D.N.Y. Dec. 3, 2012)...........................40

*Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*,
981 F. Supp. 2d 153 (E.D.N.Y. 2013) ....................................................................34

*Americold Realty Trust v. Congara Foods, Inc.*,
136 S.Ct. 1012 (2016).................................................................................10, 11

*AP Servs. LLP v. Silva*,
483 B.R. 63 (S.D.N.Y. 2012)...............................................................................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................31

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)..................................................................................31

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................31

*In re Bernard L. Madoff Inv. Sec. LLC*,
773 F.3d 411 (2d Cir. 2014)................................................................................26

*In re Boston Generating LLC*,
No. 10-14419 (SCC), 2020 WL 3286207 (Bankr. S.D.N.Y. June 18, 2020) ........................27

*In re Brizinova*,
588 B.R. 311 (Bankr. E.D.N.Y. 2018)....................................................................34

*Brown Publ'g Co. Liquidating Tr. v. AXA Equitable Life Ins. Co.*,
519 B.R. 13 (E.D.N.Y. 2014) ..............................................................................23

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016)............................................................................14, 15

*In re Bullion Reserve of N. Am.*,
922 F.2d 544 (9th Cir. 1991) ...............................................................................24

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..........................................................................................19

iii

*Carlin v. Davidson Fink LLP*,
852 F.3d 207 (2d Cir. 2017)..................................................................31

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018)...................................................................19

*Chew v. Dietrich*,
143 F.3d 24 (2d Cir. 1998)...................................................................15

*In re Chowaiki & Co. Fine Art Ltd.*,
593 B.R. 699 (Bankr. S.D.N.Y. 2018)..................................................32

*Cohn v. Gnippe*,
91 Ill. App. 3d 995 (1980)....................................................................19

*In re Colonial Realty Co.*,
980 F.2d 125 (2d Cir. 1992)..................................................................32

*Crescent/Mach I P'rs, L.P. v. Turner*,
846 A.2d 963 (Del. Ch. 2000)..............................................................20

*In re Cruisephone, Inc.*,
278 B.R. 325 (Bankr. E.D.N.Y. (2002) .................................................16

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)........................................................................14, 15

*In re Enron Corp.*,
297 B.R. 382 (Bankr. S.D.N.Y. 2003)..................................................41

*In re Enron Corp.*,
341 B.R. 451 (Bankr. S.D.N.Y. 2006)..................................................27

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
651 F.3d 329 (2d. Cir. 2011).................................................................25

*In re Fetman*,
567 B.R. 702 (Bankr. E.D.N.Y. 2017)..................................................39

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*,
130 F.3d 52 (2d Cir. 1997)..........................................................2, 23, 24

*In re Finnie*,
No. 05-16373 (AJG), 2007 WL 1574294 (Bankr. S.D.N.Y. May 29, 2007) .........................41

*Freidzon v. Lukoil*,
No. 14 CIV. 5445 (AT), 2015 WL 13021409 (S.D.N.Y. Mar. 12, 2015) ..............................28

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)................................................................16

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)................................................................29

*Heckl v. Walsh*,
    122 A.D.3d 1252 (4th Dep't 2014)........................................35

*In re Hellas Telecomms. (Luxembourg) II SCA*,
    526 B.R. 499 (Bankr. S.D.N.Y. 2015)..............................26, 27

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,
    331 F. Supp. 3d 130 (S.D.N.Y. 2018)....................................22

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
    326 U.S. 310 (1945).....................................................12, 16, 18

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998)...................................................22

*Kaplan v. Reed Smith LLP*,
    919 F.3d 154 (2d Cir. 2019)...................................................33

*Kendall v. Caliber Home Loans, Inc.*,
    198 F. Supp. 3d 168 (E.D.N.Y. 2016)....................................35

*In re Khan*,
    No. 10-46901-ESS, 2014 WL 10474969 (E.D.N.Y. Dec. 24, 2014)...................................32

*Kirschner v. Grant Thornton LLP*,
    No. 07 Civ. 11604 (GEL), 2009 WL 1286326 (S.D.N.Y. Apr. 14, 2009), *aff'd sub nom.*
    *Kirschner v. KPMG LLP*, 626 F.3d 673 (2d Cir. 2010)............30

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991)...................................................37

*In re Lehman Bros. Holdings Inc.*,
    535 B.R. 608 (Bankr. S.D.N.Y. 2015)..............................19, 21

*Lehman Bros. Spec. Fin. Inc., v. Bank of Am. Nat'l Assoc.*,
    553 B.R. 476 (Bankr. S.D.N.Y. 2016), *aff'd.* No. 17 CIV 1224 (LGS),
    2018 WL 1322225 (S.D.N.Y. Mar. 14, 2018) .......................26

*In re Lyondell Chem. Co.*,
    543 B.R. 127 (Bankr. S.D.N.Y. 2016) ..................................13

*Moore v. Consolidated Edison Co. of N.Y., Inc.*,
   409 F.3d 506 (2d Cir. 2005)................................................................40

*In re Motors Liquidation Co.*,
   565 B.R. 275 (Bankr. S.D.N.Y. 2017) ...............................................16

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
   416 F.3d 146 (2d Cir. 2005)................................................................28

*In re PennySaver USA Publ'g, LLC*,
   587 B.R. 445 (Bankr. D. Del. 2018) ............................................36, 39

*Pergament v. Brooklyn Law Sch.*,
   595 B.R. 6 (E.D.N.Y. 2019) ...............................................................24

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
   329 F.3d 64 (2d Cir. 2003)..................................................................29

*R. Maganlal & Co. v. M.G. Chem. Co., Inc.*,
   942 F.2d 164 (2d Cir. 1991)................................................................28

*Raymond Loubier Irrevocable Trust v. Loubier*,
   858 F.3d 719 (2d Cir. 2017), *aff'd*, 765 F. App'x 560 (2d Cir. 2019)....................11

*In re Rickel & Assocs., Inc.*,
   272 B.R. 74 (Bankr. S.D.N.Y. 2002) ..................................................41

*Rolin v. Spartan Mullen Et Cie, S.A.*,
   No. 10 CIV. 1586 (CM)(FM), 2011 WL 5920931 (S.D.N.Y. Nov. 23, 2011).....................34

*Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*,
   No. 12-cv-4849 (ENV)(CLP), 2013 WL 6795963 (E.D.N.Y. Dec. 23, 2013).....................38

*Securities Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   594 B.R. 167 (Bankr. S.D.N.Y. 2018) ...........................................15, 20

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
   No. 03CIV3120 (LTS)(THK), 2006 WL 2034663 (S.D.N.Y. July 19, 2006).....................19

*Shearson Lehman Hutton, Inc. v. Wagoner*,
   944 F.2d 114 (2d Cir. 1991)........................................................ *passim*

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994).................................................................36

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*,
   596 B.R. 451 (S.D.N.Y. 2019)..............................................................25

*In re Sledziejowski*,
    2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016) ...........................................................19

*Springer v. U.S. Bank Nat'l Ass'n*,
    No. 15-cv-1107 (JGK), 2015 WL 9462083 (S.D.N.Y. Dec. 23, 2015) ...................................11

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)...............................................................................................13, 15, 17

*In re Teligent, Inc.*,
    325 B.R. 134 (Bankr. S.D.N.Y. 2005) ...................................................................................32

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013)...........................................................................................12, 16, 20

*Trell v. Am. Ass'n of Advancement of Sci.*,
    No. 04-CV-0030E SR, 2007 WL 1500497 (W.D.N.Y. May 21, 2007),
    *aff'd sub nom.*, 310 F. App'x 447 (2d Cir. 2009) ...................................................................13

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    946 F.3d 66 (2d Cir. 2019)...........................................................................................25, 26, 27

*In re Tribune Co. Fraudulent Conveyance Litig.*,
    No. 11-MD-2296 (RJS), 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017) ...........................36, 37, 38

*UBS Sec., LLC v. Voegeli*,
    405 F. App'x 550 (2d Cir. 2011) ...........................................................................................40

*Walden v. Fiore*,
    571 U.S. 277 (2014)...........................................................................................................15, 18

*Wego Chem. & Mineral Corp. v. Magnablend Inc.*,
    945 F. Supp. 2d 377 (E.D.N.Y. 2013) ...............................................................................20, 21

*World–Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)...............................................................................................................12

**Statutes**

11 U.S.C. § 101(22) ...................................................................................................................26

11 U.S.C. § 101(22)(A)...............................................................................................................26

11 U.S.C. § 101(49)(A)(ii)..........................................................................................................25

11 U.S.C. § 101, et seq................................................................................................................8

11 U.S.C. § 544(b) .....................................................................................................................22

11 U.S.C. § 546(e) ............................................................... *passim*

11 U.S.C. § 548(a)(1)(A) ........................................................ 36

11 U.S.C. § 548(a)(1)(B) ........................................................ 38

11 U.S.C. § 550 .................................................................. 22

11 U.S.C. § 550(a) ............................................................... 22

11 U.S.C. § 550(a)(1) ........................................................ 2, 22, 24

11 U.S.C. § 550(a)(2) ............................................................ 22

11 U.S.C. § 550(b) ............................................................... 23

11 U.S.C. § 741(8) ............................................................... 25

## Rules

Fed. R. Bankr. P. 7009 ........................................................... 36

Fed. R. Bankr. P. 7012(b) .................................................... 1, 13, 32

Fed. R. Civ. P. Rule 9(b) ........................................................ 36

Fed. R. Civ. P. 12(b)(1) .......................................................... 32

Fed. R. Civ. P. 12(b)(2) ....................................................... 1, 13

Fed. R. Civ. P. 12(b)(6) ....................................................... 1, 32

Fed. R. Civ. P. 19 ............................................................... 10

Fed. R. Civ. Proc. 44.1 .......................................................... 11

Fed. R. Evid. 201 ................................................................ 27

Defendants Thesis Unit Trust Management Limited ("TUTMAN") and Thesis Headway A Sub-Fund ("Thesis," and together with TUTMAN, the "Thesis Parties") respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Adversary Proceeding Complaint [ECF No. 295][1] (the "Second Amended Complaint") of plaintiff Howard M. Ehrenberg ("Plaintiff" or "Liquidating Trustee"), in his capacity as Liquidating Trustee of Orion Healthcorp, Inc., *et al*. The Second Amended Complaint should be dismissed based on the lack of personal jurisdiction over the Thesis Parties pursuant to Fed. R. Civ. P. 12(b)(2), as incorporated by Fed. R. Bankr. P. 7012(b); based on the Thesis Parties' status as non-transferees; based on the Bankruptcy Code's Section 546(e) safe harbor; based on the doctrine of *forum non conveniens*; based on the *Wagoner* Rule, and based on Plaintiff's failure to state any claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012(b).

