UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Orion HealthCorp, Inc. *et al.,*<br><br>     Debtors. | Chapter 11<br>Case Nos. 18-71748-67 (AST)<br>Case No. 18-71789 (AST)<br>Case No. 18-74545 (AST)<br>(Jointly Administered) |
| Howard M. Ehrenberg in his capacity as Liquidating<br>Trustee of Orion Healthcorp, Inc., et al.<br><br>     Plaintiff,<br><br>  v.<br><br>United States of America, Department of Treasury, Internal<br>Revenue Service,<br><br>     Defendant. | Adv. Pro. No. 18-08048 (AST) |

## DECISION AND ORDER ABSTAINING
## FROM REMAINDER OF ADVERSARY PROCEEDING

***PROCEDURAL BACKGROUND***

On March 29, 2018, various chapter 11 debtors[1], as plaintiffs ("Plaintiff Debtors"), filed a

complaint commencing this adversary proceeding (the "Adversary Proceeding") [dkt. item 1].

Plaintiff Debtors named a multitude of non-debtor parties as defendants in the original complaint,

as well as the United States of America, Department of Treasury, Internal Revenue Service

("IRS").  Each of the non-debtor individual and/or corporate Non-IRS defendants were former

---

[1] Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Orion Healthcorp, Inc. (7246); Constellation Healthcare Technologies, Inc. (0135); NEMS Acquisition, LLC (7378); Northeast Medical Solutions, LLC (2703); NEMS West Virginia, LLC (unknown); Physicians Practice Plus Holdings, LLC (6100); Physicians Practice Plus, LLC (4122); Medical Billing Services, Inc. (2971); Rand Medical Billing, Inc. (7887); RMI Physician Services Corporation (7239); Western Skies Practice Management, Inc. (1904); Integrated Physician Solutions, Inc. (0543); NYNM Acquisition, LLC (unknown) Northstar FHA, LLC (unknown); Northstar First Health, LLC (unknown); Vachette Business Services, Ltd. (4672); Phoenix Health, LLC (0856); MDRX Medical Billing, LLC (5410); VEGA Medical Professionals, LLC (1055); Allegiance Consulting Associates, LLC (7291); Allegiance Billing & Consulting, LLC (7141); New York Network Management, LLC (7168) (collectively, "Debtors").

shareholders of Debtor Constellation Healthcare Technologies, Inc. ("CHT").

On June 24, 2019, Howard M. Ehrenberg in his capacity as Liquidating Trustee of Debtors (the "Trustee") filed a first amended complaint [dkt. item 117].

On March 12, 2020, the Trustee filed a second amended complaint (the "Second Amended Complaint") [dkt. item 295].

Over the course of this litigation, the Trustee has settled with, obtained judgments against and/or dismissed from this action the many numerous non-debtor shareholder defendants. The IRS remains the only defendant in the Adversary Proceeding.

On March 20, 2024, the Trustee filed a third amended complaint (the "Third Amended Complaint") [dkt. item 606] which asserted claims only against the IRS and removed all other defendants.

On May 3, 2024, the IRS filed a motion to dismiss the Adversary Proceeding (the "Dismissal Motion") [dkt. items 612, 613].

On June 25, 2024, the Trustee filed opposition to the Dismissal Motion (the "Dismissal Opposition") [dkt. item 617].

On July 15, 2024, the IRS submitted its reply to the Dismissal Opposition and in further support of its Dismissal Motion [dkt. item 618].

On October 1, 2024, the Court entered an Order to Show Cause For Abstention (the "Order to Show Cause") [dkt. item 621] directing the parties to demonstrate why this Court should or should not mandatorily or permissively abstain from hearing this Adversary Proceeding pursuant to 28 U.S.C. § 1334(c)(1) or (c)(2). The Order to Show Cause also gave the parties an opportunity to move to withdraw the reference of the Adversary Proceeding to the District Court.