## I.    PRELIMINARY STATEMENT

The allegations asserted against the Thesis Parties in the Second Amended Complaint fail as a matter of law for several reasons.

As a threshold matter, the 245-paragraph Second Amended Complaint does not set forth any allegations concerning personal jurisdiction over the Thesis Parties. As a result, the Second Amended Complaint is deficient on its face and merits dismissal pursuant to Fed. R. Civ. P. 12(b)(2). Nor can this deficiency in pleading be cured: there is simply no factual basis to support the exercise of personal jurisdiction – either general or specific – over the Thesis Parties. Neither of the Thesis Parties is incorporated in the United States, and neither has its principal place of business in the United States. In fact, Thesis has no place of incorporation or place of

---

[1] Unless otherwise specified herein, all references to ECF numbers shall refer to the docket in this Adversary Proceeding, Adv. Pro. No. 18-08048 (AST).

business at all: it has no legal personality and is not a legal entity. Accordingly, there is no general personal jurisdiction over the Thesis Parties. Nor is there any factual basis for the exercise of specific jurisdiction over the Thesis Parties, which have no ties to the United States and which did not engage in any conduct in the United States relevant to the circumstances involved in, or which gave rise to, this litigation.

A further threshold basis for dismissal of TUTMAN and Thesis is the fact that they were both non-transferees of the merger consideration at issue. Neither TUTMAN nor Thesis received, either directly or indirectly, any consideration from the merger. Indeed, neither TUTMAN nor Thesis ever possessed or came into contact with the consideration at any time; much less did they ever exercise dominion or control over the merger consideration, or have the right to use it for their own benefit and purposes – the *sine qua non* of transferee status under the Bankruptcy Code.[2] Given the Thesis Parties' complete lack of contact with the merger consideration, and their consequent status as non-transferees, neither TUTMAN nor Thesis should have been named in the Second Amended Complaint. They are entitled to dismissal from this action.

In addition, the transfer of the merger consideration is entitled to the safe harbor provided by Section 546(e) of the Bankruptcy Code, thus defeating Plaintiff's constructive fraudulent conveyance claims (Counts VI and VII) and precluding Plaintiff's common law claims (Counts II, III and IV) and state law intentional fraudulent conveyance claim (Count VII).

This Adversary Proceeding should also be dismissed under the doctrine of *forum non conveniens*. New York has no connection to the facts or conduct at issue in this proceeding. The

---

[2]     *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57-58 (2d Cir. 1997) (explaining that to be an "initial transferee" within the meaning of Bankruptcy Code Section 550(a)(1), the party must "exercise dominion over the funds at issue" and "be able to put them to his own purposes").

United Kingdom is the focus of the events complained of, and the locus of evidence relevant to the action. Accordingly, it is a more suitable venue for this litigation.

Further, the common law claims in this Adversary Proceeding should be dismissed in accordance with the *Wagoner* Rule because Plaintiff cannot be permitted to benefit from the debtors' own wrongful behavior.

Finally, in addition to the dismissal of the Thesis Parties based on the threshold grounds noted above, the Second Amended Complaint should also be dismissed for failure to state any claims upon which relief can be granted. Specifically, as shown below (*see infra* at pages 31-41), Plaintiff fails to state a claim for turnover (Count I), unjust enrichment (Count II), conversion (Count III), replevin (Count IV), intentional fraudulent transfer (Counts V and VII), constructive fraudulent transfer (Counts VI and VIII), constructive trust (Count IX), permanent injunction (Count X), or declaratory judgment (Count XI). The claims asserted in the Second Amended Complaint are based entirely upon alleged misconduct by CHT and its insiders, and there is not a single allegation that the Thesis Parties had knowledge of or were otherwise involved in any such misconduct. *See generally* Second Amended Complaint.

## II.    FACTUAL BACKGROUND[3]

### A.    The Investment Structure

In order to understand the facts relevant to the Thesis Parties and why the claims brought against them should be dismissed, it is necessary to understand the nature of authorized unit trusts, which are governed by the laws of the United Kingdom and must be authorized by the United Kingdom Financial Conduct Authority. An authorized unit trust is a "collective

---

[3]    The Second Amended Complaint's factual allegations are treated as true for purposes of this motion. However, for the avoidance of doubt, the Thesis Parties make no concession or admission as to the validity of such allegations and discussion of such allegations herein shall not constitute a waiver of any rights or defenses that the Thesis Parties may have.

investment scheme," which constitutes a trust for its unit holders, and involves the appointment of a trustee to hold legal title to the assets of the scheme in trust for the benefit of the scheme's unit holders. Chapple Decl. ¶¶2, 4. The investments of the unit trust are held by a custodian on behalf of the trustee. Declaration of Miranda Chapple In Support of the Thesis Parties' Motion to Dismiss the Second Amended Adversary Proceeding Complaint (the "Chapple Decl.") ¶¶2, 5, 6.

Authorized unit trusts, such as Thesis Headway Fund, are permitted to establish sub-funds, which in turn are sub-categories of the trust for the benefit of the unit holders. Chapple Decl. ¶4. Sub-funds enable pooled investors to invest in particular kinds of investments, investment objectives or market sectors. *Id.* It is critical to understand that (as is true of authorized unit trusts) a sub-fund of an authorized unit trust constitutes a fiduciary relationship and is **not** a legal entity: it is not incorporated, does not carry on any operations, has no legal personality, and is not capable of being sued. Chapple Decl. ¶¶8-10.

Authorized unit trusts are governed by United Kingdom trust law and an agreement referred to as a trust deed. Chapple Decl. ¶3. The trust deed is an agreement between the authorized fund manager ("AFM") of the unit trust on the one hand, and the trustee of the unit trust on the other hand. *Id.* The AFM of an authorized unit trust that is an undertaking for collective investment in transferable securities ("UCITS") carries out the collective portfolio management of the UCITS. Chapple Decl. ¶5. The trustee of the authorized unit trust holds legal title to the assets for the benefit of the investors in the unit trust or sub-fund, as applicable. Chapple Decl. ¶¶5-6.

### B. The Thesis Parties

Thesis Headway Fund is a unit trust authorized by the United Kingdom Financial Conduct Authority with Product Reference Number 186608. Chapple Decl. ¶11. Thesis is a

sub-fund of Thesis Headway Fund, and the unit holders in Thesis were the beneficiaries of the shares at issues in this Adversary Proceeding. Chapple Decl. ¶¶22-25, 27. As a sub-fund of an authorized unit trust, **Thesis is not a legal entity, has no legal personality, has no place of incorporation or registered office, conducts no operations and cannot sue or be sued**. Chapple Decl. ¶¶8-10, 14. On this basis alone, Thesis should never have been named in this action and must be dismissed.

At all times relevant to this Adversary Proceeding, TUTMAN was the AFM of Thesis Headway Fund, and is also the AFM of Thesis, the sub-fund. Chapple Decl. ¶16. TUTMAN is a private company limited by shares, incorporated on February 6, 1998 in England and Wales under the Companies Act of 1985 with registration number 03508646. It has a registered office at Exchange Building, Saint John's Street, Chichester, West Sussex, PO19 1UP, United Kingdom, which is TUTMAN's principal place of business, a fact admitted in the Second Amended Complaint. Chapple Decl. ¶30; Second Amended Complaint ¶58.

NatWest Trustee & Depositary Services Limited[4] ("NatWest") was appointed the trustee of Thesis Headway Fund and of Thesis. Chapple Decl. ¶17. NatWest (or its predecessor trustee) then appointed the Northern Trust Company as the custodian of funds held for the benefit of the Thesis unit holders.[5] Chapple Decl. ¶20. The Northern Trust Company, in turn, designated

---

[4] National Westminster Bank PLC served as trustee of Thesis Headway Fund prior to NatWest Trustee & Depositary Services Limited. Pursuant to the Supplemental Trust Deed (the "Supplemental Trust Deed") dated as of August 17, 2018 by and between TUTMAN and National Westminster Bank PLC and NatWest Trustee & Depositary Services Limited, NatWest Trustee & Depositary Services Limited became the trustee. Pursuant to Clause 2.2 of the Trust Deed, NatWest Trustee & Depositary Services Limited agreed to take on the rights and obligations of the former trustee as if it had been party to the original trust deed. Chapple Decl., Ex. C, Supplemental Trust Deed, § 2.2

[5] As noted, National Westminster Bank PLC was the trustee prior to NatWest Trustee & Depositary Services Limited. However, even while National Westminster Bank PLC was the trustee, The Northern Trust Company served as the custodian and used Nortrust as its nominee. Chapple Decl., n 2.

Nortrust Nominees Limited ("Nortrust") to hold legal title to the shares relevant to this Adversary Proceeding.  *Id.*

Pursuant to the deed of trust and the depositary agreement governing Thesis Headway Fund, the trustee alone, or through its appointed custodians (if any), handles any shares for the benefit of the unit holders and any money that is generated through the redemption of such shares.  Chapple Decl. ¶18-19.  Neither TUTMAN nor Thesis ever possessed the shares or the merger consideration (as further described *infra* at pages 10-12, 22-24).  In sum, TUTMAN was never in the money chain. Neither was Thesis – which, as noted, is not a legal entity, has no legal personality, and conducts no operations at all.

### C.    The Share Purchase

In or about December of 2014, 185,185 shares of Constellation Healthcare Technologies, Inc. ("CHT") were purchased for the benefit of the Thesis unit holders through a placement of shares traded on the Alternative Investments Market of the London Stock Exchange (the "AIM").  Chapple Decl. ¶22.  The purchased shares were held by Nortrust, the custodian entity that held legal title to the shares for the benefit of the Thesis unit holders.  *Id.*

On April 1, 2016, an additional 62,500 shares in CHT were acquired on the AIM for the benefit of the Thesis unit-holders.  Chapple Decl. ¶23.  These shares also were held by Nortrust for the benefit of the Thesis unit-holders.  *Id.*

### D.    The Merger

In late 2016 and early 2017, CHT announced and then proceeded to close a go-private merger transaction (the "Merger").  Second Amended Complaint ¶123, 130, 133.  Pursuant to the go-private merger transaction, pre-existing shareholders of CHT – including Nortrust, as the entity holding legal title to the shares on behalf of the Thesis unit holders – received the right to

$2.93 cash and $0.43 in promissory notes per share held (the "Merger Consideration"). Second Amended Complaint ¶127.