Neither the Trustee nor the IRS has moved to withdraw the reference.

On October 25, 2024, the IRS responded to the Order to Show Cause, reiterating its request to dismiss this Adversary Proceeding for the reasons set forth in the Dismissal Motion, but otherwise seeking that this Court permissively abstain from hearing these matters [dkt. item 625].

On October 25, 2024, the Trustee filed a memorandum of law in opposition to the Order to Show Cause and requested that this Court neither mandatorily nor permissively abstain from hearing the Adversary Proceeding [dkt. item 627].

On November 12, 2024, the IRS and the Trustee both submitted reply briefs in further support of their responses to the Order to Show Cause [dkt. items 628, 629].

For the reasons to follow, the Court has decided to permissively abstain from hearing the remainder of this Adversary Proceeding.

### *RELEVANT FACTUAL BACKGROUND*

Pursuant to the Third Amended Complaint, the Trustee seeks to recover approximately $10,435,097.13 of payments made on behalf of shareholders of CHT to the IRS (the "IRS Funds"). Third Am. Comp. ¶ 9.  However, the IRS Funds are not monies that CHT or any of the other Debtors themselves had a right to recover as overpayments of tax liabilities.

The complex factual background of this case relates to a "go-private" merger transaction (the "Merger") which took place between CHT Holdco, LLC ("CHT Holdco") and CHT.  Third Am. Comp. ¶ 1.  The Merger closed on or about January 30, 2017 (the "Closing Date").  *Id.* ¶ 79. Prior to the Merger, CHT's shares were publicly traded on the London Stock Exchange's Alternative Investments Market.  *Id.* ¶ 53.  Through the Merger, CHT Holdco acquired 100% of the issued and outstanding shares of CHT.  *Id.* ¶ 54.  There has been a great deal of litigation concerning the Merger which has taken place before this Court and others over the past several years.

The proceeds of the Merger were paid to non-debtor individuals and/or entities. According to the Third Amended Complaint, a total of $212,502,269.25 in proceeds (the "Merger Proceeds") were paid out in connection with the Merger. Third Am. Comp. ¶ 6. Approximately $100 million of the Merger Proceeds was paid to Parmar Shareholder Entities (as defined in the Third Amended Complaint). *Id.* ¶¶ 2, 6. Other CHT shareholders who were previously named in the Adversary Proceeding as defendants in the Second Amended Complaint, received the remaining approximate $120 million of the Merger Proceeds as follows: (a) approximately $80.3 million in cash, and (b) $13.6 million in promissory notes in exchange for their CHT shares. *Id.* ¶ 7. Bank of America, N.A. (as Administrative Agent, L/C Issuer) and Swingline Lender (collectively, the "Lenders") loaned $130 million to fund the Merger Proceeds, along with an equity contribution of $82,502,160.25 from CC Capital CC Holdco LLC ("CC Holdco") into a CC Holdco bank account maintained by JPMorgan Chase (the "CC Holdco Bank Account"). *Id.* ¶¶ 8, 82-83. CHT, other Debtors and certain non-debtors jointly and severally guaranteed the debt owed to the Lenders, gave first priority liens in all their properties, and pledged 100% of the equity interest in each of their subsidiaries. *Id.* ¶¶ 9, 84-85.

As of the Closing Date, the CC Holdco Bank Account held the full $212,502,269.25 of Merger Proceeds. *Id.* ¶ 86. On the Closing Date, $177,154,981.43 in Merger Proceeds was transferred from the CC Holdco Bank Account to an account at the Royal Bank of Scotland, plc. maintained by Capita Registrars Limited ("Capita"), the exchange agent for the Merger. *Id.* ¶ 88. The remaining $35,347,287.82 was held in the CC Holdco Bank Account. *Id.* Capita and CC Holdco ultimately disbursed the Merger Proceeds to CHT shareholders and/or otherwise used the Merger Proceeds to pay fees and costs incurred in connection with the Merger as discussed above. *Id.* ¶¶ 7, 8, 88.