In order to obtain the Merger Consideration, the necessary documents were executed and submitted, as instructed, to Capita Asset Services at an address in Kent, United Kingdom. Chapple Decl. ¶26. On or about January 30, 2017, Capita Registrars Limited ("Capita"), the exchange Agent for the Merger, provided cash consideration for the Merger to CHT's shareholders. Second Amended Complaint ¶142, 150. In or about February to March of 2017, The Northern Trust Company, for the benefit of the Thesis unit holders, received the Thesis unit-holders' cash portion of the Merger Consideration. All cash received was transferred directly to, and held by, The Northern Trust Company. Chapple Decl. ¶27. Neither TUTMAN nor Thesis had any contact whatsoever at any time with the funds at issue in the merger transaction. Chapple Decl. ¶28. Moreover, as noted, Thesis, – which is not a legal entity and conducts no operations at all – lacked any capacity to possess, exercise control over, or hold legal title to the funds at issue.

In addition to the cash consideration that was paid to shareholders (the "Shareholder Redemption Payments"), the Second Amended Complaint alleges that Capita retained a portion of the money owed to shareholders while it considered whether a withholding tax was due to the IRS (such retained funds, the "IRS Funds"). Second Amended Complaint ¶153. Subsequently, Capita transferred the IRS Funds to a bank account of Orion HealthCorp, Inc. ("Orion"), and Orion submitted the funds to the IRS. Second Amended Complaint ¶154-157. The Second Amended Complaint alleges that some portion of the IRS Funds may be distributed to shareholders who request a refund. Second Amended Complaint ¶158. No such allegation is

specifically made with regard to the Thesis Parties, and the Thesis Parties have not requested any such IRS Funds, nor do they intend to do so. Chapple Decl., n 3.

### E. The Bankruptcy Case and this Adversary Proceeding

On March 16, 2018, CHT and its affiliated debtors filed for chapter 11 relief under title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). Second Amended Complaint ¶10.

The Plaintiff filed the Second Amended Complaint on March 12, 2020 alleging misconduct and mismanagement by CHT's board of directors and seeking, *inter alia*, to recover the Shareholder Redemption Payments and to obtain the shareholders' rights to the IRS Funds. *See generally* Second Amended Complaint. The Plaintiff does not claim – nor could it – that the Thesis Parties had any involvement in, or even knowledge of, any of the misconduct alleged in the Second Amended Complaint.[6] *Id*.

Nor does the Second Amended Complaint allege any facts to support personal jurisdiction over the Thesis Parties. Neither of the Thesis Parties has any contacts with or conducts any businesses in the United States, nor do they have any property or employees in the United States. Chapple Decl. ¶33. As noted, Thesis has no legal personality and does not conduct operations anywhere, either in this jurisdiction or anywhere else. In sum, as shown below (*see infra* pages 12-21), there are no facts that could support personal jurisdiction – either general or specific – over the Thesis Parties.

---

[6] The only explicit references to the Thesis Parties in the Second Amended Complaint are in a single paragraph of the Second Amended Complaint and in the appendix thereto. The appendix lists the alleged amount of Shareholder Redemption Payments and IRS Funds received by or owed to the Thesis Parties. Second Amended Complaint ¶58; Second Amended Complaint – Appendix at 4.

The Second Amended Complaint does not assert any facts that could confer transferee status on Thesis or TUTMAN, nor is there any legal or factual basis for deeming them transferees. On the contrary, Thesis and TUTMAN are **non**-transferees, and are entitled to dismissal on this basis alone. *See infra* pages 10-12, 22-24.

The Second Amended Complaint asserts thirteen counts, the final two of which (Counts XII and XIII)[7] pertain solely to a group of director defendants and not to shareholder defendants in this Adversary Proceeding: turnover of Shareholder Redemption Payments and IRS Funds (Count I), unjust enrichment (Count II), conversion (Count III), replevin (Count IV), intentional fraudulent transfer (Counts V and VII), constructive fraudulent transfer (Counts VI and VIII), constructive trust (Count IX), permanent injunction preventing distribution of the IRS funds (Count X), declaratory judgment (Count XI), breach of fiduciary duty (Count XII), and illegal dividend (Count XIII). Second Amended Complaint ¶175-245. As shown below, each of these counts should be dismissed as to the Thesis Parties for failure to state a claim on which relief can be granted.

## III. ARGUMENT[8]

### A. The Second Amended Complaint Should be Dismissed on Several "Threshold" Grounds

The Second Amended Complaint should be dismissed in its entirety as to the Thesis Parties based on the following five "threshold" arguments identified by the parties and the Court:[9] (1) the lack of personal jurisdiction over the Thesis Parties, (2) their status as non-

---

[7] Count XII is for breach of fiduciary duty and Count XIII is for illegal dividend. We note that Count XII has been dismissed pursuant to the *Notice of Voluntary Dismissal of Count XII of the Second Amended Complaint* [ECF No. 366].

[8] Unless otherwise noted herein all internal citations and quotation marks in case quotations are omitted.

[9] These threshold issues were identified by the parties and the Court during a telephonic conference held on May 27, 2020.

transferees, (3) the section 546(e) safe harbor, (4) the doctrine of *forum non conveniens*, and (5) the *Wagoner* Rule.[10]  Each of these threshold arguments (except for the discussion of Section 546(e) and the *Wagoner* Rule)[11] is sufficient grounds for dismissal standing alone.  Accordingly, there is no need to reach the other "threshold" grounds or to address the individual counts if the Court determines that the Second Amended Complaint should be dismissed as to any of the "threshold" grounds.  *See infra* pages 12-30.  However, each of the individual counts is addressed herein.  *See infra* pages 31-41.  Moreover, as shown in the section following directly below, with regard to Thesis the threshold bases for dismissal, as well as the additional bases for dismissal discussed herein, need not even be addressed by the Court given the fact that Thesis **is not a legal entity, has no legal personality, and is not capable of being sued**.

1.      **Thesis Should Be Dismissed Because it is Not a Legal Entity, Has No Legal Personality, Does Not Hold Assets or Conduct Any Business Operations, and Cannot Sue or Be Sued**

This Adversary Proceeding should be dismissed in its entirety as against Thesis because Thesis is not a legal entity, has no legal personality, cannot sue or be sued and thus, cannot be a party to this litigation.

Common law establishes that trusts, such as Thesis, are fiduciary relationships rather than legal entities that can sue or be sued.  *See Americold Realty Trust v. Congara Foods, Inc.*, 136

---

[10]      Defendants Legal & General Assurance Society and Legal & General UK Alpha Trust (collectively, the "L&G Defendants") previously filed the *Memorandum of Law in Support of Defendants Legal & General Assurance Society and UK Alpha Trust's Motion to Dismiss the First Amended Adversary Proceeding Complaint* [ECF # 268-1] ("L&G Motion to Dismiss Brief") setting forth an argument that the First Amended Adversary Proceeding Complaint should be dismissed pursuant to Fed. R. Civ. P. 19 for failure to join all necessary parties.  The Thesis Defendants understand that the L&G Defendants will be filing an updated memorandum of law in support of their motion to dismiss this Adversary Proceeding by June 30, 2020, which will similarly reflect the argument that the case should be dismissed for failure to join all necessary parties.  The Thesis Defendants join in that argument and have not independently briefed the issue to streamline briefing of issues, but reserve all rights to supplement such argument as necessary.

[11]      Section 546(e) defeats Plaintiff's federal and state law constructive fraudulent conveyance claims and precludes Plaintiff's common law claims for unjust enrichment, conversion and replevin as well as Plaintiff's state law intentional fraudulent conveyance claim.  *See infra* pages 24-27 and n. 26.  The *Wagoner* Rule defeats Plaintiff's common law claims.  *See infra* page 30.

S.Ct. 1012, 1016 (2016) (describing a traditional trust as a "fiduciary **relationship** between multiple people" and "**not a thing that could be hauled into court**") (emphasis added); *see also Raymond Loubier Irrevocable Trust v. Loubier*, 858 F.3d 719, 722 (2d Cir. 2017) (finding that trusts are "not distinct legal entities" and consequently, "legal proceedings involving such traditional trusts are effectively brought by or against their trustees"), *aff'd*, 765 F. App'x 560 (2d Cir. 2019); *Springer v. U.S. Bank Nat'l Ass'n*, No. 15-cv-1107 (JGK), 2015 WL 9462083, at *2 n.1 (S.D.N.Y. Dec. 23, 2015) ("under New York law, **a trust cannot sue or be sued**, and suits must be brought by or against the trustee") (emphasis added).

Thesis is a trust because it is a sub-fund of an authorized unit trust governed by the laws of the United Kingdom. *See Americold*, 136 S.Ct. at 1015-1016 (trust law in jurisdiction where the trust was established determines legal status of the trust); *Raymond Loubier*, 858 F.3d at 730 (same). As a leading authority on United Kingdom trust law has explained, a trust is not a legal entity, but rather: [12]

> **the relationship** which arises whenever a person (**called the trustee**) is compelled in equity to hold property, whether real or personal, and whether by legal or equitable title, for the benefit of some persons (of whom he may be one- and who are termed beneficiaries) or for some object permitted by law, in such a way that the real benefit of the property accrues, not to the trustees, but to the beneficiaries or other objects of the trust.

Chapple Decl. ¶9, quoting Keeton and Sheridan's Law on Trusts (12th edn), p.3 (emphasis added).[13]

Moreover, because a trust is not a legal entity under the law of the United Kingdom, a trust cannot sue or be sued. Chapple Decl. ¶8-10. As the court explained in *North London*

---

[12]     We note that the point that an authorized unit trust is not a legal entity capable of suing or being sued is discussed in the *Memorandum of Law in Support of Marlborough Defendants' Motion to Dismiss as Non-Transferees,* ECF No. 355 and the accompanying affidavit.

[13]     In accordance with Federal Rule of Civil Procedure 44.1 ,"[i]n determining foreign law, the court may consider any relevant material or source, including testimony."

*Central Mosque Trust v Policy Exchange* [2009] EWHC 3311 (QB)), "**[The trust] is not a human being** or a group of human beings, nor is it a corporation or quasi-corporation in the sense that it has been given some of the attributes of a corporation, **such as the capacity to sue or be sued**." (emphasis added). On this basis alone – because Thesis is not a legal entity capable of suing or being sued – Thesis must be dismissed from this Adversary Proceeding. Chapple Decl. ¶10.

### 2. The Second Amended Complaint Should Be Dismissed Because There is No Personal Jurisdiction over the Thesis Parties

Plaintiff has utterly failed to allege any facts that could establish either general or specific jurisdiction over the Thesis Parties, and no factual or legal basis for such an assertion of jurisdiction exists. Moreover, dismissal is also warranted because the Thesis Parties do not have minimum contacts with the United States, and the exercise of personal jurisdiction over the Thesis Parties would be unreasonable in the circumstances. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013); *see Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 316 (1945) (noting that for the purpose of establishing personal jurisdiction, due process requires "certain minimum contacts with [the United States] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice"); and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 287 (1980) (due process requires that "the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there.")