At the time of the Merger, Capita retained $10,435,097.13 of these CHT shareholder payments (i.e., the IRS Funds). *Id.* ¶ 90. According to the Trustee, the IRS Funds were withheld because Capita did not have sufficient information at the time to determine whether a withholding tax was due and owing to the IRS pursuant to applicable law due to the status of the CHT shareholders as foreign persons and/or entities. *Id.* Specifically, Capita was concerned that the IRS Funds may have been required to be withheld at the time of the Merger and remitted to the IRS pursuant to 26 U.S.C. §1141 (for individual shareholders), 26 U.S.C. §1142 (for corporate shareholders), and/or 26 U.S.C. §1145, each of which requires a percentage of consideration paid for certain transactions involving foreign shareholders to be withheld and deposited with the IRS. *Id.* ¶ 91. Those shareholders could then submit a US tax return and potentially receive a refund. *Id.* Ultimately, Capita elected to transfer the IRS Funds back to CHT so that CHT could determine whether such IRS Funds should be remitted to the IRS with the requisite shareholder information. *Id.* ¶ 92.

On or about December 29, 2017, Capita wired the IRS Funds to Debtor Orion's main operating account at JPMorgan Chase Bank. *Id.* ¶ 93.

On or about January 16, 2018, CHT directed Debtor Orion to wire the IRS Funds to the IRS. *Id.* ¶ 94. Because it was unclear whether any withholding tax was in fact due to the IRS, Debtor Orion remitted the IRS Funds to the IRS with a reservation of rights letter. *Id.* CHT and Debtor Orion advised the IRS that the IRS Funds were likely redemptions under Internal Revenue Code ("IRC") § 302, and, therefore, not subject to withholding under IRC §§ 1442. *Id.* While the IRS Funds had been wired to the IRS from Debtor Orion's main operating account at JP Morgan Chase Bank, those funds undisputedly belonged to non-debtor parties. *Id.* ¶¶ 7, 91-94.

At the time the Third Amended Complaint was filed, nine entities had received refunds

from the IRS Funds totaling $6,826,110.36.  *Id.* ¶ 100.  These refunds by the IRS had been divided between the applicable settling defendants and the Trustee in accordance with the terms of their respective settlement agreements.  *Id.*  There remains $3,608,986.77 of the IRS Funds held by the IRS.  *Id.*  The shareholders who have not received their potential refunds have settled with the Trustee by, in part, assigning their refund rights to the Trustee.  *Id.* ¶ 99.

### LEGAL ANALYSIS[2]

Abstention in a bankruptcy case is governed by 28 U.S.C. § 1334(c) which provides for mandatory abstention in § 1334(c)(2) and permissive abstention in § 1334(c)(1).  "A party seeking mandatory abstention must prove each of the following: (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be 'timely adjudicated' in state court."  *New York City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.)*, 293 B.R. 308, 331 (S.D.N.Y. 2003) (citations omitted).  In order for mandatory abstention to apply, all elements must be met.  *Id.*  Neither of the parties are seeking this Court to mandatorily abstain from this Adversary Proceeding, so it will not be addressed.

The IRS, however, is requesting the Court to exercise its discretion and permissively abstain from hearing this Adversary Proceeding.  When determining if permissive abstention is appropriate, the Court must consider the following factors:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,

(2) the extent to which state law issues predominate over bankruptcy issues,

---

[2] At this juncture, the Court does not need to, and therefore does not reach, a decision on or otherwise address whether the IRS is or is not subject to a fraudulent transfer suit before the bankruptcy court.  This matter is currently before the United States Supreme Court.  *See generally U.S. v. Miller*, No. 23-824 (Dec. 2, 2024).