### a. The Applicable Legal Standard Requires Dismissal of the Complaint against the Thesis Parties for Lack of Personal Jurisdiction

Plaintiff here utterly fails to meet its burden of making a *prima facie* showing of personal jurisdiction over the Thesis Parties, which have no presence in the United States at all, let alone

sufficient contacts to give rise to either specific or general personal jurisdiction. *See SPV Osus Ltd. v. UBS AG,* 882 F.3d 333, 342 (2d Cir. 2018) (plaintiff has the burden of making "a *prima facie* showing that jurisdiction exists"); *In re Lyondell Chem. Co.*, 543 B.R. 127, 136-37 (Bankr. S.D.N.Y. 2016) ("the plaintiff bears the burden of showing that the court has jurisdiction over the defendant" and "conclusory allegations are not enough to establish personal jurisdiction."). Accordingly, the Court should not hesitate to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2), incorporated by Fed. R. Bankr. P. 7012(b). *SPV Osus Ltd,* 882 F.3d at 342.

Here, Plaintiff has not even attempted to make the required *prima facie* showing and instead appears simply to assume that jurisdiction is proper. The Second Amended Complaint fails to allege even a conclusory allegation (which would be legally deficient), let alone any jurisdictional facts with regard to the Thesis Parties. Indeed, Plaintiff's Second Amended Complaint is devoid of any allegations that either of the Thesis Parties had any contact with, or engaged in any conduct relating to, the United States. *See generally* Second Amended Complaint. This alone permits dismissal of the Second Amended Complaint as against the Thesis Parties. *See Trell v. Am. Ass'n of Advancement of Sci.*, No. 04-CV-0030E SR, 2007 WL 1500497, at *2 (W.D.N.Y. May 21, 2007), *aff'd sub nom.* 310 F. App'x 447 (2d Cir. 2009).

Moreover, the complete factual void in Plaintiff's pleading cannot be remedied because no facts exist that could support a finding of personal jurisdiction over the Thesis Parties. The only conduct alleged in the Second Amended Complaint against the Thesis Parties is the receipt of the Shareholder Redemption Payments and the potential future rights to receive IRS Funds. Second Amended Complaint §§ 7, 29. The Thesis Parties, however, did **not** receive the Shareholder Redemption Payments and would not be permitted to receive any IRS Funds even if

it were intended to request recovery of such funds, which is not the case. Chapple Decl. ¶¶21, 24, 28, n 3. The Shareholder Redemption Payments were received by The Northern Trust Company, and held by The Northern Trust Company for the benefit of the Thesis unit holders, in the United Kingdom – not the United States. Chapple Decl. ¶20. Plaintiff's inadequate allegations establish only that there is no basis for personal jurisdiction over the Thesis Parties in the United States.

b. <em><strong>No General Jurisdiction Exists Over the Thesis Parties</strong></em>

The Plaintiff has not alleged general personal jurisdiction over the Thesis Parties, nor are there any facts that could support such an assertion. The Supreme Court has held that "[w]ith respect to a corporation, the place of incorporation and principal place of business are paradig[m] ... bases for general jurisdiction". *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *see also Brown v. Lockheed Martin Corp*., 814 F.3d 619, 628-29 (2d Cir. 2016) ("[A]side from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation or principal place of business.").

Neither of the Thesis Parties is incorporated in or has its principal place of business in the United States. Chapple Decl. ¶¶30-31. Thesis, as noted, has no legal personality and conducts no operations. It is not headquartered and incorporated in the United States – or anywhere else.

TUTMAN is a private company limited by shares, incorporated on February 6, 1998 in England and Wales under the Companies Act of 1985. Chapple Decl. ¶30; Second Amended Complaint ¶ 58. TUTMAN has a registered office at Exchange Building, Saint John's Street, Chichester, West Sussex, PO19 1UP, United Kingdom, which is its principal place of business.

These facts – which are admitted in the Second Amended Complaint[14] – do **not** meet the paradigm requirements for general personal jurisdiction mandated by *Daimler. Daimler AG,* 571 U.S. at 137.

Finally, no "exceptional circumstances" are alleged – or exist – that could justify the exercise of general personal jurisdiction over either of the Thesis Parties in the United States. *Lockheed Martin Corp.,* 814 F.3d 619 at 627 (alleging "exceptional" circumstances is a "heavy burden"); *Daimler AG*, 571 U.S. at 139 n.19 (finding defendant's contacts in California "plainly do not approach [the exceptional] level" even where the basis of the jurisdictional allegation was billions of dollars of sales by Defendant's subsidiary in the state of California).

*c.*   ***There is No Basis for Specific Personal Jurisdiction over the Thesis Parties***

Plaintiff has also failed to allege any facts that could support specific jurisdiction over the Thesis Parties.

The exercise of specific personal jurisdiction over a defendant depends on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014); *see also SPV Osus Ltd. v. UBS AG*, 882 F.3d at 344. Indeed, specific personal jurisdiction only exists over a defendant (1) "in a suit arising **out of or related to** the defendant's contacts with the forum;" *SPV Osus Ltd.*, 882 F.3d at 343 and (2) if the defendant "purposefully availed [itself] of the privilege of doing business in the [forum] and that the defendant could foresee being 'haled into court' there." *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998); *see also Securities Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167, 189 (Bankr. S.D.N.Y. 2018) ("defendant's suit-related conduct must create **a substantial connection with**

---

[14]     Indeed, the Second Amended Complaint – by listing TUTMAN's place of incorporation,, registration, and office at a United Kingdom location, and providing no such information as to Thesis – admits that no such general personal jurisdiction over the Thesis Parties exists. *See* Second Amended Complaint ¶58.

the forum state . . . **and general connections will not suffice**") (emphasis added). Moreover, Plaintiff must establish that the defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Specific personal jurisdiction's "fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (internal quotation omitted).

As is the case here, where the defendant had no connection with the alleged harm, much less engaged in any conduct that gave rise to the harm – either in this forum or anywhere else – there is no basis for specific personal jurisdiction. Critically, Plaintiff has not alleged – nor could he – that any harm was caused by the Thesis Parties' conduct. On the contrary, the Second Amended Complaint itself makes clear that any alleged harm was caused by CHT and its former management – **not** the Thesis Parties. *See generally* Second Amended Complaint.

Moreover, to exercise specific personal jurisdiction, a court must find that the defendant has "purposely availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). The Thesis Parties have not in engaged any such purposeful conduct within the United States. [15] It is undisputed that:

---

[15] For bankruptcy courts, the question of whether specific jurisdiction exists turns on whether a defendant has requisite minimum contacts with the United States as a whole. *See e.g. In re Cruisephone, Inc.*, 278 B.R. 325, 331 (Bankr. E.D.N.Y. 2002); *In re Motors Liquidation Co.*, 565 B.R. 275, 285 (Bankr. S.D.N.Y. 2017).

- neither of the Thesis Parties has any offices in the United States; Chapple Decl. ¶33; *see* Second Amended Complaint ¶58;

- neither of the Thesis Parties is incorporated or registered to do business in any state in the United States; Chapple Decl. ¶33; se*e* Second Amended Complaint ¶58;

- neither of the Thesis Parties has any businesses, or conducts or engages in any business, in the United States; *Id*.

- neither of the Thesis Parties has contracted to supply goods or services in the United States; *Id*.

- neither of the Thesis Parties has any employees in the United States; *Id*.

- neither of the Thesis Parties owns or rents any property in the United States; *Id*.

- neither of the Thesis Parties has or maintains any bank accounts in the United States; *Id*; and

- neither of the Thesis Parties engages in any advertising or solicitation of business directed to the United States. *Id*.

The Second Amended Complaint alleges that the harm to Plaintiff was caused by CHT and its insiders. *See* Second Amended Complaint ¶1-5, 97-106, 114-117, 166. That alleged fraud – and **not** any conduct by the Thesis Parties – proximately caused Plaintiff's alleged harm. This lawsuit plainly did not "aris[e] out of or relate[ ] to" the Thesis Parties' contacts with the forum, which in fact were nonexistent. *See SPV Osus Ltd.*, 882 F.3d at 343. The lack of nexus between any United States conduct by the Thesis Parties and Plaintiff's alleged harm warrants dismissal of the Second Amended Complaint for lack of specific personal jurisdiction.

The only conduct alleged to have been engaged in by the Thesis Parties relevant to this suit is the receipt of the Shareholder Redemption Payments and the potential ability to recover

the IRS Funds. However, as noted, the Shareholder Redemption Payments were received directly by The Northern Trust Company in the United Kingdom – **not** the Thesis Parties, and not in the United States.[16] In sum, TUTMAN is a **foreign** entity and Thesis is not an entity at all, the CHT shares were acquired on a **foreign** exchange and documentation for the merger consideration was submitted to a **foreign** entity. The Thesis Parties are not United States entities and took no relevant action directed at the United States that could support the exercise of personal jurisdiction. Indeed, the Thesis Parties had no suit-related contact with the United States at all.

This complete lack of contact with the United States means that the requirement of "minimum contacts" that is a prerequisite for a finding of specific personal jurisdiction cannot possibly be met. *See Int'l Shoe Co.*, 326 U.S. 310 at 316 (to exercise in personam jurisdiction over a defendant not present in the forum, the defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice"). Here, there were no contacts with the forum that could support personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (relevant contacts are defendants' contacts with the forum itself). Shares in CHT were obtained through the London Stock Exchange for the benefit of the Thesis unit holders, and were at all times held by Nortrust. The documents required to receive the Merger Consideration were submitted to Capita Asset Services, an entity in the United Kingdom. Chapple Decl. ¶26. The Merger Consideration ultimately received was held by The Northern Trust Company in the United Kingdom. These occurrences – which took place entirely in the United Kingdom and which did not involve conduct by TUTMAN or Thesis, or conduct which could be attributable to them – are utterly

---

[16] The same would be the case if any IRS Funds were received, but in fact, no IRS Funds are being sought. Chapple Decl., n. 3.

insufficient to sustain the exercise of personal jurisdiction in the United States over TUTMAN or Thesis.[17] *See e.g., Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (finding that personal jurisdiction did not exist in California against defendants when the assertion of jurisdiction was based on conduct in London, explaining that "activities in London do not constitute California conduct"); *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 622 (Bankr. S.D.N.Y. 2015) (finding a lack of personal jurisdiction over a defendant that "was organized and headquartered outside of the United States; had no offices, employees or property in the United States; was not registered to, and did not, conduct business in the United States; and did not advertise or otherwise solicit business in the United States"); *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03CIV3120 (LTS)(THK), 2006 WL 2034663, at *9 (S.D.N.Y. July 19, 2006) (dismissing plaintiff's claims because of lack of personal jurisdiction in the United States where foreign nationals signed documents relevant to stock purchases in foreign countries); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can establish sufficient minimum contacts in the other party's home forum, we believe the answer is clearly that it cannot").