(3) the difficulty or unsettled nature of the applicable state law,

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court,

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

(7) the substance rather than form of an asserted "core" proceeding,

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

(9) the burden on the court's docket (as a resolution of the adversary proceeding by a bankruptcy court is not required, it would be an unnecessary burden on the court's docket,

(10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties,

(11) the existence of a right to a jury trial, and

(12) the presence in the proceeding of nondebtor parties.

*See Exter Holding, Ltd. v. AFC Real Estate, LLC (In re Exeter Holding, Ltd.)*, Case No. 11-77954 (AST), 2013 WL 1084548, at *3 (Bankr. E.D.N.Y. Mar. 14, 2013) (citing *Int'l Tobacco Partners*, 462 B.R. 378, 392 (Bankr. E.D.N.Y. 2011)); *see also Wallace v. Guretzky*, CV-09-0071 (SJF), 2009 WL 3171767, at *2 (E.D.N.Y. Sept. 29, 2009).

The IRS's primary contention is that this Adversary Proceeding boils down to a tax refund dispute concerning the tax liabilities of non-debtor former shareholders of CHT. Conversely, the Trustee asserts that it has not sued the IRS to obtain a tax refund and explains these claims are "bread-and-butter, standard chapter 5 fraudulent transfer bankruptcy claims" against the IRS because the IRS allegedly received a fraudulent conveyance pursuant to Bankruptcy Code section 548 and is purportedly holding funds belonging to Debtors which necessitates turnover pursuant

to Bankruptcy Code section 542.  The Trustee also maintains that this is not an action brought pursuant to Bankruptcy Code section 505.

The Court disagrees with the Trustee and concludes that permissive abstention is appropriate.

The IRS is not alleged to be the recipient of a fraudulent transfer.  Rather, the Trustee sued the non-debtor shareholders claiming they had received fraudulent transfers by receiving the Shareholder Redemption Payments (as defined in the Third Amended Complaint) and the IRS Funds, regardless of their character, and that the payment of their potential tax liabilities on their behalf to the IRS on account of the Merger was a fraudulent transfer for their benefit.  Whether the IRS Funds would be considered redemptions or withholdings under the IRC does not change the basic nature of those funds as reflecting rights the shareholders had against the IRS.  In fact, the Trustee even "recognizes that tax issues may become relevant for purposes of analyzing the [Trustee's] claims and the IRS's defenses."  No determination has been made concerning the nature of the non-debtor tax payments.

The Trustee's position is that by having settled with each non-debtor Non-IRS shareholder defendant, there is no dispute about who is entitled to the IRS Funds.  However, the fact that the Trustee has received an assignment of the shareholders rights to refunds of the IRS Funds does not render the IRS Funds the proceeds of fraudulent transfers as a matter of law.  While the Trustee is correct that there is "no dispute between the Shareholder Defendants and the Liquidating Trustee as to the ownership of the IRS Funds.", Third Am. Comp. ¶ 99, a determination has yet to be made as to the shareholders' right to refunds.  Further, because Debtors do not purport to have owed federal taxes on the shareholders' payments, this is not a Bankruptcy Code section 505 proceeding to determine a debtor's tax liability or right to a refund.

Abstention will have no effect on efficient administration of the estate.  Either this Court or the federal district court would have to determine who has rights to the IRS Funds, and any appeal from this Court to the District Court would be likely, and quite possibly *de novo* review of decisions of law.  Thus, abstention saves a step in the process.

Further, the unsettled tax law issues clearly predominate over bankruptcy law issues in this Adversary Proceeding.  In that regard, it appears that the United States District Court would be the more appropriate forums for determining those predominate tax law issues.

**CONCLUSION**

Accordingly, it is hereby

**ORDERED**, that this Court abstains from hearing this Adversary Proceeding; and it is further

**ORDERED**, that this Adversary Proceeding shall be administratively closed within thirty (30) days, unless either side files a motion to withdraw the reference.

Dated: December 6, 2024
       Central Islip, New York

_____
Alan S. Trust
Chief United States Bankruptcy Judge