Finally, the mere purchase of shares in CHT, a United States company, does not establish a sufficient connection to the United States that could justify the exercise of personal jurisdiction. *Cohn v. Gnippe*, 91 Ill. App. 3d 995, 999 (1980) (non-New York resident defendant's purchase of stock on the New York Stock exchange did not supply minimum

---

[17]     The Thesis Parties did not engage in any conduct relevant to this litigation, and even if the Court were to find some conduct to be relevant, it would be of an "overwhelmingly foreign nature". *See In re Sledziejowski*, 2016 WL 6155929 at *3 (Bankr. S.D.N.Y. Oct. 21, 2016) (dismissing certain defendants for lack of personal jurisdiction where "Investments were made by [defendant] and his entities in [foreign] real estate with [foreign] entities under [foreign] law. When [defendant] made the decision to dispose of those investments, he and his entities liquidated the [foreign] investments by selling them to non-U.S. entities. It is undisputed that each of the Movants is located outside of the United States and that the transactions at issue involved investments outside of the United States.").

contacts necessary for personal jurisdiction in New York); *Crescent/Mach I P'rs, L.P. v. Turner*, 846 A.2d 963, 975 (Del. Ch. 2000) ("ownership of a Delaware Corporation is not, without more, a sufficient contact on which to base personal jurisdiction").

### d. *Exercising Personal Jurisdiction over the Thesis Parties would be Unreasonable*

Finally, there can be no exercise of personal jurisdiction over the Thesis Parties because such exercise cannot meet the requirement of reasonableness.[18] *See e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 673. "In determining reasonableness, a court considers (1) the burden that the exercise of personal jurisdiction will place on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering substantive social policies." *Securities Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. at 187–88.

Not only has Plaintiff failed to set forth any allegations that could support general or personal jurisdiction, Plaintiff cannot possibly meet its burden of showing that the exercise of personal jurisdiction over the Thesis Parties would be reasonable. TUTMAN is incorporated and has its principal place of business in the United Kingdom, not the United States. Moreover, TUTMAN as AFM did not engage in any conduct in the United States. Thesis is not a legal entity capable of being sued; it is not incorporated and has no principal place of business anywhere. Crucially, the Thesis Parties committed no acts that were illegal or which caused harm, and the Second Amended Complaint does not allege otherwise. Second Amended

---

[18]    Moreover, "the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Wego Chem. & Mineral Corp. v. Magnablend Inc.*, 945 F. Supp. 2d 377, 385 (E.D.N.Y. 2013).

Complaint §§ 7, 29, 58. Forcing parties to participate in litigation in the United States - particularly when the only party that has a legal personality (TUTMAN) is based in the United Kingdom, and engaged in no conduct in the United States - would be burdensome and unjust rather than reasonable. *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 621 (Bankr. S.D.N.Y. 2015).

As noted, the CHT shares were held by Nortrust and the Merger Consideration received in connection with the merger was held by The Northern Trust Company on behalf of the Thesis unit holders – they were **never** held by Thesis or TUTMAN. The Thesis Parties' relationship to the transfer at issue in this litigation is nonexistent: neither of the Thesis Parties was the beneficiary of, or came into contact with the CHT shares or the consideration at issue. Any relevant documents or evidence that the Thesis Parties have are located in the United Kingdom, as are potential witnesses. Requiring the Thesis Parties to litigate in the United States in a dispute over consideration that they never held, owned, or received any benefit from – and where the shares that were purchased were listed on the London Stock Exchange, and where all relevant documents were executed and submitted in the United Kingdom – would be burdensome and unfair, and cannot meet the test of reasonableness.

> ### e. Given Plaintiff's Failure to Make the Required "Sufficient Start" Toward a Showing of Personal Jurisdiction, Jurisdictional Discovery is Not Merited

There is no legal basis for Plaintiff to take jurisdictional discovery as against the Thesis Parties, and such discovery should not be permitted here. A plaintiff is not entitled to jurisdictional discovery absent a "sufficient start" toward an adequate showing of personal jurisdiction. *Wego Chem. & Mineral Corp. v. Magnablend Inc.*, 945 F. Supp. 2d 377, 386 (E.D.N.Y 2013). Where, as here, "a plaintiff has not even made a *prima facie* showing of personal jurisdiction, it is well within a court's discretion to deny jurisdictional discovery." *Id.* at

386; *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir. 1998) (denying jurisdictional discovery).

Here, Plaintiff has failed to make the required *prima facie* showing and has not even attempted to make the required "sufficient start." The Second Amended Complaint does not set forth a single allegation that the Thesis Parties had any contacts with the United States, much less any contacts specifically related to the conduct at issue in this litigation. Having failed to make even the barest threshold showing of personal jurisdiction, Plaintiff is not legally entitled to jurisdictional discovery.

Moreover, Plaintiff should not be permitted to replead because discovery cannot cure the Second Amended Complaint's utterly deficient pleading. *See Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, 331 F. Supp. 3d 130, 147 n.3 (S.D.N.Y. 2018) (courts may deny requests for jurisdictional discovery "where the allegations fail to state a basis for the exercise of jurisdiction, or where a plaintiff's proposed discovery, even if permitted, would not uncover facts sufficient to sustain jurisdiction").

### 3. The Second Amended Complaint Should be Dismissed Because the Thesis Parties are Non-Transferees

Section 550(a) of the Bankruptcy Code permits a trustee to recover from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee" property that has been avoided as a fraudulent conveyance under Section 548 of the Bankruptcy Code or under applicable state law fraudulent conveyance theories. [19] 11 U.S.C. § 550(a). [20] Thus, pursuant to Section 550(a), the

---

[19]     Section 544(b) of the Bankruptcy Code permits avoidance of any transfer that would be avoidable under applicable law, including state fraudulent conveyance law. 11 U.S.C. § 544(b). Bankruptcy Code Section 550, in turn, refers to transfers recovered under Section 544 of the Bankruptcy Code as a type of transfer which the estate can recover, provided that the recovery is sought from persons that meet the requirements of Section 550(a)(1) or 550(a)(2). 11 U.S.C. § 550.

trustee may recover only "from the initial transferee and its subsequent transferees, or from any entity for whose benefit the initial transfer was made." *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 56 (2d Cir. 1997).

The Thesis Parties, however, are **not** "transferees" from whom a transfer can be avoided. On the contrary, TUTMAN and Thesis are each non-transferees of the funds at issue here, and should be dismissed from this Adversary Proceeding on that basis.

As the Second Circuit has explained, in order to be deemed an "initial transferee" within the meaning of Bankruptcy Code Section 550(a)(1), a party must "**exercise dominion over the funds at issue**" and "**be able to put them to his own purposes**". *In re Finley*, 130 F.3d at 57-58 (emphasis added). As courts in this Circuit have emphasized, "a commercial entity that, in the ordinary course of its business, acts as a mere conduit for funds and performs that role consistent with its contractual undertaking in respect of the challenged transaction, is not an initial transferee within the meaning of § 550(a)(1)". *Brown Publ'g Co. Liquidating Tr. v. AXA Equitable Life Ins. Co.*, 519 B.R. 13, 25 (E.D.N.Y. 2014) (quoting *In re Finley*, 130 F.3d at 59).

As noted, and as the Chapple Declaration makes clear, neither TUTMAN nor Thesis were within the chain of entities that received or had any contact whatsoever with the Merger Consideration, much less did TUTMAN or Thesis at any time put the funds to use for their own purposes. Chapple Decl. ¶28. Only The Northern Trust Company, as custodian for Thesis on behalf of the Thesis unit holders, came into contact with the Merger Consideration.[21] There are

---

[20]     The Bankruptcy Code provides that although transfers can be clawed back from initial transferees, it cannot be clawed back from transferees of the initial transferee who take "for value. . . , in good faith, and without knowledge of the voidability of the transfer avoided or . . . any immediate or mediate good faith transferee of such transferee." 11 U.S.C. § 550(b). Because neither TUTMAN nor Thesis is a transferee at all, a further analysis of the good faith defense is not necessary here. The Thesis Parties, however, reserve their rights to argue that a good faith transferee defense applies.

[21]     The Northern Trust Company, based on this activity, might be considered a mere conduit, for purposes of Section 550(a) of the Bankruptcy Code, but **not** an initial transferee, since it held the consideration but was not entitled to use the consideration for its own purposes. *In re Finley*, 130 F.3d at 57-58 (in order to be deemed an

23

no allegations in the Second Amended Complaint that TUTMAN or Thesis was a transferee, and no such allegation could validly be asserted.[22]  Given their status as non-transferees of the funds at issue, TUTMAN and Thesis should never have been named as defendants in this case, and should be dismissed as a matter of law from Counts V- VIII of the Second Amended Complaint.

> **4.     The Second Amended Complaint's Claims for Constructive Fraudulent Conveyance Should be Dismissed Because Any Transfer is Protected by the Section 546(e) Safe Harbor**

Although, because the Thesis Parties are non-transferees, the Court need not address whether the transfer received would have been protected by the Section 546(e) safe harbor, as shown below Plaintiff's state and federal constructive fraudulent transfer claims (Counts VI and VIII) are defeated by safe harbor provided in Section 546(e) of the Bankruptcy Code.

Section 546(e) provides a safe harbor for certain transactions and prevents them from being avoided by a trustee.  Section 546(e) states, in relevant part:

> Notwithstanding sections 544. . . 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a . . . settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a . . . financial institution, [or a] financial participant, . . . or that is a transfer made by or to (or for the benefit of) a . . . financial institution [or] financial participant,. . . in connection with a securities contract, as defined in section 741(7), . . . that is

---

"initial transferee" within the meaning of Bankruptcy Code Section 550(a)(1), the party must "exercise dominion over the funds at issue **and** "be able to put them to his own purposes").  The Northern Trust Company, however, is not a party in this litigation and its possible status as a mere conduit is not an issue that this Court need address.

[22]     Neither of the Thesis Parties were in the chain of entities that came into contact with the Merger Consideration at all.  Therefore, their status is that of non-transferees.  However, even if Plaintiff tried to assert that one or both of the Thesis Parties was a conduit - which was not the case- the case law makes amply clear that mere conduits do not constitute initial transferees for purpose of Section 550(a)(1).  The fundamental requirement for transferee status – that the entity have the right to use the funds for its own benefit and purposes – is entirely absent here.  *In re Finley*, 130 F.3d at 57-59 (explaining that a commercial entity performing its contractual obligation to hold funds in trust for the benefit of investors in the ordinary course of business is "not an initial transferee within the meaning of § 550(a)(1)" and that to be an initial transferee under 550(a)(1), the entity must "be able to put [the funds] to his own purposes"); *Pergament v. Brooklyn Law Sch.*, 595 B.R. 6, 10 (E.D.N.Y. 2019) (finding that schools that had received tuition payments remained mere conduits, rather than transferees, with respect to those funds as long as the school remained obligated to refund the payment if the student withdrew); *In re Bullion Reserve of N. Am.*, 922 F.2d 544, 549 (9th Cir. 1991) ("an entity does not have dominion over the money until it is, in essence, free to invest the whole [amount]").

made before the commencement of the case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e).

Here, Plaintiff seeks to recover the Shareholder Redemption Payments and the IRS Funds, which were provided as consideration for the redemption of the CHT shares. The Section 546(e) safe harbor defeats such an action on two independent grounds: (1) because the consideration constitutes a "settlement payment" and (2) because the "transfer[s] made [were] in connection with a securities contract," and, in each case, were made "by or to" a "financial institution."

The Bankruptcy Code defines "settlement payments" broadly to include "the transfer of cash or securities made to complete [a] securities transaction." *See e.g. SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 596 B.R. 451, 466 (S.D.N.Y. 2019); 11 U.S.C. § 741(8); 11 U.S.C. § 101 (51A). Settlement payments include payments made to shareholders in connection with a merger or leveraged-buy-out, such as the Shareholder Redemption Payments made in this case. *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 84 (2d Cir. 2019) ("[S]ection [546(e)] does not distinguish between different kinds of transfers, e.g., settlements of ordinary day-to-day trading, LBOs, **or mergers** in which shareholders of one company are involuntarily cashed out.") (emphasis added); s*ee e.g., Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 337-38 (2d. Cir. 2011) (payments made to redeem commercial paper constitute "settlement payments").

Moreover, the Merger Consideration was paid to shareholders in exchange for their CHT shares, which are "securities" under the Bankruptcy Code. [23] Thus, the payment of the Merger

---

[23]    The CHT shares are "securities" under the Bankruptcy Code. *See* 11 U.S.C. § 101(49)(A)(ii).

Consideration was made "to complete [a] securities transaction". *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 596 B.R. at 466.

Section 546(e) protects from avoidance certain transfers made "in connection with a securities contract." 11 U.S.C. § 546(e). Securities contracts include "contracts for the purchase or sale of securities, as well as any agreements that are similar or related to contracts for the purchase or sale of securities." *In re Hellas Telecomms. (Luxembourg) II SCA*, 526 B.R. 499, 509 (Bankr. S.D.N.Y. 2015) (emphasis omitted); *see also In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d 411, 417-18 (2d Cir. 2014) (noting that a securities contract is defined "with extraordinary breadth").[24]

Where a transfer is "related to" or "associated with" a securities contract, it is a transfer made "in connection with a securities contract" for the purposes of Section 546(e). *In re Bernard L. Madoff Inv. Sec. LLC*, 773 F.3d at 421 (2d Cir. 2014). The Second Circuit in *Tribune* found "no trouble concluding" that payments made to shareholders in connection with an LBO were payments made "in connection with a securities contract" because they involved the purchase of shares, regardless of whether they were characterized as the purchase or redemption of shares. The same is true here. *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 80-81 (2d Cir. 2019). Thus, the transfer of the Merger Consideration in exchange for the CHT stock was clearly made "in connection with a securities contract" for purposes of Section 546(e).

Finally, the transfer in this scenario is a protected transfer "by or to" a "financial institution," which is broadly defined. *See* 11 U.S.C. §§ 101 (22), 101(22)(A). Here, the transfer was made *by* a financial institution, namely CHT. CHT, through Capita, CHT's paying agent for

---

[24] "Many courts have explained that a broad reading of the safe harbors is consistent, and goes hand-in-hand, with congressional intent in creating (and subsequently expanding) the safe harbors to promote the stability and efficiency of financial markets." *Lehman Bros. Spec. Fin. Inc., v. Bank of Am. Nat'l Assoc.*, 553 B.R. 476, 501-02 (Bankr. S.D.N.Y. 2016), *aff'd*. No. 17 CIV 1224 (LGS), 2018 WL 1322225 (S.D.N.Y. Mar. 14, 2018); *see also id*. at 501 n.117.

the Merger, transferred the Shareholder Redemption Payments to the relevant shareholders. Complaint ¶142, 152. Capita is a bank or trust company and therefore constitutes a Financial Institution[25] and CHT was a customer of Capita, rendering the transfer protected by virtue of the safe harbor. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d at 78-81 (The court found that Tribune was a "customer" of its depository, Computershare, which acted as an agent or custodian in connection with a securities contract with respect to LBO payments. The court concluded that Tribune was a "financial institution," rendering the LBO payments subject to the safe harbor protection of Section 546(e)); *see also In re Boston Generating LLC*, No. 10-14419 (SCC), 2020 WL 3286207 (Bankr. S.D.N.Y. June 18, 2020) at *33-36 (Transfer in connection with a tender offer was protected by Section 546(e)'s safe harbor, and the pursuant to Section 546(e) and transferor qualified as a "financial institution" because it was by virtue of its status as a customer of and agency relationship with banks in connection with securities contracts).

Accordingly, Counts VI and VIII should be dismissed as to Thesis.[26]

---

[25]     Section 3.2 of the Merger Agreement provided that a "bank or trust company" would serve as paying agent for the merger. *See http://www.constellationhealthgroup.com/investor/news-docs/Merger%20Agreement.pdf.* This Court may take judicial notice of Capita's status as a bank or trust company and a "financial institution" for purposes of Section 546(e) of the Bankruptcy Code. *See* Fed. R. Evid. 201; *In re Enron Corp.,* 341 B.R. 451, 453-454, 458 (Bankr. S.D.N.Y. 2006) (taking judicial notice of an entity's status as a "financial institution" for purposes of Section 546(e)).

[26]     The 546(e) safe harbor precludes claims for constructive fraudulent conveyance under state law, such as Count VIII, *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66 (2d Cir. 2019), as well as common law claims (such as Plaintiff's claim for unjust enrichment (Count II), conversion (Count III) and replevin (Count IV), when the assertions allegedly supporting the common law claims mirror those set forth in the constructive fraudulent transfer claims, as is the case here. *In re Boston Generating LLC*, 2020 WL 3286207 at *24, *27 (dismissing Plaintiff's unjust enrichment claim because it was duplicative of plaintiff's constructive fraudulent conveyance claim); *In re Hellas Telecomms. (Luxembourg) II SCA,* 526 B.R. at 509; *AP Servs. LLP v. Silva,* 483 B.R. 63, 71 (S.D.N.Y. 2012) ("[a]llowing recovery for unjust enrichment [based on receipt of money transfers from an LBO transaction]. . . would implicate the same concerns regarding the unraveling of settled securities transactions . . . which is the result that section 546(e) precludes"). The Section 546(e) safe harbor also preempts Plaintiff's state law intentional fraudulent conveyance claims. *In re Boston Generating LLC*, 2020 WL 3286207 at *26.

### 5. This Adversary Proceeding Should Be Dismissed Pursuant to the Doctrine of *Forum Non Conveniens*

New York is not a convenient forum for litigation in the circumstances here, which involve United Kingdom-centered share acquisitions and the receipt of consideration in the United Kingdom, based on submission of documents in the United Kingdom. Under these circumstances, this action should be dismissed from this forum pursuant to the doctrine of *forum non conveniens*.

"The central purpose of a *forum non conveniens* inquiry is to determine where trial will be most convenient and will serve the ends of justice." *Freidzon v. Lukoil*, No. 14 CIV. 5445 (AT), 2015 WL 13021409, at *3 (S.D.N.Y. Mar. 12, 2015) (quoting *R. Maganlal & Co. v. M.G. Chem. Co., Inc.,* 942 F.2d 164, 167 (2d Cir. 1991)). Courts in the Second Circuit employ a three part framework in assessing a *forum non conveniens* request: (1) the degree of deference to accord plaintiff's forum choice, (2) adequacy of the alternative forum proposed by the defendant and (3) the balance of public and private interests implicated in the forum choice. *Id*. (citing *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)). Each of these factors weighs against Plaintiff's choice of this Court as the proper forum for this case.

First, minimal deference should be accorded to Plaintiff's forum choice here given that Plaintiff's conduct and actions which formed the basis of this Adversary Proceeding – e.g., listing shares for acquisition and pursuing a placement on the London Stock Exchange – all took place in the United Kingdom, not in this forum. *Id*. (Plaintiff's choice of forum is afforded no more than minimal deference where "the operative facts exclusively relate to Plaintiff's business interests in Russia and have little or no relationship to the Southern District of New York"). Here, the Thesis Defendants are not located in the United States, have no contacts with and conduct no business in the United States, and took no actions in the United States that were

related to or gave rise to this litigation. Thesis, moreover, has no legal personality and cannot be sued in this forum or anywhere else.

Second, the United Kingdom is clearly an adequate alternative forum. *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) ("[W]e have expressed high regard for [English] courts' fairness and commitment to the rule of law, [so] it certainly cannot be said that it was an abuse of discretion to hold that England was an adequate alternative forum.").

Finally, the Supreme Court has provided guidance as to public and private interests relevant to the assessment of forum choice. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). None of the factors noted by the Supreme Court favors Plaintiff's forum choice in this action. Private interest factors include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . ; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. at 508. Such private interests weigh in favor of an alternative forum here. With regard to TUTMAN, its personnel and any available documentation and witnesses are all located in the United Kingdom, not the United States.[27] Compelling parties to litigate in the United States under such circumstances would **not** make trial of the action "easy, expeditious or inexpensive." *Id.*

Public interest factors to consider include administrative difficulties caused by congestion in courts, whether jury duty would be imposed on a community with no relation to the litigation, the "local interest in having localized controversies decided at home," and avoiding difficult conflicts of law questions. *Id*. at 508-09. None of these factors favors Plaintiff's choice of

---

[27]     As explained, Thesis has no legal personality or operations, has no personnel and is not located anywhere.

forum. New York has no connection to the issues involved in this matter and its courts should not be burdened with their adjudication. Accordingly, this Court should dismiss the Adversary Proceeding under the doctrine of *forum non conveniens* and permit it to proceed in the United Kingdom, where the conduct relevant to this dispute took place and which does have an interest in resolving this dispute.

> **6.** **Plaintiff's Common Law Claims in This Adversary Proceeding Should be Dismissed Because Plaintiff Lacks Standing to Bring this Action Pursuant to the *Wagoner* Rule**

The common law claims asserted in the Second Amended Complaint should be dismissed under the *Wagoner* Rule. The *Wagoner* Rule provides that "when a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991).

In essence, Plaintiff here is standing in the shoes of the debtor in possession in asserting this Adversary Proceeding, and a debtor in possession stands in the position of the corporation. Therefore, Plaintiff lacks standing to bring a suit to recover "for a wrong that [the debtor in possession] essentially took part in." *Kirschner v. Grant Thornton LLP*, No. 07 Civ. 11604 (GEL), 2009 WL 1286326, at *5 (S.D.N.Y. Apr. 14, 2009), *aff'd sub nom. Kirschner v. KPMG LLP*, 626 F.3d 673 (2d Cir. 2010). Here, the Second Amended Complaint concedes – indeed elaborates in detail –Debtors' wrongdoing as a participant in the Merger through CHT's board. *See* Second Amended Complaint ¶114-118. Under such circumstances the *Wagoner* Rule compels dismissal of Plaintiff's common law claims as against the Thesis Parties. *See Kirschner*, 2009 WL 1286326 at *10 (dismissing asserted claims because "[u]ltimately [the debtor] participated in, and benefitted from, the very wrong for which it seeks to recover").

**B. The Second Amended Complaint Should be Dismissed Because it Fails to State Any Claims for Which Relief Can Be Granted against the Thesis Parties**

Each of the above arguments concerning the threshold issues standing alone (except for the Section 546(e) safe harbor and the *Wagoner* Rule) compels dismissal of this action. As shown in the sections that follow, the individual counts set forth in the Second Amended Complaint also should be dismissed on the grounds that each of them fails to state a claim for which relief can be granted against the Thesis Parties.

The Second Amended Complaint refers to the Thesis Parties in only a single paragraph. *See* Second Amended Complaint ¶58. That paragraph utterly fails to assert any allegations or facts that could support any cognizable legal claims as against the Thesis Parties. *Id.*

Dismissal is mandated where a complaint fails to set forth "enough facts to state a claim to relief that is ***plausible*** on its face". *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility" that the defendant is liable. *Iqbal*, 556 U.S. at 678. Allegations which constitute mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" are all insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557; *see also Carlin v. Davidson Fink LLP,* 852 F.3d 207, 212 (2d Cir. 2017) (quoting *Ashcroft*, 556 U.S. 678) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Allegations that fail to rise above the level of the merely speculative cannot constitute a plausible claim. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Unless Plaintiff has "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Plaintiff has utterly failed to meet these exacting pleading requirements. No allegations have been asserted against the Thesis Parties that rise to the level of a plausible claim. Specifically, as shown below, Plaintiff has failed to state any claim for turnover of Shareholder Redemption Payments and IRS Funds (Count I), unjust enrichment (Count II), conversion (Count III), replevin (Count IV), intentional fraudulent transfer (Counts V and VII), constructive fraudulent transfer (Counts VI and VIII), constructive trust (Count IX), permanent injunction preventing distribution of the IRS funds (Count X), or declaratory judgment (Count XI). Accordingly, dismissal of the Second Amended Complaint in its entirety as to the Thesis Parties is warranted pursuant to Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. 7012(b) and should be granted by this Court.[28]

### a. The Trustee Has Not Stated a Turnover Claim against Thesis (Count I)

"[I]n order to state a claim for turnover of property under § 542 [of the Bankruptcy Code], a plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate." *In re Khan*, No. 10-46901-ESS, 2014 WL 10474969, at *25 (E.D.N.Y. Dec. 24, 2014). Property pending a claim that it has been fraudulently or preferentially transferred, however, has **not** been recovered by the debtors -- in other words, it is **not** property of the estate and therefore not subject to a turnover order. *In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992); *In re Teligent, Inc.*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005); *In re Khan*, 2014 WL 10474969, at *26. Here, plaintiff has

---

[28] The Second Amended Complaint should similarly be dismissed as to the Thesis Parties for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) because there is no case or controversy. To establish standing to assert the claim, Plaintiff must "(1) "have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *In re Chowaiki & Co. Fine Art Ltd.*, 593 B.R. 699, 712 (Bankr. S.D.N.Y. 2018) (quoting *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. at 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Any alleged injury that Plaintiff experienced cannot be "fairly traceable" to conduct of the Thesis Parties because, *inter alia*, they did not receive any benefit from the transactions. For this reason alone, the Second Amended Complaint should be dismissed in its entirety as to the Thesis Parties.

alleged that the Shareholder Redemption Payments were fraudulently transferred to the shareholders. That claim **is currently pending in this very proceeding**.[29] Accordingly, Plaintiff's claim for turnover under Count I should be dismissed as against the Thesis Parties.

*b.* **The Trustee Has Failed to State a Claim for Unjust Enrichment against the Thesis Parties (Count II)**

Unjust enrichment claims under New York law require the plaintiff to establish that "(1) defendant was enriched (2) at plaintiff's expense, and (3) that it is against equity and good conscience to permit defendant to retain what is sought to be recovered." *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 160 (2d Cir. 2019). An unjust enrichment claim cannot validly be asserted against the Thesis Parties, and should be dismissed.

Plaintiff alleges that the Shareholder Defendants have been unjustly enriched by virtue of the Shareholder Redemption Payments and the IRS Funds. Second Amended Complaint ¶185. This is erroneous. As explained above (*see supra* at pages 10-12, 22-24), neither of the Thesis Parties ever came into contact with, or possessed the Merger Consideration, or received any benefit whatsoever from the Merger – let alone any benefit at the expense of Plaintiff. As to the IRS Funds, the Thesis Parties have not sought a refund and do not intend to do so. Chapple Decl., n 3.

*c.* **The Trustee Cannot State a Claim for Conversion against the Thesis Parties (Count III)**

Under New York law, a claim for conversion requires that (1) "[t]he property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over

---

[29] The Second Amended Complaint also includes a claim for turnover of the IRS Funds but that claim does not appear to be – and could not be – raised against the Shareholder Defendants (as defined in the Second Amended Complaint) because the IRS Funds are alleged to be in the possession of the IRS. Second Amended Complaint ¶158. It is also relevant to note that as to no IRS Funds are being sought by the Thesis Parties. Chapple Decl., n.3. Accordingly, turnover of the IRS Funds is not addressed herein.

the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153, 163 (E.D.N.Y. 2013); *see also In re Brizinova*, 588 B.R. 311, 331–32 (Bankr. E.D.N.Y. 2018) (explaining that a conversion claim under New York Law requires "legal ownership or an immediate superior right of possession to a **specific identifiable thing (i.e., specific money)**; and. . . that the defendant exercised unauthorized dominion over the thing in question, to the exclusion of the plaintiff's rights") (emphasis added). Here, Plaintiff has not even alleged the elements of conversion, and these elements cannot be met.

First, money can only be the subject of a conversion claim where there is "a **specific, identifiable fund** and an obligation to return or otherwise treat in a particular manner the **specific fund** in question." *Id*. at 332 (emphasis added). In plain terms, what must be sought in order to state a conversion claim is something akin to a bag of money. Here, in contrast, the Merger Consideration received on behalf of the Thesis unit-holders was held by The Northern Trust Company and comingled with other assets that potentially could be paid out to unit-holders in redemption for shares or otherwise reinvested in new investments for the benefit of the unit holders. Chapple Decl. ¶27. No specific, segregated, identifiable monies are at issue here – only undifferentiated, comingled funds. The Second Amended Complaint does not identify any "bag of cash." *Rolin v. Spartan Mullen Et Cie, S.A.*, No. 10 CIV. 1586 (CM)(FM), 2011 WL 5920931, at *11 (S.D.N.Y. Nov. 23, 2011) (dismissing a claim for conversion on a motion to dismiss where the funds at issue were disbursed and not identifiable or segregated).

Second, Plaintiff has not alleged – and cannot accurately allege – that the Thesis Parties ever exercised dominion or control over the Shareholder Redemption Payments or the IRS

Funds.  *See infra* pages 10-12, 22-24; *see* Chapple Decl. ¶28, n 3.  Accordingly, Plaintiff's claim

for conversion should be dismissed as to the Thesis Parties.

> ### d. *The Trustee Has Failed to State a Claim for Replevin against the Thesis Parties (Count IV)*

As is the case with claims for conversion, "[R]eplevin is a remedy employed to recover a

***specific, identifiable*** item of personal property."  *Heckl v. Walsh*, 122 A.D.3d 1252, 1254 (4th

Dep't 2014) (emphasis added).  Money can only be subject to replevin where specific and

identifiable funds are at issue.  *Id.*  The Shareholder Redemption Payments that were made are

**not** specifically identifiable or segregated funds.  The Second Amended Complaint does nothing

more than indicate the dollar amount allegedly owed, and Plaintiff does not even attempt to meet

the requirement that it identify with specificity the funds it seeks to recover.  Second Amended

Complaint ¶58; Second Amended Complaint – Appendix at 4.[30]    Plaintiff's failure to meet the

requirements for replevin compels dismissal of its replevin claim.  *See e.g., Heckl*, 122 A.D.3d at

1254 (denying claims for replevin and conversion where funds at issue were not specific or

identifiable); *see also Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 171 (E.D.N.Y.

2016) (dismissing a claim for replevin on a motion to dismiss where plaintiff sought to recover a

general sum of money).

> ### e. *The Trustee Has Failed to State a Claim for Intentional Fraudulent Conveyance Against the Thesis Parties (Count V and VII)*

Plaintiff has failed to allege sufficient facts to sustain a claim for intentional fraudulent

conveyance under the Bankruptcy Code or Delaware law.  Moreover, even if Plaintiff could

allege a claim for intentional fraudulent conveyance, such a claim could not be asserted against

the Thesis Parties because they are not transferees under Section 550 of the Bankruptcy Code.

---

[30] With respect to the IRS Funds, Plaintiff similarly seeks a general return of money rather than specifically identified property.  As noted, no refund of the IRS Funds are being sought.  Chapple Decl., n 3.

Indeed, such a conveyance can only be clawed back from entities that qualify as transferees under Section 550 of the Bankruptcy Code. *See supra* pages 22-24.

Section 548(a)(1)(A) of the Bankruptcy Code permits a trustee to avoid a transfer of an interest of the debtor where the trustee shows that there was "actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted." 11 U.S.C. § 548(a)(1)(A). A claim for intentional fraudulent transfer under the Delaware Uniform Fraudulent Transfer Act requires that the same elements be satisfied as must be met for a cause of action asserted under section 548(a)(1)(A) of the Bankruptcy Code. *See In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 459 (Bankr. D. Del. 2018).

To assert a claim under Section 548(a)(1)(A) of the Bankruptcy Code for intentional fraudulent transfer under Delaware Law, Plaintiff must satisfy the heightened pleading requirements of Fed. R. Civ. P. Rule 9(b), made applicable through Fed. R. Bankr. P. 7009. *In re PennySaver USA Publ'g, LLC*, 587 B.R. at 459-60; *In re Tribune Co. Fraudulent Conveyance Litig.*, No. 11-MD-2296 (RJS), 2017 WL 82391, at *4 (S.D.N.Y. Jan. 6, 2017). Accordingly, Plaintiff must "allege facts that give rise to a strong inference of fraudulent intent" which can be established by showing (1) a "motive and opportunity to commit fraud" or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.* 25 F.3d 1124, 1128 (2d Cir. 1994).

Courts determine the intent of a transferor corporation by looking to the intent of the corporate officers that effectuated the transaction. *See In re Tribune Co. Fraudulent Conveyance Litig.*, 2017 WL 82391, at *5. The Second Amended Complaint, however does not contain any allegation that CHT intended to hinder, delay or defraud its creditors. *See generally* Second Amended Complaint. Nor does the Second Amended Complaint include any allegation that the

board of directors of CHT acted with the intent to hinder, delay or defraud CHT's creditors. *See generally* Second Amended Complaint. Instead, the Second Amended Complaint asserts allegations only against particular board members: Parmit "Paul" Parmar, Sotirios "Sam" Zaharis, Ravi Chivukula and Pavandeep Bakhshi, but even those allegations do not allege the requisite intent. *See generally* Second Amended Complaint; Second Amended Complaint ¶2-3. Significantly, no allegations have been made against the special committee that approved the Merger.[31] *See In re Tribune Co. Fraudulent Conveyance Litig.,* 2017 WL 82391, at *11 (intentional fraudulent conveyance claim "rises and falls on the intent of the Independent Directors" who approved the transfers to shareholders). Even if this Court were to find that the intent of the board members could be imputed to CHT, the Second Amended Complaint lacks sufficient allegations to demonstrate that the board members actually intended to hinder, delay or defraud CHT's creditors.

Because it is difficult to demonstrate intentional fraud, courts typically assess "badges of fraud" including:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*In re Tribune Co. Fraudulent Conveyance Litig.*, 2017 WL 82391, at *13. The facts alleged by the Plaintiff do not pass muster under the badges of fraud analysis. *See e.g. In re Tribune Co.*

---

[31] According to publicly filed documents regarding the transaction, the transaction was approved by a special committee made up of the CHT board other than Mark Feuer, Paul Parmar and Sam Zaharis. *Memorandum of Law In Support of AAKB Investments Limited's Motion to Dismiss Debtors' First Amended Adversary Proceeding Complaint, Case No. 18-08053, ECF # 183, page 26 and n 12.* The Court may consider and take judicial notice of the contents of such public disclosure documents. *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991).

*Fraudulent Conveyance Litig.*, 2017 WL 82391, at \*14-15 (finding badges of fraud did not meet level for fraudulent intent where, among other reasons "the [] corporation" did not "maintain possession of the cash constituting [s]hareholder [t]ransfers" and the transaction was "the product of months of elaborate negotiations among sophisticated parties and received widespread publicity.")

Plaintiff has failed to properly allege the intent required to sustain an intentional fraudulent conveyance claim. Moreover, as noted, even if the elements of such a claim could be met here, the claim cannot be asserted against the Thesis Parties and no relief from them can be had. Counts V and VII should be dismissed.

f.    ***The Trustee Has Failed to State a Claim for Constructive Fraudulent Conveyance Against the Thesis Parties (Count VI and VIII)***

Even if Plaintiff could assert a viable claim for constructive fraudulent conveyance, such a claim could not entitle Plaintiff to any relief from the Thesis Parties given their status as non-transferees. *See supra* pages 22-24. In addition, Plaintiff has failed to allege facts that could meet the elements needed to state a constructive fraudulent conveyance claim.

Specifically, the Second Amended Complaint fails to allege a transfer for which less than reasonably equivalent value was received at a time when the debtor was insolvent or rendered insolvent by such transfer, that the debtor was left with unreasonably small capital, or left with debt beyond its ability to pay, as is required to state a claim for constructive fraudulent conveyance under the Bankruptcy Code. 11 U.S.C. § 548(a)(1)(B). The Second Amended Complaint contains only conclusory allegations which cannot survive this motion to dismiss. *See Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12-cv-4849 (ENV)(CLP), 2013 WL 6795963, at \*9 (E.D.N.Y. Dec. 23, 2013) (finding pleading requirements had not been met when a constructive fraudulent conveyance claim count set forth only "bare bones allegations

that track the statutory language of the [statute and]. . . no factual allegations that would indicate why plaintiff believes that such transfers . . . occurred or the factual basis for the belief that these transfers were made without fair consideration"). These pleading deficiencies compel the dismissal of Plaintiff's putative constructive fraudulent conveyance claim under Delaware law, the elements of which are "essentially identical to those of section 548(a)(1)(B)." *See In re PennySaver USA Publ'g, LLC*, 587 B.R. at 457.

In light of Plaintiff's failure properly to allege a constructive fraudulent conveyance claim – and the fact that even if such a claim could be asserted it could not entitle Plaintiff to any relief from the Thesis Parties – Counts VI and VIII should be dismissed as to the Thesis Parties.

### g. The Trustee Has Not Stated a Claim for a Constructive Trust (Count IX)

Under New York law four elements are required to establish a constructive trust: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment." *In re Fetman*, 567 B.R. 702, 706 (Bankr. E.D.N.Y. 2017) (citing *In re First Cent Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (quoting *U.S. v. Coluccio*, 51 F.3d 337, 340 (2d Cir. 1995)). While these criteria are generally viewed as "guideposts," the element of "unjust enrichment" is considered the most important in establishing a constructive trust. *Id.* As previously discussed, as a matter of law Plaintiff cannot establish that the Thesis Parties were unjustly enriched. *See supra* at page 33. Plaintiff has also failed to set forth any allegations that could satisfy any of the other elements of a claim for constructive trust. No confidential or fiduciary relationship existed, nor was there any promise in reliance on which a transfer was or could have been made. Accordingly, the claim for constructive trust in Count IX should be dismissed as against the Thesis Parties.

###### h. *Plaintiff Has Not Alleged Any Basis for a Permanent Injunction (Count X)*

There is no valid legal basis for Plaintiff's claim for a permanent injunction against the Thesis Parties. "To obtain a permanent injunction, a party must establish three things: (1) success on the merits; (2) the lack of an adequate remedy at law; and (3) irreparable harm if relief is not granted." *UBS Sec., LLC v. Voegeli*, 405 F. App'x 550, 551 (2d Cir. 2011). Thus, as a matter of law, "a permanent injunction is available only when the plaintiff succeeds on the merits of a claim." *In re Allou Distribs. Inc.*, No. 8-03-82321-ESS, 2012 WL 6012149, at *30 (Bankr. E.D.N.Y. Dec. 3, 2012). Each of the counts asserted in the Second Amended Complaint should be dismissed for the reasons set forth herein. Accordingly, it cannot be said that Plaintiff has established, or is even likely to establish, success on the merits of its claims.

Moreover, "[w]here there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Id.* at *30 (quoting *Moore v. Consoidated Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005)). Here, the relief Plaintiff has requested is the return of the distributed funds. This request for relief effectively concedes that an adequate remedy at law exists.[32] Consequently, there is no basis for an injunction.

Finally, Plaintiff has not even attempted to allege that it would suffer irreparable injury in the absence of a permanent injunction. Accordingly, Plaintiff's claim for a permanent injunction (Count X) should be dismissed as to the Thesis Parties.

---

[32] As set forth herein, it is the position of the Thesis Parties that none of Plaintiff's claims are valid and no such monetary relief should be granted.

It is well established in this circuit that, "declaratory relief is intended to operate prospectively. There is no basis for declaratory relief where only past acts are involved." *In re Enron Corp.*, 297 B.R. 382, 387 (Bankr. S.D.N.Y. 2003); *see also In re Finnie*, No. 05-16373 (AJG), 2007 WL 1574294, at *9 n.11 (Bankr. S.D.N.Y. May 29, 2007) ("one of the main purposes of a declaratory judgment [is] avoiding accrual of damages").

Plaintiff has not – and cannot – meet the necessary threshold requirements to obtain a declaratory judgment. As a matter of law, declaratory judgment is inappropriate because the focus of this case is on past events, such as receipt of the Shareholder Redemption Payments here in 2017.[33] Moreover, Plaintiff is at no risk of accruing additional damages given that the crux of its claim is to recover funds paid out in 2017 and funds being held by the IRS.

Finally, a request for a declaratory judgment is rendered moot where Plaintiff seeks a declaratory judgment as to the same issues relevant to other claims that will be decided at the same time. *In re Rickel & Assocs., Inc.*, 272 B.R. 74, 99 (Bankr. S.D.N.Y. 2002). Because the claims asserted in the Second Amended Complaint are already before the Court for adjudication, there is no need for, or purpose served by, declaratory judgment.

## IV. RESERVATION OF RIGHTS

As shown above, there are many reasons that compel the dismissal of the Second Amended Complaint as against the Thesis Parties. Thesis itself must be dismissed on one fundamental ground without engaging in any further analysis: it has no legal personality and cannot be sued. *See infra* pages 10-12; Chapple Decl. ¶¶8-10, 14. The Second Amended Complaint should also be dismissed against each of the Thesis Parties on the basis of the

arguments set forth herein concerning the "threshold issues": (1) the lack of personal jurisdiction over the Thesis Parties, (2) their status as non-transferees, (3) the section 546(e) safe harbor, (4) the doctrine of *forum non conveniens*, and (5) the Wagoner Rule. *See supra* pages 12-30. In addition to the threshold grounds for dismissal, as explained herein each individual count should be dismissed as against the Thesis Parties for failure to state a claim upon which relief may be granted. *See supra* pages 31-41.

This Motion is brought without waiver of any other defenses, and the Thesis Parties expressly reserve their rights to assert any further or additional defenses or arguments that they may have concerning Plaintiff's allegations.

## V. CONCLUSION

For all of the foregoing reasons, the Thesis Parties respectfully request that the Court (i) dismiss the Second Amended Complaint as to the Thesis Parties with prejudice and (ii) grant the Thesis Parties such further relief as this Court deems appropriate.

Dated: June 30, 2020  
     New York, NY

**BRYAN CAVE LEIGHTON PAISNER LLP**

By:   */s/ Stephanie Wickouski*  
Stephanie Wickouski  
Howard M. Rogatnick  
Chelsey Rosenbloom  
1290 Avenue of the Americas  
New York, New York 10104  
Tel: (212) 541-2000  
E: stephanie.wickouski@bclplaw.com  
E: hmrogatnick@bclplaw.com  
E: chelsey.rosenbloom@bclplaw.com

*Attorneys for Defendants Thesis Unit Trust Management Limited and Thesis Headway A Sub-Fund*